1

The Honorable Lauren King

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

10

11

12

OLYMPUS SPA, MYOON WOON LEE,
SUN LEE, JANE DOE EMPLOYEE 1,
JANE DOE EMPLOYEE 2, JANE DOE
EMPLOYEE 3, JANE DOE PATRON 1,

NO. 2:22-cv-00340-LK

13

Plaintiffs,

**DEFENDANT'S MOTION TO
DISMISS**

14

v.

15

16

SHARON ORTIZ, in her official capacity
as Executive Director of the Washington
State Human Rights Commission,

NOTE ON MOTION CALENDAR:
JUNE 23, 2022

ORAL ARGUMENT
REQUESTED

17

Defendant.

18

19

20

21

22

23

24

25

26

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ............................................................................... 2

III. ARGUMENT ...................................................................................................... 7

    A.  Plaintiffs Are Barred from Seeking Any Form of Damages
        Under the Eleventh Amendment and Supreme Court
        Precedent Interpreting Section 1983 .......................................................... 8

    B.  Plaintiffs Lack Standing to Seek Declaratory and Injunctive
        Relief Because Olympus Spa Voluntarily Settled the Only
        Prior Complaint with HRC and Fails to Allege Any Risk of
        Imminent Harm from HRC ......................................................................... 9

        1.  Plaintiffs lack standing for their claims for prospective
            relief because their allegations show no real and
            immediate injury in fact ................................................................ 10

        2.  Plaintiffs' alleged injury is not fairly traceable to
            HRC's actions ............................................................................... 13

        3.  No relief would redress Plaintiffs' alleged harm
            because the decision to settle ended all State action
            against Olympus Spa ..................................................................... 15

    C.  This Case Is Not Ripe for Review Because It Rests on
        Events That May Not Occur at All ........................................................... 16

    D.  Even if Plaintiffs Had Standing and Their Claims Were
        Ripe, the Complaint Fails to State a Claim for Relief Under
        Well-Established Supreme Court Precedent ............................................. 17

        1.  Plaintiffs' right to freely exercise their religion must
            comply with a valid, neutral law of general applicability,
            such as the WLAD ........................................................................ 17

        2.  Plaintiffs have no free speech right to discriminate based
            on gender identity ......................................................................... 20

        3.  The First Amendment's right to free association
            does not apply to the large and unselective group of
            Olympus Spa employees and patrons ............................................ 21

IV.  CONCLUSION ................................................................................................. 23

1

## TABLE OF AUTHORITIES

2

### <u>Cases</u>

3

*Americopters, LLC v. F.A.A.*,
4    441 F.3d 726 (9th Cir. 2006) .................................................................................. 7

5 *Arizonans for Off. Eng. v. Arizona*,
   520 U.S. 43 (1997)...................................................................................... 8, 9

6

*Ashcroft v. Iqbal*,
7    556 U.S. 662 (2009).................................................................................... 7, 10

8 *Ashcroft v. Mattis*,
   431 U.S. 171 (1977)........................................................................................ 10

9
*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
10    481 U.S. 537 (1987)........................................................................................ 19

11 *Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................ 7

12
*Burwell v. Hobby Lobby Stores, Inc.*,
13    573 U.S. 682 (2014)........................................................................................ 19

14 *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
   508 U.S. 520 (1993) ............................................................................. 17, 18, 19

15
*City of Dallas v. Stanglin*,
16    490 U.S. 19 (1989).......................................................................................... 22

17 *City of Los Angeles v. Lyons*,
   461 U.S. 95 (1983)........................................................................... 9, 10, 13, 16

18
*Clapper v. Amnesty Int'l USA*,
19    568 U.S. 398 (2013)................................................................................. 10, 14

20 *Drake v. Obama*,
   664 F.3d 774 (9th Cir. 2011) .......................................................................... 15

21
*Emilee Carpenter, LLC v. James*,
22    No. 21-CV-6303-FPG, 2021 WL 5879090
   (W.D.N.Y. Dec. 13, 2021).......................................................................... 21, 22

23
*Emp. Div., Dep't of Hum. Res. of Or. v. Smith*,
24    494 U.S. 872 (1990)................................................................................... 17, 18

25 *Flast v. Cohen*,
   392 U.S. 83 (1968)............................................................................................. 9

26

DEFENDANT'S MOTION TO DISMISS     ii     ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-LK     Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
   528 U.S. 167 (2000).................................................................................... 9

*Golden v. Zwickler*,
   394 U.S. 103 (1969)................................................................................... 11

*Heart of Atlanta Motel, Inc. v. United States*,
   379 U.S. 241 (1964)................................................................................... 20

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984)..................................................................................... 22

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010)....................................................................................... 11

*Holley v. Cal. Dep't of Corr.*,
   599 F.3d 1108 (9th Cir. 2010) ...................................................................... 8

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Bos.*,
   515 U.S. 557 (1995)................................................................................... 20

*Landers v. Quality Commc'ns, Inc.*,
   771 F.3d 638 (9th Cir. 2014) ........................................................................ 7

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)........................................................................... 9, 10, 14

*Mitchell v. Maurer*,
   293 U.S. 237 (1934)................................................................................... 15

*Munywe v. Peters*,
   No. 3:21-cv-05431-BJR-JRC, 2021 WL 5514810
   (W.D. Wash. Nov. 24, 2021) ........................................................................ 8

*N. Y. State Club Ass'n v. City of New York*,
   487 U.S. 1 (1988)....................................................................................... 19

*Nat. Res. Def. Council v. Cal. Dep't of Transp.*,
   96 F.3d 420 (9th Cir. 1996) .......................................................................... 8

*Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006)..................................................................... 14

*O'Shea v. Littleton*,
   414 U.S. 488 (1974)................................................................................... 10

*Renee v. Duncan*,
   686 F.3d 1002 (9th Cir. 2012) ................................................................. 9, 15

*Reynolds v. United States*,
   98 U.S. 145 (1878)..................................................................................... 18

DEFENDANT'S MOTION TO DISMISS
2:22-cv-00340-LK

iii

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Rizzo v. Goode,*
423 U.S. 362 (1976)...................................................................................... 11

*Roberts v. U.S. Jaycees,*
468 U.S. 609 (1984)....................................................................... 20, 21, 22

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
547 U.S. 47 (2006)................................................................................. 20, 21

*Safer Chems., Healthy Families v. U.S. Env't Prot. Agency,*
943 F.3d 397 (9th Cir. 2019) ........................................................................ 16

*State v. Arlene's Flowers, Inc.,*
193 Wash. 2d 469, 441 P.3d 1203 (2019), *cert. denied,*
141 S. Ct. 2884, 210 L. Ed. 2d 991 (2021) ........................................ 18, 19, 21

*Stormans, Inc. v. Selecky,*
586 F.3d 1109 (9th Cir. 2009) ...................................................................... 18

*Stormans, Inc. v. Wiesman,*
794 F.3d 1064 (9th Cir. 2015) ...................................................................... 19

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014).............................................................................. 11, 13

*Texas v. United States,*
523 U.S. 296 (1998)...................................................................................... 16

*United Invs. Life Ins. Co. v. Waddell & Reed Inc.,*
360 F.3d 960 (9th Cir. 2004) ........................................................................ 15

*United States v. Lee,*
455 U.S 252 (1982)....................................................................................... 18

*Wash. Env't Council v. Bellon,*
732 F.3d 1131 (9th Cir. 2013) ...................................................................... 15

## <u>Constitutional Provisions</u>

U.S. Const. amend. I ...................................................................................... 17

U.S. Const. art. III ............................................................... 2, 9, 13, 16, 23

## <u>Statutes</u>

42 U.S.C. § 1983........................................................................................... 8

Wash. Rev. Code § 49.60.010 ................................................................ 2, 18

Wash. Rev. Code § 49.60.030(1).................................................................. 18

iv

1    Wash. Rev. Code § 49.60.030(1)(b) ........................................................................ 17

2    Wash. Rev. Code § 49.60.040(26) ...................................................................... 2, 17

3    Wash. Rev. Code § 49.60.040(27) ........................................................................ 2, 5

4    Wash. Rev. Code § 49.60.215 ............................................................................... 17

5    Wash. Rev. Code § 49.60.230(1) ............................................................................. 3

6    Wash. Rev. Code § 49.60.240 .................................................................................. 3

7    Wash. Rev. Code § 49.60.250 .................................................................................. 3

8    Wash. Rev. Code § 49.60.250(5) .............................................................................. 3

9    **<u>Rules</u>**

10    Fed. R. Civ. P. 10(a) ............................................................................................... 4

11    Fed. R. Civ. P. 12(b)(1) ........................................................................................... 7

12    Fed. R. Civ. P. 12(b)(6) ........................................................................................... 7

13    Fed. R. Civ. P. 25(d) ............................................................................................... 1

14    **<u>Regulations</u>**

15    Wash. Admin. Code § 162-08-041(4) ....................................................................... 3

16    Wash. Admin. Code Title 162 ................................................................................. 3

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS     v     ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-LK                       Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## I.      INTRODUCTION

Businesses that sell services to the public in Washington must do so without discriminating based on a customer's gender identity. Plaintiff Olympus Spa nonetheless admits in its Complaint that it had a policy of refusing to serve transgender women because, in Olympus Spa's view, transgender women are not "biological females." The Washington State Human Rights Commission (HRC)[1] received a complaint regarding Olympus Spa's policy and discriminatory refusal to serve a transgender woman. In the course of its investigation, HRC made clear that the Washington Law Against Discrimination (WLAD) prohibits discrimination based on a customer's gender identity. Olympus Spa decided to settle the matter, adopting non-discriminatory policies and promising not to discriminate based on gender identity in the future. In exchange, HRC forwent entering any formal findings of discrimination or taking enforcement action, which is a civil administrative trial subject to state court review. That ended the controversy between HRC and Olympus Spa—or so HRC thought.

Now Plaintiffs—Olympus Spa, one of its owners, its president, three unidentified staff, and an unidentified patron—challenge Washington State's (sometimes referred to as "State") bedrock anti-discrimination law on First Amendment grounds, seeking to undo their prior settlement with HRC. However this case is nothing more than an improper attempt to avoid the normal enforcement process within the State system, and to obtain an advisory opinion from this Court granting them a license to discriminate against transgender Washingtonians. But Plaintiffs' claims must be dismissed at the outset because Olympus Spa voluntarily settled this very matter before HRC entered any findings or began any formal enforcement action. And putting aside that settlement, Plaintiffs can obtain no damages here because HRC's director, sued in her official capacity, is immune under the Eleventh Amendment.

---

[1] Plaintiffs sued Sharon Ortiz in her official capacity as Executive Director of HRC. Ms. Ortiz retired from HRC after Plaintiffs filed their Complaint. Cheryl Strobert is HRC's Acting Executive Director and is automatically substituted as a party here. Fed. R. Civ. P. 25(d). Defendant respectfully requests that the Court update the official caption in this case accordingly.

With respect to their claims for declaratory and injunctive relief, Plaintiffs present no controversy over which the Court has subject matter jurisdiction because they lack standing and their claims are not ripe. Plaintiffs nowhere allege a specific intent to violate Washington's law in the future, and they identify no real or imminent harm that will occur absent the Court's intervention. To the contrary, Plaintiffs' own allegations make clear that they are complying with Washington law and that they are very unlikely to encounter a similar situation in the future. In other words, Plaintiffs have suffered no injury in fact and are not at risk of suffering a real and immediate injury in the future.

Plaintiffs wrongly believe that a clause in the pre-finding settlement agreement preserved their right to bring this action. But no agreement or stipulation can override the Constitution's limitation of federal court jurisdiction where, as here, no case or controversy exists. Plaintiffs lack standing and their claims are not ripe because they are based on events that were resolved and rely on pure speculation as to whether, when, and how a similar situation may again arise.

Finally, even if Plaintiffs had alleged facts establishing Article III jurisdiction, the Complaint fails to state a claim as a matter of law. Decades of U.S. Supreme Court precedent establishes that state statutes prohibiting discrimination are consistent with the First Amendment's guarantee of the free exercise of religion, because they are the least restrictive means for satisfying the state's compelling interest in eradicating discrimination. The Supreme Court likewise consistently has held that anti-discrimination laws do not violate the First Amendment's protections for free speech and free association. This case should be dismissed with prejudice.

## II.     FACTUAL BACKGROUND

The Washington Legislature created the HRC, a State agency, and endowed it with general jurisdiction and power to enforce the WLAD and eliminate and prevent certain discrimination, including discrimination based on gender identity in places of public accommodation. Wash. Rev. Code § 49.60.010; Wash. Rev. Code § 49.60.040(26)-(27). Over

DEFENDANT'S MOTION TO DISMISS
2:22-cv-00340-LK

2

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

the years, the HRC has issued regulations it follows to enforce the WLAD according to the statute. Wash. Admin. Code §§ 162-04-010 to 162-40-251. Generally, any person who believes she has been unfairly discriminated against may file a complaint with the HRC. Wash. Rev. Code § 49.60.230(1). The HRC investigates the complaint, and if it believes there may be reasonable cause to believe that the respondent entity violated the WLAD, the HRC may attempt to resolve the matter with the respondent before making any findings of fact or finding of discrimination. Wash. Rev. Code § 49.60.240. If the HRC and the respondent are unable to agree to a pre-finding settlement, then HRC may then make findings of fact and a reasonable cause finding of discrimination. *Id*. In a public accommodations case like this one, the matter would then proceed to an administrative hearing before an administrative law judge. Wash. Rev. Code § 49.60.250. The Washington State Attorney General's Office represents the HRC at the administrative hearing. Wash. Admin. Code § 162-08-041(4). Because the WLAD provides only for civil remedies, *see* Wash. Rev. Code § 49.60.250(5), HRC is a civil, not a criminal, State enforcement agency.[2]

According to Plaintiffs' Complaint, Olympus Spa is a Washington business that has operated for twenty years, and is "specifically designed for women in which its services are closely tied to the Korean tradition which requires its users to be naked while undergoing certain services," namely traditional Korean body scrub (known as "seshin") and massage.[3] ECF 1 ¶¶ 3, 14, 16. In addition, patrons are "typically naked" and can see other patrons when using the spa's whirlpools, traditional Korean body-scrub service area, showers, steam room, and dry sauna. ECF 1 ¶ 15. All Olympus Spa employees who work at one of the two locations—Tacoma and

---

[2] Plaintiffs nonetheless allege that HRC could subject them to criminal penalties. ECF 1 ¶ 26. That is incorrect. None of the statutues or regulations Plaintiffs cite in their Complaint authorizes HRC to take criminal enforcement action, or provide for any criminal penalties at all. HRC's enforcement procedures include administrative and civil enforcement options only. And although Plaintiffs make a fleeting reference to criminal provisions of the Snohmish County Code, *id.* ¶ 28, they make no allegation that any criminal complaint has ever been made regarding their Lakewood location, or that any investigation—let alone prosecution—has ever been threatened.

[3] For purposes of this motion only, Defendant accepts as true the facts alleged in Plaintiffs' Complaint unless otherwise stated herein. ECF 1.

Lynnwood—are female. ECF 1 ¶¶ 14, 16. And all Olympus Spa patrons are persons at least thirteen-years old who have "internal" genitalia, *id*. ¶ 2.b., which "[i]n theory" would include a transgender female (i.e., a person who was assigned male at birth and identifies as female) who has had gender transition surgery. *Id*. ¶ 18.

Plaintiff Myoon Woon Lee owns Olympus Spa; Plaintiff Sun Lee is its president; Plaintiffs Jane Doe Employees 1, 2, and 3 are unidentified Olympus Spa employees who provide spa services to patrons who are either naked or partially naked; and Plaintiff Jane Doe Patron 1 is an unidentified patron who frequents Olympus Spa and uses its spa services while naked or partially naked.[4] *Id*. ¶¶ 4-9. Each of the individual Plaintiffs are Christians who believe "that males and females should not be together [or be viewing each other] in a state of full or partial undress unless married to each other." *Id*. ¶¶ 17, 19-22. Consequently, the three unidentified Olympus Spa employees will not provide services to naked men. *Id*. ¶¶ 19-21.

Olympus Spa alleges an unspecified number of "incidents" of naked men in in its spa area in twenty years of business. *Id*. ¶¶ 23-24. Olympus Spa provides details of only one of those incidents that occurred "about six years ago." *Id*. ¶ 23. According to the Complaint, the manager confirmed that a transgender woman who had not had gender transition surgery was walking around the spa with an open front robe. *Id*. In private, the manager explained to the woman "Olympus Spa's female only policy." The woman "understood and left the spa." *Id*. Olympus Spa alleges that this and similar incidents caused female patrons to feel "upset," experience "humiliation, trauma, and rage that a male was present," and "ask[] for refunds and cancel[] their appointments." *Id*. ¶¶ 23-24. Some never came back. *Id*. ¶ 24.

---

[4] Plaintiffs' use of pseudonyms for some of the individual Plaintiffs violates Federal Rule of Civil Procedure 10(a)'s command that the title of every complaint "include the names of all the parties." Although the Ninth Circuit allows parties to use pseudonyms in rare cases, where the need for anonymity outweighs "the general presumption that parties' identities are public information and the risk of unfairness to the opposing party," .Plaintiffs have neither alleged any facts to support their use of pseudonyms nor filed a motion for leave to proceed with pseudonyms. HRC objects to Plaintiffs' use of pseudonyms without the proper showing of necessity.

DEFENDANT'S MOTION TO DISMISS
2:22-cv-00340-LK

4

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    Haven Wilvich filed a complaint with HRC in May 2020, alleging that Olympus Spa had

2    discriminated against her because she is a transgender female. ECF 1 ¶ 25. Specifically,

3    Ms. Wilvich alleged that in January, Olympus Spa denied her access to its services because of

4    her "sexual orientation," which is defined by the WLAD to include "gender expression or

5    identity." Wash. Rev. Code § 49.60.040(27). Ms. Wilvich alleged that Olympus Spa's owner

6    told her that "transgender women without surgery are not welcome because it could make other

7    customers and staff uncomfortable." ECF 1 ¶ 25. HRC investigated Ms. Wilvich's complaint.

8    *Id.* ¶¶ 26-28. In the course of its investigation, HRC found that "the evidence in this investigation

9    supports that [Olympus Spa's] 'biological women' policy is not compliant with the [WLAD],

10   which prohibits discrimination based on gender identity in places of public accommodation."

11   *Id.* ¶ 29; Declaration of Sun Lee, ECF 1-3 at 15. HRC explained further:

12   > Olympus Spa's 'biological women' policy focuses on the genitals of patrons
13   > rather than allowing transgender women to access [Olympus Spa's] facilities
     > based on their gender identity as required by WAC 162-32-060. Additionally, any
14   > dress and grooming standards Olympus Spa cites are clearly applied unequally to
     > patrons of the spa, as cisgender women are allowed to be fully nude in the spa
15   > while transgender women who have not had surgery are prohibited from even
     > entering the spa. This practice is clearly discriminatory and violates the WLAD.
16

17   ECF 1-3 at 16.

18       As part of the HRC's investigation, HRC offered Olympus Spa the option of a pre-finding

19   settlement agreement to resolve the legal issues raised by Ms. Wilvich's complaint without the

20   need for further proceedings or enforcement action. *Id.* at 15. Under the pre-finding settlement

21   agreement, HRC would end its investigation, and Olympus Spa would—without admitting any

22   violation of State law—update its policies and procedures to avoid discriminating on the basis

23   of gender. *Id.* The benefits of this option for both parties include prompt compliance with the

24   law, avoiding the costs of non-compliance and litigation and reducing the likelihood of future

25   complaints. *Id.* Olympus Spa responded that it has no records or recollection of Ms. Wilvich

26   visiting either Olympus Spa location around January 2020. ECF 1 ¶ 30; ECF 1-3 at 18. In reply,

1   HRC reiterated its belief that "Olympus Spa's 'biological women' entry policy is not compliant

2   with the [WLAD], which prohibits discrimination on the basis of gender identity in places of

3   public accommodation." ECF 1-3 at 20. HRC gave Olympus Spa a choice: (1) enter into a

4   pre-finding settlement agreement "to resolve the complaint without an admission of [violation]

5   or formal findings of fact entered against Olympic Spa," or (2) HRC would prepare "the case for

6   referral to the Attorney General's Office for prosecution." *Id.*

7       Olympus Spa chose to enter into a pre-finding settlement agreement and resolve the

8   complaint. ECF 1 ¶ 33. HRC proposed that the settlement would memorialize that Olympus Spa

9   already had removed from its website any reference to "biological women" prior to signing the

10  settlement agreement, that HRC would provide Olympus Spa with training materials to ensure

11  Olympus Spa's understanding and compliance with the WLAD, and that HRC would review

12  Olympus Spa's policies to ensure compliance with the WLAD. *Id.* ¶ 34. The final, executed

13  agreement contains those terms and includes the following provision proposed by Olympus Spa:

14          This agreement does not preclude Respondent, its employees, or patrons from
            exercising their constitutional rights to seek a change in the law through legislation
15          or bringing a legal challenge as to the constitutionality of any term or provision in
            this agreement, or the operative statutes, including but not limited to RCW 49.60,
16          et. seq., implementing regulations and related policies of the Washington State
            Human Rights Commission.
17

18  ECF 1-3 at 37. The pre-finding settlement agreement became effective on October 7, 2021.

19  *Id.* at 38.

20      Plaintiffs' Complaint essentially ends there. It contains no allegations that the HRC

21  continued investigating Olympus Spa or enforcing any law against Olympus Spa after this date.

22  *See* ECF 1. It contains no allegations that HRC has threatened further enforcement action, no

23  allegations that Plaintiffs in fact intend to breach the settlement agreement or violate the WLAD

24  in the future, and no allegations that any specific transgender woman who has not undergone

25  gender transition surgery has or will soon attempt to access Olympus Spa's services.

26  Nevertheless, Olympus Spa filed this action on March 22, 2022. ECF 1; ECF 1-3 at 36.

# III.    ARGUMENT

1

2          HRC respectfully moves to dismiss this action under Federal Rules of Civil Procedure

3   12(b)(1) and 12(b)(6). HRC moves under Rule 12(b)(1) because this action does not present a

4   live case or controversy over which this Court has subject matter jurisdiction. For this issue, this

5   Court "need *not* assume the truthfulness of the complaint," and may "mak[e] a legal judgment

6   as to the finality of [a party's] actions and consequently as to its jurisdiction over the claims."

7   *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 732 n.4 (9th Cir. 2006). Here, Olympus Spa

8   voluntarily settled the claims it raises, and HRC ended its investigation, declined to take any

9   enforcement action against Olympus Spa, and never took any action against the individual

10  plaintiffs. Plaintiffs are also barred from seeking any retrospective relief against the HRC's

11  Director in her official capacity for any prior actions. With respect to their claims for prospective

12  relief, Plaintiffs lack standing and present unripe claims because there is no controversy to

13  resolve and nothing other than pure speculation by Plaintiffs about what may or may not happen

14  in the future. The mere possibility that a similar situation might arise in the future is too uncertain

15  to sustain Plaintiff's standing.

16         Even if the Court had jurisdiction—which it does not—the Complaint should be

17  dismissed under Rule 12(b)(6) because it does not contain "sufficient factual matter, accepted as

18  true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

19  (2009). "This standard does not rise to the level of a probability requirement, but it demands

20  'more than a sheer possibility that a defendant has acted unlawfully.'" *Landers v. Quality

21  Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal*, 566 U.S. at 678). The

22  complaint must set forth facts, not labels or conclusions. *Bell Atl. Corp. v. Twombly*,

23  550 U.S. 544, 555 (2007). While the court must assume the truth of all facts alleged in the

24  complaint and view them in a light most favorable to the nonmoving party, it need not accept

25  any legal conclusion set forth in the complaint. *Iqbal*, 556 U.S. at 678. As explained below,

26  Olympus Spa's Complaint fails to state a claim as a matter of law because the Eleventh

1   Amendment bars damages, and the U.S. Supreme Court has rejected all three of the First

2   Amendment arguments Olympus Spa raises in support of its request for declaratory and

3   injunctive relief. The WLAD is a longstanding and narrowly tailored antidiscrimination law that

4   Olympus Spa, as a public facing business in Washington, must follow. The Complaint should be

5   dismissed with prejudice.

6   **A.      Plaintiffs Are Barred from Seeking Any Form of Damages Under the Eleventh**

7   **Amendment and Supreme Court Precedent Interpreting Section 1983**

8           As a threshold matter, Plaintiffs' claims for damages must be dismissed as a matter of

9   law. It is black letter law that "[s]tate officers in their official capacities, like States themselves,

10  are not amenable to suit for damages under § 1983." *Arizonans for Off. Eng. v. Arizona*,

11  520 U.S. 43, 69 n.24 (1997) (citation omitted). This prohibition includes claims for nominal

12  damages. *Id*. at 69. As a result, each of Plaintiffs' claims that seek retrospective relief—namely,

13  nominal damages—is barred by the Eleventh Amendment and fails to state a claim because state

14  officials sued in their official capacities are not "persons" for purposes of Section 1983. *See, e.g.*,

15  *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010) (treating suit against state

16  officials in their official capacities as a suit against the state of California and holding the

17  Eleventh Amendment barred plaintiffs' suit for official capacity damages); *Nat. Res. Def.*

18  *Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 422 (9th Cir. 1996) ("In particular, when a plaintiff

19  brings suit against a state official alleging a violation of federal law, the federal court . . . may

20  not award retroactive relief that requires the payment of funds from the state treasury") (citations

21  omitted); *Munywe v. Peters*, No. 3:21-cv-05431-BJR-JRC, 2021 WL 5514810, at *6

22  (W.D. Wash. Nov. 24, 2021) (dismissing claims for nominal damages sought against

23  Washington State agency because "[s]tates, state agencies, and state officers sued in their official

24  capacities are absolutely immune from damage actions in federal court pursuant to the Eleventh

25  Amendment"). The Court should dismiss Plaintiffs' claims for nominal damages.

26

**B.** **Plaintiffs Lack Standing to Seek Declaratory and Injunctive Relief Because Olympus Spa Voluntarily Settled the Only Prior Complaint with HRC and Fails to Allege Any Risk of Imminent Harm from HRC**

Plaintiffs' claims for prospective declaratory and injunctive relief likewise must be dismissed because Plaintiffs lack Article III standing. It is well established that a plaintiff's claims must arise from facts that present a justiciable case or controversy in order for a federal court to have subject matter jurisdiction to hear them. *See Flast v. Cohen*, 392 U.S. 83, 94-5 (1968); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-60 (1992). The Supreme Court has explained:

> Plaintiffs must demonstrate a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues" necessary for the proper resolution of constitutional questions. Abstract injury is not enough. The plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical."

*City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02 (1983) (internal citations omitted). Standing is determined when the action begins, *see Arizonans*, 520 U.S. at n.22, and must be shown "separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000).

The party invoking federal court jurisdiction has the burden to demonstrate the three elements that constitute the "irreducible constitutional minimum" of standing. *Lujan*, 504 U.S. at 561. In particular, Plaintiffs must show: (1) that they "have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical;'" (2) that their injury is fairly traceable to a defendant's conduct, and (3) that a favorable decision would likely—i.e., significantly increase the likelihood, as opposed to merely speculatively—redress the injury suffered. *Id*. at 560–61 (citations omitted); *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012). At the

DEFENDANT'S MOTION TO DISMISS
2:22-cv-00340-LK

9

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

1    pleading stage, the plaintiff must allege facts from which a court may reasonably infer that the

2    plaintiff has standing. *See Lyons*, 461 U.S. at 110; *Iqbal*, 556 U.S. at 678.

3        As discussed below, Plaintiffs' Complaint contains no allegations that plausibly establish

4    the three standing elements as to Plaintiffs' prospective claims for declaratory and injunctive

5    relief.

6        **1.      Plaintiffs lack standing for their claims for prospective relief because their**

7             **allegations show no real and immediate injury in fact**

8        First, Plaintiffs lack standing to maintain their claims for purely prospective relief—

9    declaratory judgment and an injunction—because Plaintiffs fail to allege that they are in any

10   danger of sustaining any injury that is both real and immediate. *Lujan*, 504 U.S. at 560-61. There

11   must be harm that is 'certainly impending,' or "a 'substantial risk' that the harm will occur."

12   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, n.5 (2013). Plaintiffs cannot rely on "mere

13   conjecture," to make this showing; they must rather allege "concrete evidence." *Id.* at 420. "Past

14   exposure to illegal conduct does not in itself show a present case or controversy regarding

15   injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea

16   v. Littleton*, 414 U.S. 488, 495-96 (1974) (the perceived threat to plaintiffs was too speculative

17   "to show an existing controversy [with respect to injunctive relief] simply because [plaintiffs]

18   anticipate violating lawful criminal statutes and being tried for their offenses, in which event

19   they may appear before petitioners and, if they do, will be affected by the allegedly illegal

20   conduct charged"); *see also Lyons*, 461 U.S. 95 (plaintiff lacked standing for injunctive relief

21   against city's chokehold policy because it was mere speculation that plaintiff "would again be

22   stopped for a traffic violation, or for any other offense, by an officer or officers who would

23   illegally choke him into unconsciousness without any provocation or resistance on his part").

24       Courts have repeatedly recognized that plaintiffs lack standing to seek injunctive relief

25   where they are not facing a risk of actual and imminent harm. *See, e.g.*, *Ashcroft v. Mattis,

26   431 U.S. 171, 172-3, n.2 (1977) (plaintiff father of son killed by police lacked standing for

1    declaratory judgment that the statute allowing police to use deadly force was unconstitutional

2    because the threat of real and immediate harm was too speculative where plaintiff alleged that

3    he had "another son who 'if ever arrested or brought under an attempt at arrest on suspicion of a

4    felony, might flee or give the appearance of fleeing, and would therefore be in danger of being

5    killed by these defendants or other police officers'"); *Rizzo v. Goode,* 423 U.S. 362, 372-73

6    (1976) (no standing to seek injunctive relief where plaintiffs showed only a few previous

7    instances of violations by a few unnamed police officers); *Golden v. Zwickler,* 394 U.S. 103, 109

8    (1969) (plaintiff lacked standing to seek declaratory relief that a campaign statute was

9    unconstitutional because plaintiff was no longer a political candidate, faced no risk of immediate

10   harm, and merely alleging that he may one day run again was insufficient); *Cf. Susan B. Anthony*

11   *List v. Driehaus*, 573 U.S. 149 (2014) (emphasis added) (citation omitted) (plaintiffs had alleged

12   injury in fact where plaintiffs' complaint for declaratory and injunctive relief described in

13   specific detail the conduct plaintiffs would engage in that was proscribed by the statute they were

14   challenging, where there would be opportunity for plaintiffs to engage in that conduct, and where

15   there was a history of past state criminal enforcement of that statute against plaintiffs' planned

16   conduct); *Holder v. Humanitarian Law Project,* 561 U.S. 1 (2010) (plaintiffs had standing to

17   challenge a law criminalizing the support of designated terrorist organizations, where plaintiffs

18   had provided support to such groups before, alleged that their support would continue, and the

19   government had charged 150 persons with violating the law).

20        Plaintiffs' alleged injury in fact here is a far cry from the real and immediate nature of

21   likely harm needed to support standing. Their Complaint fails to allege any facts to indicate they

22   are continuing to refuse service to transgender female patrons who have not yet undergone

23   gender transition surgery or even that they have a specific plan to begin doing so. Indeed, the

24   Complaint does not even indicate that any transgender female patrons who have not yet

25   undergone gender transition surgery have attempted to access the spa between the time of the

26   prior settlement agreement and the time of the Complaint, or that specific transgender individuals

1    intend to do so. And even if they had, Plaintiffs have alleged nothing demonstrating that HRC is

2    likely to receive another complaint from an unknown complainant who is a pre-surgery

3    transgender woman, conduct another investigation, and take imminent enforcement action, or

4    that Olympus Spa will be required to allow any such unspecified patrons into the spa over their

5    objection. The facts in Plaintiffs' Complaint indicate the opposite is true.

6         In the course of HRC's investigation, Olympus Spa voluntarily settled Ms. Wilvich's

7    complaint, promising to conduct its business so as not to discriminate against transgender

8    women. HRC stopped its investigation of Olympus Spa as a result. No formal finding of

9    discrimination was ever made and the case went no further. Any justiciable case or controversy

10   between HRC and Olympus Spa ended with the execution of the settlement agreement

11   five-and-a-half months before Plaintiffs filed their Complaint. And HRC never took any action

12   with respect to the individual Plaintiffs, so there was never any case or controversy as to them.

13        Moreover, the Complaint alleges precisely one situation in Olympus Spa's twenty years

14   of operation that a transgender woman who had not undergone gender transition surgery tried to

15   access Olympus Spa's services. ECF 1 ¶ 23 (describing single incident "about six years ago").

16   Olympus Spa repeatedly denies that Ms. Wilvich ever visited either of its locations, *id*. ¶¶ 29,

17   30, 33; ECF 1-3 at 18, 22, and only vaguely alleges "other incidents" of "male genitals exposed

18   in the locker room and/or pool area," ECF 1 ¶ 24. But those allegations contain no other details,

19   such as dates, what occurred, whether the patrons with exposed "male genitals" were transgender

20   women, or whether Olympus Spa refused to serve them. No conclusion can be made about the

21   gender of these patrons and whether they were allowed to access Olympus Spa's services in a

22   non-discriminatory manner.

23        Based on Plaintiffs' threadbare allegations, Plaintiffs are at no risk of suffering real and

24   immediate harm. Based on Olympus Spa's allegations, transgender women who have had gender

25   transition surgery would be welcome. ECF 1 ¶ 18; ECF 1-3 at 11. As for transgender women

26   who have not had gender transition surgery, Olympus Spa alleges that exactly one such person

1   has attempted to patronize the spa in twenty years, and that incident apparently did not result in

2   a complaint of discrimination to HRC. One incident in twenty years is nowhere near sufficient

3   for Plaintiffs to show a real and immediate harm in the future that would be sufficient to

4   demonstrate standing to obtain injunctive relief now. *See Lyons*, 461 U.S. at 100 (complaint fails

5   to allege real and immediate harm when the facts indicate uncertainty that future incidents are

6   likely to occur); *cf. Driehaus*, 573 U.S. at 159 (complaint alleges injury-in-fact when facts show

7   that the conduct that the challenged law allegedly prohibits is likely to occur in the future). And

8   while Plaintiffs do not allege any specific intention to change their policies in the future, even if

9   they did, they would still lack standing because they have no way to plausibly allege that their

10   discrimination would result in a complaint to HRC, and that HRC would investigate and find

11   discrimination and take enforcement action. By their own facts, that situation is unlikely, given

12   that the one incident of gender discrimination that they allege did not result in that patron

13   complaining to HRC.

14        In short, there is no credible threat of real or immediate harm to Plaintiffs. Olympus Spa

15   had their chance to litigate Ms. Wilvich's complaint and chose to end the case or controversy

16   with HRC. If another, similar situation were to arise at some point in the future, and Olympus

17   Spa were to violate the WLAD and refuse to enter into a pre-finding settlement, and HRC

18   pursued enforcement of the WLAD against Olympus Spa, then perhaps Olympus Spa would

19   have standing to litigate the issue under those concrete facts. And indeed, the appropriate place

20   to do so would be through the civil administrative process that includes judicial review in

21   Washington's courts. But the facts of those future complaints, if they occur, are yet unknown

22   and not before this Court now, and Plaintiffs' own allegations indicate it is unlikely to occur in

23   the future. This Court should dismiss Plaintiff's Complaint with prejudice.

24        **2.      Plaintiffs' alleged injury is not fairly traceable to HRC's actions**

25        In addition, Article III standing requires Plaintiffs to show that their alleged injury is

26   "fairly traceable" to HRC's actions and that a favorable decision would significantly increase

1   the likelihood of redressing Plaintiffs' injury. *See Lujan*, 504 U.S. at 560–61 (citations omitted).

2   Traceability asks whether Defendant's conduct caused Plaintiffs' alleged injury. *Wash. Env't*

3   *Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (citation omitted).

4          Here, Plaintiffs voluntarily settled Ms. Wilvich's complaint to HRC, thereby

5   short-circuiting any civil enforcement action through the State's administrative process. There

6   is no ongoing State action against Olympus Spa or threat of imminent State enforcement action

7   against them. Any alleged "harm" to Plaintiffs is being caused by Olympus Spa's decision to

8   change its discriminatory website language, end its discriminatory business practices, and make

9   contractual promises not to engage in these practices again. In exchange for those actions,

10  Olympus Spa benefited by HRC not entering into public record any finding of discrimination

11  and avoided further investigation and litigation by HRC. Of course, Olympus Spa could have

12  declined to settle and availed itself of the opportunity to litigate its concerns about the WLAD

13  in the appropriate State forum. Instead, it chose to settle and end the dispute. Any alleged harm

14  to Plaintiffs is fairly traceable to Olympus Spa's own decision to settle and change its practices,

15  and such self-inflicted harm cannot support Plaintiffs' standing. *See Clapper*, 568 U.S. at 416

16  ("Respondents' contention that they have standing because they incurred certain costs as a

17  reasonable reaction to a risk of harm is unavailing—because the harm respondents seek to avoid

18  is not certainly impending. In other words, respondents cannot manufacture standing merely by

19  inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly

20  impending."); *Nat'l Fam. Plan. & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831

21  (D.C. Cir. 2006) (plaintiff's failure to seek clarification from the agency is a harm that is not

22  fairly traceable to defendant's conduct because it is self-inflicted and "does not amount to an

23  'injury' cognizable under Article III").

24  //

25  //

26

1  **3.      No relief would redress Plaintiffs' alleged harm because the decision to settle**
2         **ended all State action against Olympus Spa**

3         Plaintiffs satisfy standing's redressability element by showing "that there would be a
4  'change in a legal status,' and that a 'practical consequence of that change would amount to a
5  significant increase in the likelihood that the plaintiff would obtain relief that directly redresses
6  the injury suffered.'" *Renee v. Duncan*, 686 F.3d 1002, 1013 (9th Cir. 2012) (citation omitted).
7  For example, the Ninth Circuit in *Drake v. Obama*, 664 F.3d 774, 784 (9th Cir. 2011), held that
8  the plaintiffs' claims were not redressable. The plaintiffs—political candidates for U.S. president
9  and an elector who preferred those candidates—filed their complaint after President Obama was
10 officially sworn in as President. *Id*. at 783. The election was over, and with it went the plaintiffs'
11 interest in a fair election. *Id*. at 783-84.

12        Plaintiffs here are like the plaintiffs in *Drake*. The *Drake* Court could not provide any
13 relief to those plaintiffs because the election was over, and President Obama had been sworn in.
14 The possibility of harm—the potential loss of an election—had passed. Here, this Court cannot
15 provide any relief to Plaintiffs because the settlement agreement ended HRC's investigation of
16 Olympus Spa and there was never any HRC action taken toward the individual Plaintiffs. Again,
17 Olympus Spa did not have to settle. It could have refused, waited for any HRC enforcement, and
18 litigated Ms. Wilvich's complaint through the State's administrative proceedings, State courts,
19 and ultimately sought review in the U.S. Supreme Court. Instead, it entered into a settlement
20 agreement, from which it now seeks no relief or redress in this Court.

21        HRC anticipates that Plaintiffs will nonetheless argue that the settlement agreement
22 provision that purports to reserve a right for Plaintiffs to constitutionally challenge the WLAD
23 preserves Plaintiffs' standing here. That is contrary to long-settled law: "lack of federal
24 jurisdiction cannot be waived or be overcome by an agreement of the parties." *Mitchell*
25 *v. Maurer*, 293 U.S. 237, 244 (1934); *United Invs. Life Ins. Co. v. Waddell & Reed Inc.*,
26 360 F.3d 960, 966–67 (9th Cir. 2004) (quoting *Mitchell*, 293 U.S. at 244). Plaintiffs cannot

1    confer subject matter jurisdiction on the Court merely because they inserted a provision into the

2    settlement agreement providing that they could invoke their constitutional rights down the road.

3         In sum, the facts alleged in Plaintiffs' Complaint fail to support Article III standing for

4    Plaintiffs to maintain their claims for prospective, equitable relief. Because the parties here

5    settled Ms. Wilvich's HRC complaint, there is no State finding of discrimination, no State

6    investigation, no State enforcement, and no live case or controversy. Olympus Spa cannot show

7    a real and immediate injury and manufacture Article III standing simply by speculating that it

8    might again be subject to an HRC investigation for gender-identity discrimination in the future.

9    *Lyons*, 461 U.S. at 104.

10   **C.    This Case Is Not Ripe for Review Because It Rests on Events That May Not Occur**
11   **at All**

12        Plaintiffs' claims are also unripe for review. As the Supreme Court has explained, "[a]

13   claim is not ripe for adjudication if it rests upon contingent future events that may not occur as

14   anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998)

15   (internal quotations and citations omitted). The ripeness doctrine "is designed to 'prevent the

16   courts, through avoidance of premature adjudication, from entangling themselves in abstract

17   disagreements . . . and also to protect . . . agencies from judicial interference until an

18   administrative decision has been formalized and its effects felt in a concrete way by the

19   challenging parties." *Safer Chems., Healthy Families v. U.S. Env't Prot. Agency*, 943 F.3d 397,

20   411 (9th Cir. 2019) (quotations omitted). Thus, "[t]o satisfy the constitutional ripeness

21   requirement, a case 'must present issues that are definite and concrete, not hypothetical or

22   abstract.'" *Id.*

23        Plaintiffs' claims for prospective declaratory and injunctive relief fail this test because

24   they rest on contingent future events that may never happen. The Complaint alleges only one

25   instance in twenty years where a transgender woman who had not had gender transition surgery

26   patronized Olympus Spa, and Olympus Spa turned her away because of her pre-surgery

1    transgender status. The Complaint nowhere alleges that this fact pattern is likely to repeat, to

2    result in a complaint to the HRC, or to result in an enforcement action by the HRC. One instance

3    in the past twenty years means that Plaintiffs' claims are not ripe for federal court review.

4    **D.    Even if Plaintiffs Had Standing and Their Claims Were Ripe, the Complaint Fails**

5    **to State a Claim for Relief Under Well-Established Supreme Court Precedent**

6           Plaintiffs do not deny that their business practice of refusing their spa services to

7    transgender women who have not had gender transition surgery violates the WLAD's prohibition

8    of discriminating based on gender in a place of public accommodation.

9    *See* Wash. Rev. Code §§ 49.60.030(1)(b), .040(26), .215. They instead argue—wrongly—that

10   the First Amendment's protections for religious exercise, free speech, and free association justify

11   their unlawful discrimination. Supreme Court precedent establishes that Plaintiffs' claims fail.

12   This Court should reject their request for a license to discriminate in the provision of services to

13   Washingtonians and dismiss the Complaint.

14         **1.    Plaintiffs' right to freely exercise their religion must comply with a valid,**

15         **neutral law of general applicability, such as the WLAD**

16          Plaintiffs incorrectly contend that otherwise-illegal discrimination may be excused if it

17   is motivated by religion. This is not the law. The Free Exercise Clause provides: "Congress shall

18   make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. The right to

19   freely exercise one's religion, however, "does not relieve an individual of the obligation to

20   comply with a valid and neutral law of general applicability on the ground that the law proscribes

21   (or prescribes) conduct that her religion prescribes (or proscribes)." *Emp. Div., Dep't of Hum.*

22   *Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990) (internal quotation marks omitted). Thus, "a law

23   that is neutral and of general applicability need not be justified by a compelling government

24   interest even if the law has the incidental effect of burdening a particular religious practice."

25   *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993). Indeed,

26   "[w]hen followers of a particular sect enter into commercial activity as a matter of choice, the

1   limits they accept on their conduct as a matter of conscience and faith are not to be superimposed

2   on the statutory schemes which are binding on others in that activity." *United States v. Lee*,

3   455 U.S 252, 261 (1982). Courts therefore have consistently rejected Plaintiffs' argument,

4   because accepting it would "make the professed doctrines of religious belief superior to the law

5   of the land, and in effect [ ] permit every citizen to become a law unto himself." *Reynolds*

6   *v. United States*, 98 U.S. 145, 167 (1878).

7          The WLAD is a neutral law of general applicability because it does not specifically target

8   any religious practice or conduct—that is, it does not restrict any conduct *because* that conduct

9   is motivated by religion. *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 523, 441 P.3d 1203,

10  1231 (2019), *cert. denied*, 141 S. Ct. 2884, 210 L. Ed. 2d 991 (2021) ("The WLAD is a neutral,

11  generally applicable law subject to rational basis review.") (citing *Emp't Div., Dep't of Hum.*

12  *Res. v. Smith*, 494 U.S. 872 (1990)); c*f. Lukumi*, 508 U.S. at 533 ("[I]f the object of a law is to

13  infringe upon or restrict practices because of their religious motivation, the law is not neutral.");

14  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1134 (9th Cir. 2009) ("A law is not generally

15  applicable when the government, 'in a selective manner, imposes burdens only on conduct

16  motivated by religious belief.'") (quoting *Lukumi*, 508 U.S. at 543). The WLAD simply prohibits

17  discriminatory conduct, regardless of its motivation, whether tradition, custom, prejudice,

18  personal distaste, ignorance, religion, or some other reason. Wash. Rev. Code § 49.60.010. The

19  WLAD, of course, also prohibits discrimination on the basis of religion.

20  Wash. Rev. Code § 49.60.030(1). To say that a law meant to prevent religious and other forms

21  of discrimination is actually aimed at implementing such discrimination turns the law on its head.

22          Because the WLAD is a neutral law of general applicability, it is subject to rational basis

23  review. In other words, the question is merely whether the WLAD's provision prohibiting

24  discrimination based on gender identity in places of public accommodation is plausibly related

25  to Washington's stated objective, namely the "elimination and prevention of discrimination

26  in . . . places of public resort [and] accommodation." Wash. Rev. Code § 49.60.010; *see also*

1   *Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1084 (9th Cir. 2015) (Washington state rules

2   regulating pharmacists and pharmacies did not violate plaintiffs' constitutional right to free

3   exercise of religion because they were neutral, generally applicable, and rationally related to

4   Washington's legitimate interest in insuring that its residents have safe and timely access to

5   lawful and lawfully described medications). The WLAD survives that test without question.

6   *Arlene's Flowers*, 193 Wn.2d at 523 ("And the WLAD clearly meets that [rational basis review]

7   standard: it is rationally related to the government's legitimate interest in ensuring equal access

8   to public accommodations.") (citation omitted).

9        Even if this Court were to apply strict scrutiny, which would only apply if the Court

10   concluded that the WLAD targets religious exercise, the WLAD is narrowly tailored to further

11   the government's compelling interest in eradicating discrimination. *See Lukumi*,

12   508 U.S. at 531–32 (1993) ("A law failing to satisfy [neutrality and general applicability

13   standards] must be justified by a compelling governmental interest and must be narrowly tailored

14   to advance that interest."). It is black letter law that a state has a compelling interest in eradicating

15   discrimination against protected classes. *N. Y. State Club Ass'n v. City of New York*, 487 U.S. 1,

16   14 n.5 (1988) (explaining that "the Court has recognized the State's 'compelling interest' in

17   combating invidious discrimination"); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,

18   481 U.S. 537, 549 (1987) (public accommodation laws in particular plainly serve compelling

19   state interests of the highest order (internal quotations and citations omitted). And the WLAD is

20   narrowly tailored to achieve that purpose because the least restrictive means to end

21   discrimination is to prohibit it. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733

22   (2014) ("The Government has a compelling interest in providing an equal opportunity to

23   participate in the workforce without regard to race, and prohibitions on racial discrimination are

24   precisely tailored to achieve that critical goal").

25        In sum, Plaintiffs Free Exercise claim fails because the WLAD is a neutral law that

26   applies generally to everyone, and it is the least restrictive way to achieve Washington's

compelling interest of eradicating discrimination in places of public accommodation. Olympus Spa chose to enter the Washington marketplace, with all of the benefits and burdens of doing business here. The WLAD does not violate Plaintiffs' First Amendment right to freely exercise their religion. This Court should dismiss this claim.

### 2. Plaintiffs have no free speech right to discriminate based on gender identity

The state generally cannot compel people to speak a particular message. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 61 (2006). That is not what HRC or the WLAD did to Plaintiffs here, especially Plaintiff Jane Doe Patron 1, who cannot be said to be speaking when she visits the spa to receive or use spa services. With respect to the other Plaintiffs, the WLAD simply requires that if they wish to provide spa services to the public in Washington, that they provide those services on an equal basis. HRC notified Olympus Spa in April 2021 that its "biological women" policy likely violated the WLAD's prohibition on gender-identity discrimination in a place of public accommodation because the policy "focuses on the genitals of patrons rather than allowing transgender women to access [Olympus Spa's] facilities based on their gender identity." ECF 1-3 at 15-16. As part of the pre-finding settlement agreement, Olympus Spa changed that policy to avoid further investigation. But that change cannot be the basis for Plaintiffs' free speech claim because Olympus Spa made the change voluntarily, and because the Supreme Court has routinely upheld public accommodation laws against freedom-of-expression challenges. *See, e.g.*, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 260 (1964) ("[I]n a long line of cases this Court has rejected the claim that the prohibition of racial discrimination in public accommodations interferes with personal liberty."); *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984) (law designed to "assur[e] [state] citizens equal access to publicly available goods and services" is constitutional and "unrelated to the suppression of expression"); *Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Bos.*, 515 U.S. 557, 571-72 (1995) ("public accommodations statutes . . . are well within the State's usual power," and "do not, as a general matter, violate the First or Fourteenth Amendments");

DEFENDANT'S MOTION TO DISMISS
2:22-cv-00340-LK                                    20                    ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

*Emilee Carpenter, LLC v. James*, No. 21-CV-6303-FPG, 2021 WL 5879090, at *17 (W.D.N.Y. Dec. 13, 2021) (New York's prohibition of wedding photographer's policy that she does not photograph same-sex weddings does not violate her First Amendment free speech rights).

Finally, the First Amendment's Free Speech Clause does protect some conduct, but only when it is "inherently expressive." *Rumsfeld, Inc.*, 547 U.S. at 66. Operating a commercial business to provide spa services is not inherently expressive. *Arlene's Flowers*, 193 Wn.2d at 533 ("the Supreme Court has never held that a commercial enterprise, open to the general public, is an 'expressive association' for purposes of First Amendment protections") (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)). The same is true for working at a spa or visiting a spa. Plaintiffs' free speech claim should be dismissed.

### 3.    The First Amendment's right to free association does not apply to the large and unselective group of Olympus Spa employees and patrons

Plaintiffs' free association claims also fails as a matter of law. The First Amendment's right to freedom of association is not unlimited. *U.S. Jaycees*, 468 U.S. at 619. It protects certain types of intimate relationships, such as the choice of one's spouse, to safeguard "the individual freedom that is central to our constitutional scheme." *Id.* at 618-19. It also protects personal associations "for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* "Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty." *Id.* at 619. The First Amendment shields only associations that exemplify these purposes. *Id.*

A Court considers the following factors when determining state authority over an individual's freedom of association: "size, purpose, policies, selectivity, congeniality, and other characteristics that in a particular case may be pertinent." *Id.* at 620. Generally, associations that lie beyond state regulation are "distinguished by such attributes as relative smallness, a high

1    degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others

2    in critical aspects of the relationship. *U.S. Jaycees*, 468 U.S at 620. A large business enterprise

3    serving the public lacks these qualities and would not be protected. *Id*. ("an association lacking

4    these qualities—such as a large business enterprise—seems remote from the concerns giving

5    rise to [the Free Association Clause's] constitutional protection"); *see also*, *City of Dallas*

6    *v. Stanglin,* 490 U.S. 19, 24 (1989) (city ordinance restricting attendance at certain dance halls

7    did not violate associational freedoms of dance hall operator because gathering to dance

8    recreationally is neither an intimate human association nor expressive conduct protected by the

9    First Amendment); *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984) (Title VII's prohibition

10   on discrimination in employment does not infringe on a private law firm's free association

11   rights). Even a commercial single-member photography limited liability company's association

12   with its patrons is not the type protected by the First Amendment. *Emilee Carpenter*,

13   2021 WL 5879090, at *17.

14         Plaintiffs' Complaint admits that Olympus spa has been a private commercial business

15   in Washington for twenty years. As such, the First Amendment does not protect the association

16   between and among its owners, staff, and customers. In any case Plaintiffs allege no facts

17   indicating that such relationships bear the characteristics of personal associations protected by

18   the First Amendment. To be sure, the individual—and unidentified—Plaintiffs claim they share

19   the same religion and beliefs regarding nudity between unmarried men and women, but there is

20   no allegation that all patrons or all employees share that religion or that belief. There is no

21   allegation that Olympus Spa screens its employees and patrons for these criteria. The First

22   Amendment no more secures the association between Olympus Spa's large number of

23   unselective employees and customers as it does the association between members of the Jaycees.

24   *U.S. Jaycees,* 468 U.S. at 620 (rejecting free association claim from "large and basically

25   unselective group" that wanted to exclude women members). Plaintiff's freedom of association

26   claim fails, and this Court should dismiss it.

1

### IV.    CONCLUSION

2          Plaintiffs' Complaint fails to allege facts sufficient to confer Article III jurisdiction

3    because Plaintiffs lack standing and their claims are not ripe. And even if the Court had

4    jurisdiction, every constitutional claim Plaintiffs raise fails as a matter of law. If religious beliefs,

5    free speech rights, or the right of association justified public businesses in ignoring

6    anti-discrimination laws, such laws would be left with little effect, and our State and country

7    never would have made the enormous progress we have made toward eradicating such

8    discrimination. HRC respectfully asks that Court dismiss Plaintiffs' Complaint, with prejudice,

9    in its entirety. Counsel for Plaintiffs and Defendant conferred via telephone conversation on

10    March 11, 2022, as required by the Court's Standing Order for All Civil Cases, Section I.B.1.c).

11          DATED this 12th day of May, 2022.

12                                                  Respectfully submitted,

13                                                  ROBERT W. FERGUSON
                                                    Attorney General of Washington
14

15

16                                                  NEAL LUNA, WSBA No. 34085
                                                    Assistant Attorney General
17                                                  Wing Luke Civil Rights Division
                                                    Office of the Attorney General
18                                                  800 Fifth Avenue, Suite 2000
                                                    Seattle, WA 98104
19                                                  (206) 287-4189
                                                    neal.luna@atg.wa.gov
20

21

22

23

24

25

26

DEFENDANT'S MOTION TO DISMISS                23          ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-LK                                                    Civil Rights Division
                                                                800 Fifth Avenue, Suite 2000
                                                                   Seattle, WA  98104
                                                                      (206) 464-7744

1

**CERTIFICATE OF SERVICE**

2      I hereby certify that the foregoing document was electronically filed with the United

3   States District Court using the CM/ECF system. I certify that all participants in the case are

4   registered CM/ECF users and that service will be accomplished by the appellate CM/ECF

5   system.

6      DATED this 12th day of May, 2022 in Seattle, Washington.

7

8   _____

Allie Lard

9   Legal Assistant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26