The Honorable Lauren King

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

OLYMPUS SPA, MYOON WOON LEE, SUN LEE, JANE DOE EMPLOYEE 1, JANE DOE EMPLOYEE 2, JANE DOE EMPLOYEE 3, JANE DOE PATRON 1,

Plaintiffs,

v.

SHARON ORTIZ, in her official capacity as Executive Director of the Washington State Human Rights Commission,

Defendant.

NO. 2:22-cv-00340-TLF

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**

NOTE ON MOTION CALENDAR: JUNE 23, 2022

ORAL ARGUMENT REQUESTED



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# I. INTRODUCTION

Plaintiffs admit that their Complaint is not based on actual facts: "This is not an appeal of the complaint filed by Haven Wilvich and settled by [the Human Rights Commission], but a challenge to the law itself." ECF 14 at 27. That dooms Plaintiffs' Article III standing, as it confirms that their claims rest entirely on conjecture and hypothetical injuries. It is hornbook law that federal Courts do not issue advisory opinions, and "a few words of general intent" to trigger the challenged law at some point in the future, without more, show only a generalized grievance that is insufficient to confer standing. *Carney v. Adams*, 141 S. Ct. 493, 501 (2020). And even if Plaintiffs had standing, which they do not, Supreme Court precedent bars their claims on the merits. This case should be dismissed with prejudice.

# II. ARGUMENT

## A. Plaintiffs Lack Standing Because Their Alleged Injury Is Too Speculative

For multiple reasons, Plaintiffs fail to establish the "irreducible constitutional minimum" needed to confer standing. The first is that under their own allegations, Plaintiffs rely on speculation and conjecture insufficient to demonstrate cognizable injury in fact. Plaintiffs bear the burden of showing that their "injury is certainly impending[,]" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979), which in the pre-enforcement context requires a showing that they "intend to engage in 'a course of conduct arguably affected with a constitutional interest'" and there exists "a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (citing *Babbitt*, 442 U.S. at 298).

Plaintiffs cannot carry their burden. Starting with the individual Plaintiffs, the Complaint contains no allegation that any of them was ever in a situation in which the Human Rights Commission (HRC) enforced or even threatened to enforce the WLAD against any individual Plaintiff. With respect to Olympus Spa, the settlement agreement with HRC ended any plan Olympus Spa allegedly had to violate the WLAD. *Cal. Pro-Life Council, Inc. v. Getman*,



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

328 F.3d 1088, 1094 (9th Cir. 2003) (to show injury-in-fact, courts consider whether plaintiffs "have articulated a 'concrete plan' to violate the law in question"). To overcome this fatal fact, Olympus Spa tries to argue that it intends to violate the WLAD going forward by citing a single statement alleged in its Complaint: "[W]e are unwilling to remake the 'jjimjilbang' haven we have worked so hard over many years to build and preserve, simply for the sake of promoting gender neutrality." ECF 14 at 14; ECF 1-3 at 12. But Olympus Spa made that statement approximately six months *before* it voluntarily settled the matter with HRC. ECF 1-3 at 12, 38. As part of that settlement, Olympus Spa made clear that it no longer intended to engage in practices to violate the WLAD. ECF 1-3 at 36. By settling with HRC and resolving the only active complaint against it, Olympus Spa got what it bargained for: an end to any controversy.

With regard to the settlement and the "reservation of rights" Olympus Spa inserted, Plaintiffs ignore that Article III standing cannot be manufactured by inserting a provision into a private agreement between the parties. *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934) ("[L]ack of federal jurisdiction cannot be waived or overcome by an agreement of the parties."). By executing the voluntary settlement and changing its business practices, any argument to support Olympus Spa's Article III standing vanished. Nor can speculation and conjecture about the future suffice to create standing. According to the Complaint, the one time in twenty years that a transgender woman who had not undergone gender transition surgery stepped into the spa did not result in any HRC investigation.[1] ECF 1 ¶ 23. This fact exposes the highly speculative nature of Plaintiffs' "plan" to violate the WLAD: wait years, perhaps decades, for the next transgender woman who has not had gender transition surgery to enter Olympus Spa, wait for that woman to undress in front of patrons or staff who may or may not be offended, break a contractual promise and refuse that woman access to spa services, wait for the woman to file a complaint with HRC, wait for HRC to investigate and make a finding of discrimination, refuse to enter into a

[1] This one instance was not Ms. Wilvich. Plaintiffs deny that Ms. Wilvich ever visited any of their Olympus Spa locations. ECF 1 ¶ 30; ECF 1-3 at 18.



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

pre-finding settlement agreement, and finally, wait for HRC to initiate a civil administrative proceeding. That plan is too uncertain to support Olympus Spa's standing here.[2] *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) (plaintiffs lacked standing because their "highly speculative fear" depended on the occurrence of a "highly attenuated chain of possibilities").

Plaintiffs further cite authority holding that pre-enforcement challenges are more liberally permitted where a plaintiff makes a constitutional claim. ECF 14 at 16-17. But this authority does not apply generally to all constitutional claims, or even all First Amendment Claims. At most, it applies only to Plaintiffs' Free Speech claim. *See, e.g.*, *Ariz. Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003) ("to avoid the chilling effect of sweeping restrictions, the Supreme Court has endorsed what might be called a "hold your tongue and challenge now" approach rather than requiring litigants to speak first and take their chances with the consequences.") (citations omitted). Even in these cases, however, a plaintiff must still demonstrate a concrete, intended act and a reasonable fear of prosecution. *See, e.g.*, *Bayless*, 320 F.3d at 1007 (plaintiff had standing because it was actually, not hypothetically, in the very situation to which the law at issue applied, forcing plaintiff to choose between complying with the law or violating it and risk being fined); *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) (bookseller plaintiffs had to choose between violating a law that was aimed directly and specifically at them and risk prosecution or incur significant costs to comply); *Getman*, 328 F.3d at 1095 (non-profit had standing to challenge campaign-finance law that may apply to a specifically identified "intended communication for the November 2020 election").

---

[2] Plaintiffs grossly exaggerate HRC's investigation into Olympus Spa's "biological women only" policy, asserting that "[t]he Defendant would extend WLAD to mean that all men must be allowed access to females in a state of undress at the Spa." ECF 14 at 22. This conclusory claim is based on mere speculation. The Complaint contains no allegation that any man challenged the "biological women only" policy—despite alleging several instances of men attempting to access spa services, ECF 1 ¶ 24—or that HRC has ever investigated or threatened enforcement on that basis.



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

As discussed above, Plaintiffs in this case assert no facts establishing an intended violation of the WLAD or a reasonable fear of any real and immediate prosecution in the future; they allege the opposite because any risk of enforcement was voluntarily settled among the parties and accompanied by Olympus Spa's voluntary changes to its business practices. That distinguishes this case from the "hold-your-tongue-and-challenge-now" cases. This Court should dismiss Plaintiffs' Free Speech claim, along with their other claims, for lack of standing.

**B. Plaintiffs' Alleged Injury Is Not Fairly Traceable to Defendant's Conduct and There Is No Relief that Would Redress Plaintiffs' Alleged Injury**

Plaintiffs also lack standing because they cannot show that their alleged injury is fairly traceable to HRC's conduct rather than their own. In an effort to overcome this flaw, Plaintiffs misrepresent recent Supreme Court precedent, *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638 (2022), as accepting speculative, self-inflicted harm as sufficient to confer Article III standing. ECF 14 at 15. The *Cruz* Court did nothing of the sort. Rather, the Court clarified the circumstances under which a plaintiff's self-inflicted harm (there, a concrete $10,000 loss) would be fairly traceable to a challenged law (there, federal campaign-contribution limits). *Cruz*, 142 S. Ct. at 1645-46. In concluding that the plaintiffs in *Cruz* had standing, the Court contrasted the facts of that case with the facts in *Clapper*, 568 U.S. at 416—cited by Defendant here, ECF 13 at 14. The difference, the Court explained, is whether the plaintiffs are actually faced with the real and imminent likelihood of enforcement. *Cruz*, 142 S. Ct. at 1647. The *Clapper* plaintiffs did not show traceability because they failed to allege facts demonstrating that they likely would be subject to government surveillance of their overseas communications *Id*. The *Cruz* plaintiffs, by contrast, had *already made* a campaign donation that triggered either "the [Federal Election Commission's] threatened enforcement . . . [and] genuine legal penalties," or else "a $10,000 pocketbook harm." *Id.* at 1646-47.

Plaintiffs here are more like those in *Clapper* than *Cruz*: they have not triggered the possibility that the WLAD will be enforced against them. To the contrary, they settled with HRC,



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

promised to comply with the WLAD, and allege facts demonstrating that any risk of enforcement depends on a multi-linked chain of speculative events, not one of which—much less every one of which—is certain to occur. Because Plaintiffs cannot show that they are likely to be subjected to State enforcement of the WLAD going forward, they cannot fairly trace their alleged harm to Defendant's conduct. Any dissatisfaction on Plaintiffs' part with their current legal position is the result of their decision to settle the prior HRC Complaint.

Plaintiffs also plainly fail to demonstrate redressability. Plaintiffs state only that an injunction would restore their First Amendment rights. But there is nothing to enjoin. Plaintiffs settled with HRC, ending any investigation or further enforcement action. Indeed, Plaintiffs confirm that "this action is not an appeal of the complaint filed by Haven Wilvich and settled by HRC." ECF 14 at 27. In making this admission, Plaintiffs concede that the only controversy that ever existed between the parties was resolved as of October 2021, the date of the final signature on the parties' Settlement Agreement. ECF 1-3 at 36-38. The investigation is long closed, and there is nothing for this Court to review, much less enjoin.

### C. Plaintiffs' Claims Are Not Ripe Because They Rest on Future Events that May Not Occur at All

Plaintiffs claims are not ripe for the same reasons they cannot establish standing: They "rest[] upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998). Plaintiffs disagree by pointing again to a single statement Olympus Spa made well before it settled the HRC Complaint and agreed to change its practices. *See* ECF 14 at 16; ECF 1-3 at 12 ("[W]e are unwilling to remake the 'jjimjilbang' haven we have worked so hard over many years to build and preserve, simply for the sake of promoting gender neutrality."). This single statement not only fails to allege an intent to discriminate based on gender identity or break Plaintiffs' promise to comply with the WLAD, it also fails to show that Plaintiffs are likely ever again to encounter the situation that led to their settlement with HRC. Further, the Complaint alleges no facts showing that HRC took any further



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

enforcement action against Olympus Spa after the settlement agreement; and no facts that any of the individual Plaintiffs were ever personally in a situation in their work at, or patronage of, Olympus Spa that would subject them to potential HRC enforcement. Plaintiffs' claims are based on their highly speculative fear that each of several contingent future events will occur, despite their own facts and business history showing that none of these events—let alone the lot of them—is likely to occur. Plaintiffs' claims are not ripe when based on such a highly speculative chain of events.[3] *Clapper*, 568 U.S. at 410.

## D. The Complaint Fails to State a Claim Under Long-Standing Supreme Court Precedent

### 1. Plaintiffs are free to exercise their religion in compliance with the WLAD, a valid, neutral law of general applicability

Plaintiffs' Free Exercise claim—that the WLAD, if enforced against them in the future, will place a "substantial" and "undue burden" on their religious freedom—fails. *See* ECF 14 at 17-18. That argument is wrong as a matter of law, and, even under Plaintiffs' (incorrect) standard, Plaintiffs failed to allege a sufficient set of facts to demonstrate how their particular religious views would be unduly burdened by a neutral application of the WLAD.

Nothing in Plaintiffs' response demonstrates any conflict between Plaintiffs' Free Exercise rights and the WLAD. It is well established that the WLAD "is a neutral, generally applicable law subject to rational basis review," and further, that it "clearly meets that [rational basis review] standard: it is rationally related to the government's legitimate interest in ensuring equal access to public accommodations." *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 523, 441 P.3d 1203, 1231 (2019), *cert. denied*, 141 S. Ct. 2884, 210 L. Ed. 2d 991 (2021). More than thirty years ago, the Supreme Court held that "an individual's religious beliefs" do not "excuse

[3] At the start of their ripeness argument, Plaintiffs mischaracterize the scope of HRC's investigation of Olympus Spa as targeting Olympus Spa's "female-only" policy. To clarify, HRC investigated only whether Olympus Spa's "biological women" policy of refusing to serve a transgender woman who had not had gender transition surgery violated the WLAD's prohibition of discriminating based on gender identity in a place of public accommodation. ECF 1-3 at 15.



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 879 (1990).

Plaintiffs respond with an absolutist view of the right to free exercise that would gut antidiscrimination laws: "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." ECF 14 at 24 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972)). None of the cases Plaintiffs cite for this proposition has any application here. The Supreme Court in *Smith* "largely repudiated the method of analysis used" in *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and *Sherbert v. Verner*, 374 U.S. 398 (1963). *Holt v. Hobbs*, 574 U.S. 352, 357 (2015). Under that rejected analytical method, a government action that substantially burdened the exercise of religion would be unconstitutional unless it was necessary to further a compelling government interest. *Id.* That is not the test here. Even if it were, the WLAD would satisfy it because the law is narrowly tailored to further the government's compelling interest in eradicating discrimination. ECF 13 at 19.

Nor does Plaintiffs' reliance on *Fulton v. Philadelphia*, 141 S. Ct. 1868, 1871 (2021) save their argument. That case is inapposite because Philadelphia's policies were not neutral and generally applicable, unlike in *Smith* and the WLAD here, and its public accommodations antidiscrimination ordinance did not apply to the discrimination, as the WLAD does in this case. Finally, *West Virginia Board of Education v. Barnette*, 319 U.S. 624, 642 (1943), also did not concern discrimination in a place of public accommodations, and, unlike in this case, the freedom asserted by those plaintiffs did not collide "with rights asserted by any other individual." The *Barnette* Court further explained, "It is such conflicts which most frequently require intervention of the State to determine where the rights of one end and those of another begin." *Id.* at 630. There must be a balance in places of public accommodation. Plaintiffs' Free Exercise claim fails.



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**2. Plaintiffs freedom to speak is subject to the WLAD's prohibition on discrimination in places of public accommodation**

The purpose of the WLAD's provisions prohibiting discrimination in public accommodations is not to regulate speech, but rather to further Washington's compelling interest in ensuring that everyone, regardless of gender identity, has equal access to publicly available goods and services. Any effect those provisions may have on Plaintiffs' expression is merely incidental to the anti-discriminatory purpose of the law. *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1741 (2018) (Thomas, J., concurring) (public accommodation laws generally regulate discriminatory conduct, not speech, and as such, "do not abridge the freedom of speech, even if they impose 'incidental burdens' on expression") (citations omitted). In any case, operating a commercial business to provide spa services is not inherently expressive. *Arlene's Flowers*, 193 Wash. 2d at 533 ("the Supreme Court has never held that a commercial enterprise, open to the general public, is an 'expressive association' for purposes of First Amendment protections") (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000)). The same is true for working at a spa or visiting a spa. The WLAD requires that if Plaintiffs wish to operate a business in Washington that provides spa services to the public, that they provide those services on an equal basis.[4]

Plaintiffs nonetheless attempt to argue that they were "compelled" to speak a particular message by HRC. ECF 14 at 18. But HRC did not infringe Plaintiffs free speech right in notifying Olympus Spa that its "biological women" policy, posted on its website, ECF 1-3 at 13, likely violated the WLAD's prohibition on gender-identity discrimination in a place of public accommodation. The WLAD does not control speech; it simply requires Plaintiffs, who have

[4] Plaintiffs claim that "[i]t is not a discriminatory practice for a person to restrict admission to a place of public or quasi-public accommodation to individuals of one sex if such restriction has a bona fide relationship to the goods, services, facilities, privileges, advantages, or accommodations of such place of public accommodation," citing *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1168 (10th Cir. 2021). ECF 14 at 21. But that quote is from Colorado's public accommodation antidiscrimination statute. *Elenis*, 6 F.4th at 1169. It was not that Court's holding, and it has no applicability here, where the WLAD's plain terms prohibit Plaintiffs from discriminating based on gender identity. RCW 49.60.030(1)(b); RCW 49.60.040(26); RCW 49.60.040(24); RCW 49.60.215.



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

freely chosen to offer their services to the public, to refrain from turning customers away because they fall into a protected class. Public accommodation laws in general do not infringe on speech, and the WLAD is no different. *See, e.g.*, *Roberts v. U.S. Jaycees*, 468 U.S. 609, 624 (1984) (law designed to "assur[e] [state] citizens equal access to publicly available goods and services" is constitutional and "unrelated to the suppression of expression"); *Emilee Carpenter, LLC v. James*, No. 21-CV-6303-FPG, 2021 WL 5879090, at *17 (W.D.N.Y. Dec. 13, 2021) (New York's prohibition of wedding photographer's policy that she does not photograph same-sex weddings does not violate her First Amendment free speech rights). Plaintiffs have no free speech right to discriminate based on gender identity.

**3. The relationships between and among Olympus Spa's employees and patrons are not the type the First Amendment's Free Association Clause protects**

Nor can Plaintiffs save their Free Association claim. The Free Association Clause safeguards from unwarranted state intrusion an individual's choices to enter into and maintain certain "highly personal" or "intimate relationships," like the choice of one's spouse, *Jaycees*, 468 U.S. at 617, or a parent's right to choose a school for her child, *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–535 (1925); *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). The Clause also protects those relationships formed "for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Jaycees*, 468 U.S at 617-18. The relationships formed in commerce between and among the employees and patrons of a public business are not either of the two types of relationships the Free Association Clause protects.

Plaintiffs do not allege—nor could they plausibly allege—that employees and patrons of Olympus Spa associate in order to maintain highly personal or intimate relationships.[5] Plaintiffs

[5] Plaintiffs argue that HRC "is applying [the] WLAD so that it violates the rights of females to their intimate spaces." ECF 14 at 21. The fact that patrons may be nude in some areas or while receiving certain spa services is irrelevant; nudity is not what defines the intimate and highly personal relationships that the Free Association Clause protects.

likewise do not refute HRC's argument that the associations between and among the employees and patrons of Olympus Spa are like those formed by the Dallas dance-hall patrons in *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989); the private law firm partners in *Hishon v. King & Spalding*, 467 U.S. 69, 78 (1984); and the New York photographer and her clientele in *Emilee Carpenter, LLC v. James*, No. 21-CV-6303-FPG, 2021 WL 5879090, at *17 (W.D.N.Y. Dec. 13, 2021). Instead, Plaintiffs try to distinguish their business from the facts in *Jaycees*. But although Olympus Spa's employees and customers may not be as numerous as the U.S. Jaycees, and allegedly must all be female, Olympus Spa alleges no facts that they are otherwise selective about who may work there or access their services. There is no allegation, for example, that Olympus Spa ever inquired into the backgrounds of its patrons as a criterion for access to its services. By its own admission, its "biological women only" policy admitted all women, regardless of religion or other background, except transgender women who had not had gender transition surgery. ECF 1 ¶ 18; ECF 1-3 at 13. Further, Plaintiffs cannot and do not represent that all Olympus spa employees and patrons subscribe to or come to Olympus Spa to learn about its "biological women only" policy or views on transgender women, to worship, to redress a common grievance, or to otherwise gather in pursuit of a common endeavor protected by the First Amendment. All of this makes Olympus Spa's practices closely mirror those of the U.S. Jaycees. *See* 468 U.S. at 621 ("Apart from age and sex, neither the national organization nor the local chapters employ any criteria for judging applicants for membership, and new members are routinely recruited and admitted with no inquiry into their backgrounds."). Thus, Plaintiffs fail to allege that the relationships between and among Olympus Spa employees and patrons are formed for the purpose of engaging in protected activities.

**4. Plaintiffs have failed to allege a hybrid-rights claim**

Plaintiffs next argue that even though the WLAD is a neutral law of general applicability, "the hybrid nature of the claims points to review under strict scrutiny." ECF 14 at 25. But Plaintiffs' attempt to invoke a "hybrid rights" claim fails. To assert a hybrid rights claim and



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

thus exempt a general law of neutral applicability from the standard rational basis test, "a free exercise plaintiff must make out a colorable claim that a companion right has been violated-that is, a fair probability or a likelihood, but not a certitude, of success on the merits." *San Jose Christian Coll. v. Morgan Hill*, 360 F.3d 1024, 1032 (9th Cir. 2004) (quoting *Miller v. Reed*, 176 F.3d 1202, 1207 (9th Cir. 1999)). As explained, Plaintiffs here fail to state a claim under well-established Supreme Court precedent, much less show a likelihood of success on the merits of their claims. Under these circumstances, simply invoking the label of "hybrid rights" is insufficient. *See, e.g.*, *Miller*, 176 F.3d at 1208 ("We hold that a plaintiff does not allege a hybrid-rights claim entitled to strict scrutiny analysis merely by combining a free exercise claim with an utterly meritless claim of the violation of another alleged fundamental right . . . ").

One further point—in their discussion of hybrid-rights claims, Plaintiffs attribute the following argument to HRC: the Spa voluntarily "entered into commercial activity and thus [forgo] their own constitutional rights through the imposition of statutory schemes to which all are bound." ECF 14 at 25 (purporting to cite Defendant's brief, ECF 13 at 17-18). That quote appears nowhere in Defendant's brief. The actual quote from Defendant's brief at the given citation is from *United States v. Lee*, 455 U.S 252, 261 (1982), and states, "[w]hen followers of a particular sect enter into commercial activity as a matter of choice, the limits they accept on their conduct as a matter of conscience and faith are not to be superimposed on the statutory schemes which are binding on others in that activity." ECF 13 at 17-18. In other words, the right to the free exercise of religion is not absolute and must be fairly balanced with other rights within the statutory scheme applicable to everyone engaged in commercial business activities in Washington. This is exactly what the WLAD does as a neutral law of general applicability. The hybrid-rights doctrine does not alter these longstanding constitutional rules.

**5. The Eleventh Amendment bars Plaintiffs' claim for damages**

Plaintiffs have no answer for the black letter law that "[s]tate officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983." *Arizonans*



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*for Off. Eng. v. Arizona*, 520 U.S. 43, 69 n.24 (1997) (citation omitted). Plaintiffs nonetheless ask this Court for "leave to amend [their Complaint] to add defendants in their individual capacities." ECF 14 at 27. Such leave to amend would be futile, however, because the individual defendants would be entitled to qualified immunity from Plaintiffs' claims. Qualified immunity protects a government official sued in their personal capacity from liability for money damages under Section 1983 where: (1) the law governing the state official's conduct was not clearly established at the time of the alleged violation, or (2) if the law was clearly established, the state official reasonably believed her conduct was lawful. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (citing *Browning v. Vernon*, 44 F.3d 818, 822 (9th Cir.1995)). Qualified immunity thus shields state officials whose actions are mistakes in judgment, but not plain incompetence or knowing violations of the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)).

Here, there is no set of circumstances under which Plaintiffs could overcome this bar. There is no law, much less "clearly established law," establishing that a place of public accommodation like Olympus Spa is exempt from antidiscrimination law and can lawfully refuse spa services to transgender women. And even more, there is nothing to suggest that any HRC employee was plainly incompetent or committed knowing violations of the law. Any individual defendant would therefore be entitled to qualified immunity for any damages claim Plaintiffs would plead. Leave to amend should be denied.

## III. CONCLUSION

For the reasons given, HRC respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice.

//

//

//

//



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

DATED this 23rd day of June, 2022.

Respectfully submitted,

ROBERT W. FERGUSON
Attorney General of Washington

______________________________
NEAL LUNA, WSBA No. 34085
Assistant Attorney General
Wing Luke Civil Rights Division
Office of the Attorney General
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 287-4189
neal.luna@atg.wa.gov

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 23rd day of June, 2022.

Allie Lard
Legal Assistant



ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744