1

2   Tracy Tribbett (SBN 35922)
    PACIFIC JUSTICE INSTITUTE
3   6404 Three Rivers Drive
    Pasco, WA 99301
4   Telephone: (509)-713-9868
    E-mail: ttribbett@pji.org
5
    Gregory D. Esau (SBN 22404)
6   ELLIS LI & MCKINSTRY PLLC
    1700 Seventh Ave Ste 1810
7   Seattle, WA 98101-1820
    Telephone: (206)682-0565
8   E-mail: gesau@elmlaw.com

9   Attorneys for Plaintiffs

10
                    **UNITED STATES DISTRICT COURT**
11
                **FOR THE WESTERN DISTRICT OF WASHINGTON**
12

13  OLYMPUS SPA, JANE DOE EMPLOYEE, JANE          Case No.  22-CV-00340-BJR
    DOE PATRON 1,
14                                               **AMENDED COMPLAINT FOR
                                                 DAMAGES, DECLARATORY
15      Plaintiffs,                              AND    INJUNCTIVE RELIEF [42
                                                 U.S.C 1983]**
16           vs.

17                                                   [Demand for Jury Trial]
    ANDRETA ARMSTRONG     , in her official
18  capacity as Executive Director of the Washington
    State Human Rights Commission, MADISON
19  IMIOLA, in her official and individual capacities as
    Civil Rights Investigator for the Washington State
20  Human Rights Commission,

21      Defendant.

22

23
    COMES NOW Plaintiffs who allege as follows:
24
                              **INTRODUCTION**
25

26

27                                    1

28  ─────────────────────────────────────────
                        COMPLAINT

1.      Olympus Spa requires nudity as a bona fide entry mandate, and the services require touching of the naked body of women by women.  All employees and patrons are women.  A pre-operative self-identified activist transgender woman (a male who identifies as a woman) seeking access to the spa filed a complaint with the Washington State Human Rights Commission. The basis of the complaint was an allegation of violation of the State's public accommodations law due to the Spa denying [Haven Wilvich] entry.  Under Washington law, failure to comply with the State's public accommodation law can lead to prosecution, lawsuits, and fines causing ruinous financial burdens on the spa.  Despite being a female only spa the HRC and Haven Wilvich assert that Olympus is a place of public accommodation. Since inception Olympus Spa has served women in their intimate spaces in a private setting. The family run business is owned by Korean Christians who hold sincere faith-based convictions against allowing persons whose genitals are external (males) to be present with persons whose genitals are internal (females) while in a state of partial or full undress if such persons are not married to one another.  This belief has its foundation in faith and culture. What is more, the spa's all female patrons will be subjected to visual violation, anguish, and rage if males are allowed access to the exclusively nude female facility. Further, the all-female staff will be forced to view the male during treatment(s). Not surprisingly, the customers and employees have clearly communicated that they will not return under such circumstances, causing the business to spiral into bankruptcy.  This Korean Christian owned and operated spa is thus caught between the Scylla of punitive sanctions imposed by the State and the Charybdis of violating religious convictions.  Therefore, Plaintiffs seek redress in the courts.

## DEFINITIONS

2.      For purposes of this Complaint, the following definitions are used.

a.      *male*: a person whose genitals are external (Unless a modifier indicates otherwise, all references to "man" or its cognates refers to a *male*).

2

b.      *female*: a person whose genitals are internal (Unless a modifier indicates otherwise, all references to "woman" or its cognates refers to a *female*).

c.      *gender expression or identity*: having or being perceived as having a gender identity, self-image, appearance, behavior, or expression, whether or not that gender identity, self-image, appearance, behavior, or expression is different from that traditionally associated with the sex assigned to that person at birth.  Wash. Rev. Code § 49.60.040(27)

d.      *transgender woman*: a person who is biologically male but identifies as a woman.

e.      *transgender man*: a person who is biologically female but identifies as a man.

## PARTIES

### PLAINTIFFS

3.      Plaintiff, Olympus Spa, is a business entity incorporated in the State of Washington.  The Spa is specifically designed for women in which its services are closely tied to the Korean tradition which requires its users to be naked while undergoing certain services.

4.      Plaintiff, Jane Doe Employee 1, is a female who works at Olympus Spa where she provides services and treatments for female patrons who are naked or in a partial state of undress.

5.      Plaintiff, Jane Doe Patron 1, is a female who frequents Olympus Spa where she is provided services and treatments while naked or in a partial state of undress.

### DEFENDANTS

6.      Defendant, Andreta Armstrong, is the executive director of the Washington State Human Rights Commission.  She is charged with enforcement of the anti-discrimination laws challenged here and codified under the Revised Code of Washington §§ 49.60 et seq.  Director Armstrong is sued in her official capacity.

7.      Defendant, Madison Imiola, is a Civil Rights Investigator for the Washington State Human Rights Commission.  Investigator Imiola is sued in both her individual and official capacities.

## JURISDICTION AND VENUE

8.      This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2201.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2), (c)(2), and (d) because the events giving rise to the claim occurred in Lynnwood, Washington, for which the Western District of Washington maintains jurisdiction.

10.     This action is brought pursuant to the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983. This Court has pendent jurisdiction over state claims.

## FACTS

11.     Sun Lee is a Korean Christian and the president of two exclusive women's (female) Korean spas called Olympus Spa located in the cities of Tacoma and Lynnwood in the State of Washington. Olympus Spa has been in business for more than 20 years and was established by Sun Lee's parents.

12.     Sun Lee's parents fled Korea seeking freedom in faith and personhood in the United States of America. In order to hold fast to cultural underpinnings and avoid the dissipation of traditions held dear in the Korean way of life Sun Lee's parents opened Olympus Spa.

13.     The Spa exists to bring health, peace, safety, and welfare to women who can freely associate in a safe space. Like all businesses, Olympus Spa has a target audience/clientele around which it built its business model in order to ensure success and viability as well as compliance with decency laws regarding nudity.

4

14.     Unlike other publicly available goods and services Olympus Spa caters to the most vulnerable and marginalized groups: females. The dignity interests of this marginalized group are the priority of Olympus Spa. Tacoma and Lynwood have a female population rate of 50% and Asian population of approximately 8.8%, respectively. Over time, the customer base has expanded from predominately Korean/Asian female customers to female customers of all ethnicities, backgrounds, and races. Women, as a protected class, are the priority of Olympus Spa to the exclusion of males.

15.     Nonconsensual physical viewing of a nude body without the consent of both parties appeals to the prurient interest and is not the goal of Olympus Spa. The patrons of Olympus Spa have never, nor would they ever, consent to the intimate viewing of their naked bodies with a person of the opposite sex. In considering the dignity interests of their clients, Olympus Spa cannot condone the unwanted viewing of the body as amongst the sexes.

16.     For Olympus Spa to change the business model to allow consensual viewing of naked bodies as amongst male and females would be a catastrophic shift in the business model so as to render the business inoperable as a matter of law. In this context, the HRC is stating that the culture and faith of Plaintiffs is unlawful.

17.     "The Washington Law Against Discrimination was enacted to ensure the health, peace, safety, and general welfare of the people of Washington." *Ockletree v. Franciscan Health Sys.,* 317 P.3d 1009, 1012 n.2 (Wash 2014), RCW 49.60.010.  While not exclusive, WLAD defines the general right of public accommodation to include: "….facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement. *Id.* §49.60.030(1)(b).

18.     Nudity is illegal in public places in Washington, as codified in RCW 9A.88.010, Indecent Exposure. Places which are open to the public, that is to say places of public accommodation, have

a bona fide clothing requirement. A person is subject to fines and possible criminal penalties for violating the laws of decency. Because it is a place open to females exclusively, Olympus Spa is not subject to the public indecency laws as long as nudity between the sexes is not allowed.

19.     WLAD, RCW 49.60, was adopted in 1947 and includes prohibitions on age and gender discrimination. Amendments to the law in 2006 incorporated transgender individuals in the protected classes of persons. The operation of the Spa as a quasi-public facility has always restricted entry on the basis of age and gender, and the policy predates the 2006 amendment.

20.     Olympus Spa is specifically designed for females.  The facility has a bath area containing multiple whirl-pools, a traditional Korean body-scrub service area, standing showers, sit-down showers, steam room and dry sauna. Patrons are required to be fully naked when using these sections of the spa and no towels or other coverings are provided/allowed.

21.     A female receiving a Korean body scrub service or massage at Olympus Spa must do so fully nude and in the open area of the whirl-pool and saunas within view of all patrons and staff. The employees who provide body scrubs (*ddemiri*) and massages are all females.  Indeed, every employee who works on site is a female.  Nudity is required for all procedures called "Seshin" according to Korean tradition.  It is Olympus Spa's business purpose to provide traditional Korean kiln saunas and exfoliation therapy experiences.  (*Exfoliation* is the removal of dead skin cells).

22.     Harkening back to the Choson dynasty (1392 - 1910), these strict sex-segregated bathing practices have been adhered to in Korean culture. In Western culture nudity is also not allowed in places of public accommodation as a matter of regulating the peace, health, and general welfare of society.

23.      To perform these treatments, employees must remain in close physical proximity to patrons, view patrons who are undressed, and continually touch patrons' bodies. The touching is

6

prolonged, intimate, and detailed. The employees scrub all portions of a female's body save the areolas, nipples, and inner labial areas. Such intimate touching by a female employee on a body which presents male in the nude would be indecent. The prolonged visual access and touching in close proximity to exterior genitalia is prohibited by the faith of many employees, and a forced intimate association bordering on illegal activity.

24.      There is full prior disclosure to patrons of the conditions to entry and for these physical procedures.  The physical touching and viewing of the unclothed patrons are done by mutual consent of both the patron and the employee. Patrons are not notified that their naked bodies can be subject to viewing by men or pre-operative transgender women (external genitalia persons).

25.      As traditional theologically conservative Korean Christians, the owners believe in modesty as between the sexes.  They hold the conviction that a male and a female should not ordinarily be in each other's presence while in the nude unless married to each other. Viewing of genitalia as between opposite sexes who are not married are against the theological teachings of the owners, as well as public decency laws regarding nudity and touching.

26.      The spa will admit a transgender woman who has [post-operative] sex confirmation surgery. If someone physically presents in the nude as a female, as Haven Wilvich does, the spa does not ask questions.  Indeed, it would be impertinent to do so.  In like manner, a transgender man who has had sex reassignment surgery and presents in the nude as a male would not be allowed access to the spa.

27.      Jane Doe Employee 1 is a female who works at Olympus Spas.  She is a Christian who believes that males and females should not be together in a state of full or partial undress if not married to each other.  As such, she will not perform services such as massages and body scrubs on naked men (males).  Her religious convictions are sincerely

7

held and are consistent with her employer.  She is faced with the dilemma of losing her job or violating her conscience which is informed by her faith. Jane Doe Employee 1 is Korean and does not speak English. Losing her job would present a hardship particularly challenging for her as a member of two protected classes and no other job training.

28.     Jane Doe Patron 1 is a female who frequently receives treatments at Olympus Spa. As per the traditional Korean treatments for females, the treatments that she receives are done while naked.  She believes that men and women should not be viewing each other's naked bodies unless married to each other. Further, she chooses to associate with like-minded females at Olympus Spa. Nonconsensual viewing of a person while nude violates the privacy interest of the clientele and the right to intimate association(s). She does not consent to being viewed by anyone with exterior genitalia in a public setting.

29.     Objectification of women through forced intimate association with the opposite sex is not a valid interest of the HRC.

30.     There have been incidents where a male was able to gain access to the facility without asking about the Olympus Spa policy and entered the spa.  A particular incident occurred about six years ago when a female patron came to the front of the spa to notify employees that a customer with male genitals was roaming around the spa.  The manager on duty went to talk to the male and at the moment that individual was walking from the restroom stall with an open front robe.  This was where the manager was able to confirm that the patron was a transgender woman with male genitals.  The manager politely asked to speak with the male patron in private and explained the Olympus Spa female only policy. Luckily, the customer understood and left the spa. A few upset customers who were visiting that day asked for refunds and left the spa.

31.     In other incidents, female patrons noticed male genitals exposed in the locker room and/or pool area.  During these incidents, the female patrons experienced humiliation, trauma and rage that a male was present and asked for refunds and cancelled their appointments, leaving and never coming back.

32.     Haven Wilvich self-describes as an activist[1] transgender woman.  Haven Wilvich ("Wilvich") is biological male and grew up in a Christian home, was married to a woman as a man for six years, and is now married to a woman as a woman, Wilvich has always been attracted to women.

33.     Wilvich's activist history began at Seattle Pacific University where he (at that time Wilvich was not a transgender individual but a self-described "ally") boasted that he found himself on the cover of the school newspaper every week for six weeks, and eventually "scared" the University into giving the "Haven" group back their space. [2]  "[V]ery angry at the world" [3] is Wilvich's feelings expressed in a blog post titled "[explicative] America."  Together, the HRC investigator andWilvich show hostility towards the faith and traditions of Olympus Spa through the reporting of false information, by Wilvich, and failure, by the HRC, to properly investigate false claims. They engage in activism and patrol the State to police thought and language.  Wilvich brags of "work[ing] with the HRC" to change the policies of Olympus Spa. [4] As applied, this enforcement of WLAD by the HRC in conjunction with activism is not neutral nor generally applicable and shows targeted animus.

---

[1] https://findinghaven.blog/2020/07/27/finding-haven/
[2] *Id.*
[3] https://findinghaven.blog/2021/10/12/angry-at-the-world/
[4] https://twitter.com/WomenReadWomen/status/1667082814779691009/photo/2

9

34.     On May 2, 2020,[5] Wilvich filed a complaint, arising from alleged discrimination in public accommodation, with the Washington Human Rights Commission.  The complaint alleges that Wilvich visited the Lynnwood spa in January 2020, writing,  "In January 2020, I went to Respondent's spa for services. Respondent Owner denied me services and stated that transgender women without surgery are not welcome…I believe I have been discriminated against because of sexual orientation when Respondent denied me equal services based on my sexual orientation." Based on the above allegations, Wilvich claimed "an unfair practice and/or aiding and abetting in the commission of an unfair practice as defined by the Washington State Law Against Discrimination, Chapter 49.60."  The complaint is attached as Exhibit 1 to the Declaration of Sun Lee.

35.     Following the filing of this suit Wilvich interviewed with Fox 13 and the Lynwood Times and now contends having never actually entered the Spa, as originally alleged in the written complaint (Ex. 1), but called ahead of a friends' visit to the Spa. What is more, Wilvich underwent bottom surgery on August 3, 2020.[6] By the time the HRC investigation of the complaint[7] began Haven had no standing to allege discrimination on the basis of denial of entry to Olympus Spa.

36.     Wilvich claims, "I realized something important today.  I'm more woman than any TERF will ever be because I am an intentional woman whereas they are only incidental."   The meaning of "TERF" is *trans exclusionary radical feminist*.  Wilvich further stated, "I think 'chosen' womanhood is just as valid, if not more valid, than people who don't analyze their gender, who

---

[5] Wilvich's complaint to the HRC is dated as "filed" 2-13-2020 in the "Commission Use Only Box," but the physical complaint is signed and dated 5-2-2020, Exhibit 1.
[6] https://findinghaven.blog/2020/08/02/surgery-is-tomorrow/
[7] November 24, 2020 was the date of the first communications from the HRC to Olympus Spa, Ex. 2.

COMPLAINT

don't think critically about the role that they've been given in society."   This statement conveys contempt and open hostility towards traditional females, a protected class.

37.     Six months thereafter, on November 24, 2020, the Human Rights Commission served its Notice of Complaint of Discrimination. The Human Rights Commission opened an investigation and demanded a response from the respondent, Olympus Spa.  The Commission also stated that refusing to turn over requested evidence during the investigation will subject the business to legal actions pursuant to Washington Administrative Code §§ 162-08-097 and 162-08-09501.  This includes prosecution as a misdemeanor.  Wash. Rev. Code § 30.610.  The notice and demand are attached as Exhibit 2 to the Declaration of Sun Lee.

38.     On March 12, 2021, the Commission's investigator, Madison Imiola, delivered a second Notice of Complaint of Discrimination to Olympus Spa.  The Notice of Complaint demanded that Olympus Spa provide a response with a statement of plaintiff Olympus Spa's position by March 29, 2021. This second noticed and demand is attached as Exhibit 3 to the Declaration of Sun Lee.

39.     On March 25, 2021, Olympus Spa responded to the Commission denying that it's women-only rule violates 49.60 of the Washington Revised Code.  The Spa stated that the nudity requirement is consistent with Washington Administrative Code § 162-32-050.  Olympus Spa's position is that nudity is required for certain procedures called "Seshin" according to Korean tradition.  In addition, Olympus Spa's female-only policy, allowing only biological women and excluding transgender women without surgery, fits Snohomish County Code §§ 10.04.035 and 10.04.025.  Allowing female minors to be exposed to naked persons with male genitalia could potentially give rise to criminal liability for staff and/or guests.  Olympus Spa is unwilling to take the risk of placing themselves, their employees or their customers in legal jeopardy. The response of Olympus Spa is attached as Exhibit 4 to the Declaration of Sun Lee.

40.     Despite  proof that Wilvich never set foot in either spa locations, in a letter dated April 14, 2021 (attached as Exhibit 5 to the Declaration of Sun Lee) Investigator Imiola of the Human Rights Commission deemed Olympus Spa as having violated the Washington Law Against Discrimination in a place of public accommodation for two reasons: (1) Female Language and (2) Female Only Policy.  These are described as follows:

a.      *Female Language ("Biological Women")*

First, Olympus Spa has a female only policy and actually uses the term "biological women," on the Olympus Spa website.  This language violates Washington's antidiscrimination laws.  Beyond that, the Human Rights Commission demanded removal of the term "biological women" from Olympus Spa's website.  This state censorship was backed by the threat of referral to the Attorney General's Office for prosecution.

b.      *Female Only Policy*

In official correspondence with the president of Olympus Spa, Investigator Imiola wrote,

When dress and grooming standards are applied only to a protected class and are applied specifically *because of* the protected class status, the standards are discriminatory.  This is the case with Olympus Spa's policy, which denies services to transgender women who have not had surgery specifically because their physical appearance is not 'consistent' with the traditional understanding of biological women. 'Gender identity' is defined in law as "having or being perceived as having a gender identity, self-image, appearance, behavior, or expression, whether or not that gender identity, self-image, appearance, behavior, or expression is different from that traditionally associated with the sex assigned to that person at birth." [RCW 49.60.040(27)].  This definition does not use genitals to define gender identity and it recognizes that a person's gender identity can be different from the biological sex assigned to that person at birth.

The statutory phrase "sex assigned to that person at birth" carries the implication that medical providers that fill out a birth certificate act with either caprice, bureaucratic indifference, or ignorance.  There is nothing in the legislative record evidencing that medical professionals filling

COMPLAINT

out birth certificates are acting in a manner that is anything but consistent with their training in the physical sciences, including biology.  The language used by Ms. Imiola implies that the policy has to do with "dress and grooming" standards applying only to a protected class because of their status. Not so.  To this day, Wilvich is a transgender woman and would be allowed entry. The only requirement  [of being female or presenting as such nude ]is applied to all classes (that is to say all Korean, American, Transgender, Homosexual, Queer, Chinese, Lebanese, Transgender individuals, et al are allowed as long as they present in the nude as female) equally.

The letter continues,

However, Olympus Spa's 'biological women' policy focuses on the genitals of patrons rather than allowing transgender women to access your facilities based on their gender identity, as required by WAC 162-32-060.  Additionally, any dress and grooming standards Olympus Spa cites are clearly applied unequally to patrons of the spa, as cisgender women are allowed to be fully nude in the spa while transgender women who have not had surgery are prohibited from even entering the spa. Ex. 6, p. 2.

The Investigator Imiola's use of the term "cisgender women" is improper in that it does not appear in the Washington Law Against Discrimination or any other Act passed by the Legislature.  *Cisgender* is an activist term not included in any legislative, administrative, or other code published by the State. By "cisgender women" Plaintiffs are informed and believe that the Human Rights Commission is adopting the language of transgender activists who use *cisgender* as a pejorative for *female*.  Plaintiffs find the use of that term as based in animus against traditional females who are content with their femininity and do not wish to share intimate spaces with males with whom they are not married.

41.     The president of Olympus Spas, Sun Lee, interviewed employees and checked records.  No employee has a recollection of Wilvich or any other pre-operative transgender woman attempting to gain entry to the Olympus Spa at either location during the time

COMPLAINT

alleged, January 2020. [8] As such, correspondence, dated May 17, 2021, was submitted by Sun Lee to Investigator Imiola denying the allegation.  This notice and demand are attached as Exhibit 7 to the Declaration of Sun Lee.

42.      In a letter dated June 7, 2021, in response to Sun Lee's letter confirming that there is no record of Wilvich having attempted to enter the Spa, Investigator Imiola  wrote what can only be described as a puzzling response which reads in part, "The time to ensure that Haven Wilvich does not **feel** discriminated against has passed, as Ms. Wilvich already filed a complaint of discrimination with the Washington State Human Rights Commission."  A true and correct copy of the letter is attached as Exhibit 8.  Wilvich stated in the complaint that he went to the spa and was denied services.  That is a sharply disputed fact by the Olympus Spa owner and employees.  In fact, Wilvich has stated for publication that a telephone call to Olympus Spa was made rather than an actual visit.

43.      As applied, the WLAD is being used in an inquisitional manner, not neutrally. Further, it is not generally applicable but applied in a manner as to enforce activism on behalf of one group of protected individuals. The language used by Investigator Imiola is a personal opinion thinly disguised as law. She stated, "[the Spa] denies services to transgender women who have not had surgery because their physical appearance is not 'consistent' with the traditional understanding of biological women." The Plaintiffs' traditional views are biblical and inextricably linked to their faith and operation of their business.

---

[8] Wilvich later stated in interviews that she had not been to the spa as previously alleged but merely called.

44.     The Human Rights Commission has determined guilt by the act of the filing of a complaint and is entirely incurious as to whether the predicate fact of the presence of Wilvich at the spa is true or not.  In this way, the HRC, through its agent Ms. Imiola, is being weaponized by activists who contrive complaints in order to stir up strife. The health, peace, and welfare of Washingtonians is not protected by the HRC using a neutral law of general applicability as an arrow in its [WLAD] quiver.

45.     Investigator Imiola writes, "the WSHRC has already identified that Olympus Spa's 'biological women' entry policy is not compliant with the Washington Law Against Discrimination (WLAD), RCW 49.60, which prohibits discrimination on the basis of gender identity in places of public accommodation."  Investigator Imiola then gave an ultimatum to enter into a "Pre-Finding Settlement" or the representative will "proceed accordingly by preparing the case for referral to the Attorney General's Office for prosecution."

46.     Faced with this threat, Sun Lee responded,

Thank you for your letter.  Olympus Spa would like to take the opportunity to, as you say, "correct its policies and the issues alleged by Ms. Wilvich's complaint."  Although we have told you that we have never had Ms. Wilvich on the premises, nor denied entry we understand that these responses have fallen on deaf ears.  We have removed the language you alleged as discriminatory from our website and would like to see the Pre-Finding Settlement details. Exhibit 7

47.     On July 14, 2021, the representative from the Human Rights Commission wrote a letter with three terms, as follows:

●       Olympus Spa has already addressed the first proposed term by changing the language on its website to remove references to "biological women". The PFS would memorialize this change and acknowledge Olympus Spa made the change prior to signing the PFS agreement.

●       Secondly, the WSHRC would like to provide Olympus Spa with training materials to ensure Olympus Spa's understanding of the Washington Law Against Discrimination (RCW

15

49.60), give you resources for future reference, and assist Olympus Spa with maintaining legal compliance going forward.

●     The third and final term we propose is for the WSHRC to review Olympus Spa's policies to ensure they comply with the Washington Law Against Discrimination (RCW 49.60).

48.     The Commission sent a draft settlement agreement to Olympus Spa for review. Exhibit 10. Olympus spa inserted language in the settlement agreement to reserve it's right to bring a legal challenge as to the constitutionality of the agreement, the operative statutes and implementing regulations, and related policies of the Washington State Human Rights Commission. The representative of the Washington State Human Rights Commission sent a final draft to Olympus Spa which included the reservation of right to bring a legal challenge. The final version of the executed settlement agreement is attached as Exhibit 11 to the Declaration of Sun Lee. This lawsuit is an exercise of that right bargained for by the parties.

49.     Both the conduct and communications by representatives of the Washington Human Rights Commission are done pursuant to the Washington Law Against Discrimination (Revised Code of Washington §§ 49.60, et seq.), the enabling regulations (Washington Administrative Code §§ 162-32-010, et seq.), and at the direction of the Executive Director, Andreta Armstrong, in executing the statutes and regulations described in this Amended Complaint.

50.     The HRC and the Attorney General's office routinely file civil actions to enforce WLAD, and have broad statutory authority. The AG and HRC, working collectively, have recently engaged in highly publicized litigation against those who hold traditional Biblical views including Union Gospel Mission and Seattle Pacific University, Haven Wilvich's alma mater.

COMPLAINT

51.     Plaintiff believes and thereon alleges that they have been targeted by activists seeking to discriminate against them, and the HRC has furthered this discrimination by failing to investigate the complaint as submitted. Further, the HRC has no legally viable reason for ensuring nudity as between the sexes which furthers the health,  public welfare, and peace of Washingtonians. Such enforcement, visual pornography, has the opposite effect.

52.     RCW 49.60.240 specifically limits the Commission's authority. The pertinent section states: " (2) The investigation shall be limited to the alleged facts contained within the complaint." HRC Agent Imiola went beyond the complaint and failed to investigate the claim as stated and ascertain the facts alleged by the Complainant. The policing of speech ensued and the Plaintiff's First Amendment rights were abridged.

### **FIRST CAUSE OF ACTION**
### **Violation of the Free Exercise of Religion**
### **(42     U.S.C. Section 1983)**
All Defendants

53.     Plaintiffs allege and incorporate herein by reference the preceding paragraphs of this Amended Complaint as though fully set forth herein.

54.     The conduct of both Executive Director Armstrong and Investigator Imiola were done under color of law.

55.     Pursuant to the First Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, the Plaintiffs have the liberty to not only believe as they do about males and females in a state of undress, but they also have the right to freely *exercise* their religious rights, i.e., to act in accordance with their faith-based convictions.

17

56.     As applied, the enforcement of the Washington public accommodation laws as against these Plaintiffs, which requires them to service nude males and females in the same rooms, is not neutral nor generally applicable.  In this case, WLAD is not neutral because it is not an incidental burden, but a departure from the kind of conduct (nudity) regulated by the State.  The facts suggest a motivation by both the HRC investigator and the Complainant which is based in animus towards religion. The motivation is cleverly "masked" with pejorative terms and out-right lies regarding the facts and subsequent investigation. The situation requires Plaintiffs to choose between violating the law or abandoning their religious convictions.  This is a substantial burden on their religious beliefs.

57.     There is no rational basis for the HRC to fail to investigate the truth when presented with proof that the facts alleged did not occur. Use of the term "cis-gender, TERFs, and the like" is dog-whistle terminology for seemingly neutral WLAD enforcement that shows an intentionally calculated attempt to favor anti-Christian sentiments and demean traditional values.

58.     Ms. Imiola is making a carve out for individualized exemptions whereby the HRC exempts from WLAD males who identify as males. Such a system individualized exemption(s) is at the sole discretion of the investigator.

**SECOND CAUSE OF ACTION**
**Violation of Freedom of Speech**
**(42      U.S.C. Section 1983)**

59.     Plaintiffs re-allege and re-incorporate all the preceding paragraphs as though fully set forth herein.

60.     The conduct of Andreta Armstrong and Madison Imiola is done under color of state law.

61.     The Washington Human Rights Commission has required that Olympus Spa remove language from its website that has a viewpoint that "biological women" are females and distinct from males.  That there is a difference between males and females is an idea that Olympus Spa wishes to communicate to the public on its website .  The Washington Human Rights Commission has forced Olympus Spa to "adopted new language on its website reflecting a nondiscriminatory policy" that affirms equal access, service and treatment for all customers "without regard to…sexual orientation or gender identity."  Such language compels speech about a moral issue for which the Plaintiffs disagree.

62.     This viewpoint discrimination violates the Plaintiffs' right to freedom of speech as guaranteed by the First Amendment.

63.     As applied by the HRC, WLAD is being used to control speech. Olympus Spa is caters to women and does not offer its services freely to the public. The compelled speech implies that it is open to the public and that it does freely offer services to those who present male in the nude (exterior genitalia).

64.     By forcing Plaintiffs to abandon their beliefs the State compels them to make statements that imply God does not create women and men in His image, and that men are allowed in the Spa when they are not. This is the basis for a hybrid rights claim where multiple First Amendment protections dovetail.

65.     The effect on the business is not "incidental" but "consequential" in that it changes the entire business model through compelled speech. Compelled speech which changes a

business model and eviscerates first amendment rights for purposes not related to public health, safety, and welfare are invalid.

66.     If the legislature intended for nudity as between the sexes to be included in WLAD protections there would be no indecent exposure laws or they would be amended to reflect such intentions by the legislature as amongst pre-operative transgender women and women.

**THIRD CAUSE OF ACTION**

**Violation of the Right of Association**

**(42 U.S.C. Section 1983)**

All Defendants

67.     Plaintiffs re-allege and re-incorporates all prior allegations in the preceding paragraphs as though fully set forth herein.

68.     The conduct of the Defendants was  done under color of state law.

69.     Jane Doe Patron 1 seeks to form and preserve a highly personal relationship via women's health spa treatments with Olympus Spa administered through its employees, including Jane Doe Employee 1.

70.     On average, between the years of 2018-2022 the rate of return customers is 75% of the total customer base. This consistency is due to the highly personal, professional, and intimate association this spa has cultivated.

71.     Jane Doe Patron 1  seeks to form and preserve the right to expressive association inherent in visiting a women's only Korean Spa.  Freedom of association is an expression of individual sovereignty and autonomy of personhood. Women joining together in the nude for self-reflection and repose is such an expressive association. Nudity is an expressive activity.

72.     The individuals' right(s) subordinate to the group in the sense that all must be nude and all must have internal genitalia. For instance, a gymnophobe person (one who is dysphoric as it relates to nudity) cannot be admitted in spite of their disability and/or protected status because nudity is a bona fide requirement. The expressive rights of the group supersede the individual in this instance and the instance of a pre-operative transgender woman.

73.     The expressive association is homogenous in form and by intention of the business which is not furthered by allowing persons with external genitalia entry.  The expression is both inward and outward.

74.     The ritualistic nature of jjimjilbang is expressly for women and furthers the goals of the association. Because people do not know each other by name does not mean their association is loose. All women are bonded and the inclusion of external genitalia would impermissibly interfere with the expressive rights to association inherent in Olympus Spa's clientele.

75.     The shared set of beliefs, ideas, and values amongst such expressive association is what drives the business, and restoration of health to patrons comes from the peace afforded them at Olympus Spa. The right of women to assemble in the nude free from Government entanglement is a protected exercise.

76.      Women are expressing their femininity of form free from the public eye in the sanctuary created for them by Olympus Spa.

77.     Allowing individuals with external genitalia undermines and impedes Olympus Spa's ability to achieve the expressive association goal inherent in a women's only spa. The goal being to provide a safe space of sanctuary for women to express their femininity.

78.     Viewing external genitalia amidst the relaxing spa setting where-in peace and femininity is contemplated by women erodes the expressive association goals of the spa.

79.     Olympus Spa patrons wish to choose when and with whom they will present in the nude.

80.     As a Christian, Jane Doe Patron 1 does not wish to be unclothed in front of a male to whom she is not married.

81.     Likewise, due to the tenets of her faith, Jane Doe Employee 1 does not wish to massage and provide body scrubs to naked males.

82.     The owners of Olympus Spa want to operate the business in a way that does not violate their faith.  It would violate their faith to force their female employees to give massages and body scrubs to fully naked men. Additionally, it would violate their faith to be compelled to disregard the God given truth of genitalia as it relates to males and females.

83.     Similarly, the owners believe it would violate their faith to be forced under Washington's accommodation laws to a hire male – even a trans man -- to provide massages and body scrubs on unclothed women.

84.     The relationships in Olympus Spa's business between the female employees that it hires and the female patrons they serve is not an attenuated relationship.  It is an intimate one.  To have the presence of men ogling female patrons at the insistence of the State violates the right to privacy.

85.     The Washington public accommodation laws enforced as against these Plaintiffs, which would require females in a state of nature to remain in the presence of naked males, this violates the Plaintiffs' freedom protected by the Bill of Rights to selectively enter into

22

and carry on expressive, and/or intimate, private relationships -- or refrain from such relationships. As applied, the WLAD is not neutral nor generally applicable. The HRC takes the WLAD to the hinterland of reason.

### FOURTH CAUSE OF ACTION

**Due Process**

**(42 U.S.C. Section 1983)**

Madison Imiola by Olympus Spa

86.     Plaintiffs re-allege and re-incorporates all prior allegations in the preceding paragraphs as though fully set forth herein.

87.     The complaint filed by Wilvich reads, "In January 2020, I went to Respondent's spa for services.  Respondent Owner denied me services… ."  Investigator Imiola was uninterested in whether the alleged predicate act occurred.

88.     By not taking evidence as to whether Haven Wilvich actually "went to…the spa," the procedures implemented by Investigator Imiola deprived Olympus Spa of the opportunity to be meaningfully heard.

89.     The actions of Investigator Imiola were done under color of law and thereby deprived Olympus Spa of procedural due process rights as guaranteed by the Fourteenth Amendment.

90.     The conduct of Investigator Imiola in which guilt of violating the Washington Law Against Discrimination did not depend on whether the underlying accusation was true, deprived Olympus Spa of the right to provide a defense with a presumption of innocence. Violation of the Washington Law Against Discrimination is subject to referral for

prosecution. Investigator Imiola made such a threat.  The actions of Investigator Imiola go beyond the authority vested in the HRC under RCW 49.60.240.

91.     A determination of guilt by mere accusation violates the substantive due process rights of Olympus Spa as guaranteed by the Fourteenth Amendment. Ms. Imiola cannot apply the WLAD to hypothetical situations.

92.     Since the incident never occurred, she censors Olympus Spa with the threat of punishment for the underlying thought processes of the Plaintiff's business.

**FIFTH CAUSE OF ACTION**

**Religious Freedom**

WA State Const. Art. I, § 11

All Defendants

93.     Plaintiffs re-allege and re-incorporates the preceding paragraphs as though fully set forth herein.

94.     The Washington State Constitution is broader than its federal counterpart in that it provides "absolute freedom of conscience" in the practice of religion.

95.     The conduct of the Defendants has molested the person and property of the Plaintiffs.

96.     The conduct of the Defendants has materially interfered with the freedom of conscience of the Plaintiffs, as well as the Plaintiffs' beliefs and religious sentiments.

97.     The religiously motivated beliefs and conduct of the Plaintiffs in operating a female only spa is not licentious and is not inconsistent with the peace and safety of the state.

98.     The application of the Washington Law Against Discrimination violates a tenet of each of the Plaintiffs' religion.  Namely, the religious tenet of modesty between the sexes such that a man and woman should not ordinarily mutually present as unclothed unless married to each other.

99.     The application of the Washington Law Against Discrimination has a coercive effect against the Plaintiffs such that it compels and/or pressures Plaintiffs to violate a tenet of their faith.  Such conduct by the Defendants stands as violative of WA State Const. Art. I, § 11.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.     A declaration that the Washington accommodation laws being enforced and applied against the Plaintiffs by the Defendants violates the Plaintiffs' freedom of speech;

2.     A declaration that the Washington accommodation laws being enforced and applied against the Plaintiffs by the Defendants violates the Plaintiffs' free exercise of religion;

3.     A declaration that the Washington accommodation laws being enforced and applied against the Plaintiffs by the Defendants violates the Plaintiffs' right to association;

4.     A declaration that the conduct of Investigator Imiola violates the Plaintiffs' rights under the Fourteenth Amendment to procedural and substantive due process.

5.     A declaration that the Washington accommodation laws being enforced and applied against the Plaintiffs by the Defendants violates the Plaintiffs' religious freedom rights under WA State Const. Art. I, § 11.

6.     An order preliminarily and permanently enjoining the Defendant from enforcing the public accommodation law and implementing regulations as against the Plaintiffs.

7.     Nominal damages against Defendant Madison Imiola;

8.     Attorneys' fees;

9.     Costs of suit; and

10.    Any and all other appropriate relief to which Plaintiffs may be entitled within the scope of F.R.C.P. 54(c).

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all causes of action and claims to which she has a right to a jury trial.

DATED:  June 29, 2023

/s Tracy Tribbett
Tracy Tribbett (SBN 35922)
PACIFIC JUSTICE INSTITUTE
6404 Three Rivers Drive
Pasco, WA 99301
Telephone: (509)-713-9868
E-mail: ttribbett@pji.org

Gregory D. Esau (SBN 22404)
ELLIS LI & MCKINSTRY PLLC
1700 Seventh Ave Ste 1810
Seattle, WA 98101-1820
Telephone: (206)682-0565
E-mail: gesau@elmlaw.com

Attorneys for Plaintiffs

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT