1

The Honorable Barbara J. Rothstein

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

10

11

OLYMPUS SPA, JANE DOE
EMPLOYEE, JANE DOE PATRON 1,

NO. 2:22-cv-00340-BJR

12

Plaintiffs,

**DEFENDANTS' MOTION TO
DISMISS**

13

v.

14

15

16

17

ANDRETA ARMSTRONG, in her
official capacity as Executive Director of
the Washington State Human Rights
Commission, MADISON IMIOLA, in her
official and individual capacities as Civil
Rights Investigator for the Washington
State Human Rights Commission,

ORAL ARGUMENT
REQUESTED

18

Defendants.

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS
2:22-cv-00340-BJR

1

**TABLE OF CONTENTS**

2  I.     INTRODUCTION..........................................................................................................1

3  II.    FACTUAL BACKGROUND ........................................................................................1

4  III.   ARGUMENT ................................................................................................................4

5      A.  The Amended Complaint, Like the Dismissed Complaint, Fails to State a
           Claim for Relief Under Well-Established Supreme Court Precedent.......................4
6
       B.  HRC Neutrally Enforced the WLAD to Bar Olympus Spa from
7          Discriminating Based on Gender Identity in a Place of Public Accommodation......4

8      C.  The Amended Complaint Contains No New Facts to Support a Free Speech
           Claim........................................................................................................................6
9
       D.  Associations Between Olympus Spa's Employees and Customers Are
10         Business-Related and Not the Intimate or Expressive Associations Protected
           by the First Amendment ...........................................................................................6
11
       E.  The Spa's Federal Due Process Claim Must Be Dismissed .....................................7
12
           1.  The Spa fails to state a procedural due process claim.........................................7
13
           2.  The Spa also fails to state a substantive due process claim ............................11
14
           3.  Ms. Imiola is entitled to qualified immunity....................................................12
15
       F.  Plaintiffs' Washington State Constitutional Claims Must Also Be Dismissed .......13
16
17  IV.   CONCLUSION ...........................................................................................................15

18

19

20

21

22

23

24

25

26

1

## I.      INTRODUCTION

Olympus Spa must provide its services without discriminating against customers based on their gender identity. In June, this Court agreed, dismissing the claims in Plaintiffs' first Complaint as a matter of law. It should do the same here, this time with prejudice. Plaintiffs' Amended Complaint adds no new facts that change the result from the Court's prior dismissal of Plaintiffs' three First Amendment claims—violation of Free Exercise of Religion, Free Speech, and Free Association. Those claims still fail as a matter of law under decades of U.S. Supreme Court precedent on which the Court previously—and correctly—relied. And the two new claims asserted in the Amended Complaint—violation of Due Process under the Fourteenth Amendment and Freedom of Religion under the Washington State Constitution—also fail as a matter of law given the Complaint's threadbare allegations. Finally, qualified immunity bars Plaintiffs' claims against Defendant Madison Imiola in her individual capacity. This Court should dismiss with prejudice Plaintiffs' Amended Complaint.

## II.      FACTUAL BACKGROUND

Olympus Spa admits that it brought this action so that it may continue to enforce its "biological women" only policy and refuse to serve transgender females who have not had genital reconstructive surgery (sometimes referred to as "bottom surgery"). ECF 24-1 ¶¶ 1, 39. In May 2020, a transgender female ("HW")[1] filed a complaint with the Washington State Human Rights Commission ("HRC"), alleging that Olympus Spa refused to serve her and that the Spa told her that "transgender women without surgery are not welcome." *Id.* ¶ 34. Ms. Imiola, an HRC investigator, asked Olympus Spa to respond to HW's complaint. *Id.* ¶ 38. The Spa admitted that it does not serve pre-surgery, transgender women, and denied that its policy violated the

---

[1] Going forward, HRC requests that Plaintiffs and the Court use the initials and not the full name of the transgender woman who filed the HRC complaint against Olympus Spa. Defendants have become aware that media coverage of this case has resulted in threats of violence being directed at HW. Defendants do not wish to further perpetuate the risk of such harm, and note that the two individual Plaintiffs currently are proceeding anonymously, although Defendants reserve the right to dispute that they be allowed to continue to do so if this case progresses beyond the motion to dismiss stage.

DEFENDANTS' MOTION TO DISMISS
2:22-cv-00340-BJR                                1                    ATTORNEY GENERAL OF WASHINGTON
                                                                      Civil Rights Division
                                                                      800 Fifth Avenue, Suite 2000
                                                                      Seattle, WA  98104
                                                                      (206) 464-7744

1    Washington Law Against Discrimination ("WLAD"). ECF 24-3, Ex. 4. The Spa asserted

2    "historical, cultural, practical and legal reasons to allow Olympus Spa to continue to offer our

3    services in a 'biologically female' only environment, with an exception for post-operative MTF

4    transsexuals." *Id*. The Spa gave no religious reason for its policy. *Id*. Ms. Imiola's response

5    provided a detailed explanation why the Spa's policy, which the Spa admitted to maintaining,

6    violated the WLAD's prohibition on gender-identity discrimination in places of public

7    accommodation, like the Spa, and offered the Spa the ability to enter into a pre-finding settlement

8    agreement with HRC. ECF 24-3, Ex. 5. Rather than address the offer of a pre-finding settlement,

9    Olympus Spa instead pointed out that it had no record of HW's visit. ECF 24-3, Ex. 6. But since

10   the Spa had already admitted to the discriminatory "biological women" only policy, Ms. Imiola

11   reiterated the offer of a pre-finding settlement agreement. ECF 24-3, Ex. 7. Olympus Spa agreed,

12   removing its "biological women" only policy from its website and entering into a pre-finding

13   settlement agreement with HRC. ECF 24-3, Ex. 11.

14        In March 2022, Olympus Spa filed this action against HRC's former Executive Director

15   Sharon Ortiz in her official capacity. ECF 1.[2] HRC moved to dismiss under Federal Rules of

16   Civil Procedure 12(b)(1) and 12(b)(6) because Plaintiffs lacked standing and their claims failed

17   as a matter of law—specifically, the Eleventh Amendment barred Plaintiffs' claim for nominal

18   damages, and the U.S. Supreme Court had rejected the legal arguments Plaintiffs made to support

19   their Free Exercise of Religion, Free Speech, and Free Association claims for declaratory and

20   injunctive relief. *Id*. at 7-8. On June 5, 2023, the Court agreed with HRC that Plaintiffs' claims

21   failed to state a cognizable claim for relief and granted HRC's Motion to Dismiss under Rule

22   12(b)(6). ECF 21 at 13. The Court gave Plaintiffs 30 days to amend their Complaint; Plaintiffs,

23   in turn, filed their Amended Complaint on July 6, 2023.[3] ECF 24-1.

24    ───────────────

         [2] Andreta Armstrong is now HRC's Executive Director, and the Court updated the caption accordingly.
25   ECF 21 at 1 n.1.
         [3] Plaintiffs filed an Amended Complaint on June 29, 2023, but it was not the final version. ECF No. 22;
26   ECF 24. Plaintiffs subsequently filed a final version as a Praecipe Amended Complaint on July 6, 2023. ECF 24-1.
     HRC uses "Amended Complaint" to refer to the Praecipe Amended Complaint filed as ECF 24-1.

1    Plaintiffs' Amended Complaint adds HRC investigator Madison Imiola in her official

2  and personal capacities as a defendant. ECF 24-1 at 1. It asserts the same three First Amendment

3  claims that the Court previously dismissed and adds two new claims for alleged violations of

4  Plaintiffs' right to procedural and substantive due process under the Fourteenth Amendment, and

5  an alleged violation of Plaintiffs' right to religious freedom under the Washington State

6  Constitution, Art. 1, § 11. ECF 24-1 ¶¶ 53-99. The Amended Complaint contains additional

7  factual allegations about the Spa. For example, Plaintiffs allege the Spa was founded to preserve

8  Korean traditions and that its purpose is to "bring health, peace, safety, and welfare to women

9  who can freely associate in a safe space." *Id.* ¶¶ 12-13. It also alleges that the Spa's customer

10 base has expanded "from predominately Korean/Asian female customers to female customers of

11 all ethnicities, backgrounds, and races." *Id.* ¶ 14.

12    The Amended Complaint also adds allegations about HW's personal, educational, and

13 activism background starting in college at Seattle Pacific University. *Id.* ¶¶ 32-33.[4] Plaintiffs

14 further allege that HW stated in press interviews that she never visited Olympus Spa, but rather

15 had called ahead of visiting to inquire whether she would be admitted. *Id.* ¶ 35. Finally, the

16 Amended Complaint contains personal details about HW, such as an allegation that HW had

17 bottom surgery after she made the complaint to HRC, but before HRC began investigating. *Id.*

18 ¶¶ 35-36.

19

20

21    [4] Plaintiffs misgender HW in these paragraphs and again in paragraph 42, referring to HW as a

22 "biological male" and using the pronoun "he" to refer to HW. Plaintiffs are well aware that HW is a woman and
uses she/her pronouns. In prior correspondence with HRC, the Spa's owners referred to HW using the appropriate

23 "Ms." salutation and Plaintiffs have cited news reports plainly identifying HW's use of she/her pronouns. *See*
ECF 24-3, Ex. 8; ECF 24-1 ¶ 35. And while Plaintiffs may wish to litigate their views on the WLAD, they must

24 also abide by the local civil rules, which require the "duty to be respectful of others includ[ing] the responsibility
to avoid comment or behavior that can reasonably be interpreted as manifesting prejudice or bias toward another

25 on the basis of categories such as gender, race, ethnicity, religion, disability, age, or sexual orientation." Local
Civil Rule 1(d) (WDWA Feb. 1, 2023). Intentionally misgendering someone or implying that transgender women

26 are not "women" is disrespectful and indicates gender bias and prejudice. Such conduct may also implicate RPC
8.4(g).

## III. ARGUMENT

**A.     The Amended Complaint, Like the Dismissed Complaint, Fails to State a Claim for Relief Under Well-Established Supreme Court Precedent**

The Amended Complaint lacks sufficient facts, even if assumed to be true, that could support any of Plaintiffs' claims. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief"). None of the new facts in the Amended Complaint about the Spa's founding, purpose, or clientele, or about HW's activism, education, or gender-affirming surgery, or whether the Spa turned her away in person or over the phone can overcome the fact that the WLAD lawfully requires Plaintiffs to equally serve all women, including transgender women. Plaintiffs have significant rights under the First and Fourteenth Amendments and the Washington State Constitution, but as this Court found, those rights may be limited by a neutral law of general applicability, like the WLAD.

**B.     HRC Neutrally Enforced the WLAD to Bar Olympus Spa from Discriminating Based on Gender Identity in a Place of Public Accommodation**

This Court dismissed Plaintiffs' Free Exercise claim because the WLAD is a valid, neutral law of general applicability that only incidentally burdens Plaintiffs' religious beliefs. ECF 21 at 28-30. It should do so again here: The WLAD has a legitimate purpose—to secure residents' constitutional and civil rights and to protect the public welfare, health and peace—and it promotes that purpose by proscribing discrimination in places of public accommodation. *Id*. at 29-30. Therefore, the WLAD survives rational basis review, and Plaintiffs must equally serve transgender females.

Plaintiffs' Amended Complaint seeks to avoid this outcome by alleging that Defendants enforced the WLAD against them in a way that shows animus toward religion and asking the Court to apply strict scrutiny. ECF 24-1 ¶¶ 33, 40, 43, 44, 50, 51. Specifically, Plaintiffs assert

1  that Defendants continued to enforce the WLAD against them, even though HW "had no

2  standing to allege discrimination on the basis of denial of entry to Olympus Spa" because she

3  had bottom surgery "[b]y the time the HRC investigation of the complaint began." *Id*. ¶ 35.

4  Moreover, Plaintiffs argue that Defendants improperly enforced the WLAD against them

5  because HW's personal views on gender, Ms. Imiola's use of the term "cisgender," and HRC's

6  failure to determine whether the Spa refused to serve HW in person or over the phone allegedly

7  show a bias against Plaintiffs' religious beliefs. *Id*. ¶¶ 33, 36, 40. And Plaintiffs allege that the

8  fact that the Attorney General and HRC "have recently engaged in highly publicized litigation

9  against those who hold traditional Biblical views including Union Gospel Mission and Seattle

10  Pacific University" indicates religious animus.[5] *Id*. ¶ 50.

11       None of these facts saves Plaintiffs' claims. HW's personal, educational, and activism

12  background, her "standing" to maintain her HRC complaint, whether she actually visited the Spa

13  or called ahead, Ms. Imiola's use of the common term "cisgender,"[6] the fact that the Union

14  Gospel Mission and Seattle Pacific University sued the State (not the other way around), and the

15  fact that the State sent an inquiry letter to Seattle Pacific University requesting information in no

16  way indicate religious animus, much less religious animus against the specific Plaintiffs here.

17  Plaintiffs' allegation that they do is conclusory and lacks any meaningful factual support. *See*

18  *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1729-31 (2018)

19  (finding religious animus not simply where lawmakers disparaged religion as "despicable" and

20  "rhetoric" that had been used to justify slavery and the holocaust, but where additional facts

21

22       [5] Plaintiffs fail to note these lawsuits were not filed by the Attorney General or HRC, but were instead filed *against* them. *See Seattle Pac. Univ. v. Ferguson*, No. 3:22-CV-05540-RJB (W.D. Wash.); *Union Gospel Mission of Yakima v. Ferguson*, No. 1:23-CV-3027-MKD (E.D. Wash.).

23       [6] "Cisgender" means "of, relating to, or being a person whose gender identity corresponds with the sex the person had or was identified as having at birth." *Cisgender*, Merriam-Webster, https://www.merriam-webster.com/dictionary/cisgender (last visited Jul. 28, 2023). "Cisgender" is not an "activist term" as claimed by Plaintiffs; indeed, the term has been repeatedly used by federal courts, including the Ninth Circuit. *See, e.g.*, *Parents for Privacy v. Barr*, 949 F.3d 1210, 1240 (9th Cir. 2020) (holding that "[a] policy that allows transgender students to use school bathroom and locker facilities that match their self-identified gender in the same manner that *cisgender* students utilize those facilities does not infringe Fourteenth Amendment privacy or parental rights or First Amendment free exercise rights, nor does it create actionable sex harassment under Title IX.") (emphasis added).

DEFENDANTS' MOTION TO DISMISS
2:22-cv-00340-BJR

5

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1   showed worse treatment of persons with religious views compared with persons without

2   religious views for the same conduct).

3        Here, the Amended Complaint contains no allegations that Defendants made any

4   statements disparaging Plaintiffs' religious beliefs or treated persons of faith worse than others

5   for similar refusals to serve customers. While Plaintiffs assert that "Ms. Imiola is making a case

6   out for individualized exemptions whereby the HRC exempts from WLAD males who identify

7   as males," Plaintiffs fail to cite any facts to support their assumption of differential enforcement,

8   including any facts showing that "males who identify as males" are similarly situated in their

9   gender identities to transgender females who have not had bottom surgery. ECF 24-1 ¶ 58.

10       Plaintiffs ask the Court to bless the very type of categorical discrimination that the

11  WLAD proscribes. Defendants are simply upholding Washington's antidiscrimination law,

12  which they did without regard to Plaintiffs' asserted historical, cultural, practical, legal, and

13  religious reasons for refusing service. As a result, Plaintiffs' Free Exercise claim fails for the

14  same reasons the Court dismissed it the first time around.[7]

15  **C.  The Amended Complaint Contains No New Facts to Support a Free Speech Claim**

16       Plaintiffs' Free Speech claim likewise fails for the same reason it did before: the WLAD

17  regulates conduct, not speech, and effectively furthers the compelling state interest of

18  eliminating gender-identity discrimination in places of public accommodations. ECF 21 at 31-

19  35. The Court already rejected Plaintiffs' arguments and should do so again here.

20  **D.  Associations Between Olympus Spa's Employees and Customers Are Business-**
21  **Related and Not the Intimate or Expressive Associations Protected by the First**
    **Amendment**

22       The Court dismissed Plaintiffs' Free Association claim because the "relationship

23  between Olympus Spa and its customers clearly falls 'outside of the category of relationships

24  worthy of this kind of constitutional protection.'" ECF 21 at 37 (citation omitted). Put simply,

25

26      [7] Plaintiffs again raise a hybrid rights claim as well, ECF 24-1, ¶ 64, but this too should be dismissed here, since each of Plaintiffs' First Amendment claims lack legal merit, just as before. ECF 21 at 30-31.

DEFENDANTS' MOTION TO DISMISS     6     ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-BJR     Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

Olympus Spa is a business that serves any female at least thirteen years old seeking its services, with two exceptions—transgender females who have not had bottom surgery and those who fear being nude, since nudity is required. ECF 24-1 ¶ 72; ECF 24-3 at 10. Olympus Spa asserts without factual support that "[n]udity is an expressive activity," but does not  allege what message the Spa's patrons express, or how Olympus Spa plays any role in shaping it. ECF 24-1 ¶ 71. As this Court found, while nudity and massage services may raise privacy concerns, First Amendment protection requires more selectivity in clientele, more evidence of close personal bonds between employee and patron, and more organization and clarity in the message expressed. ECF 21 at 37-38. The Spa's patrons are largely strangers to one another, and this Court should again dismiss Plaintiffs' Free Association claim.

**E.      The Spa's Federal Due Process Claim Must Be Dismissed**

Plaintiffs' Amended Complaint alleges a new cause of action against HRC Investigator Madison Imiola in both her official and individual capacities. ECF 24-1 ¶¶ 86-92. The Spa alleges that Ms. Imiola violated its procedural and substantive due process rights under the Fourteenth Amendment by failing to provide Olympus Spa with a "presumption of innocence" and by applying the WLAD to "hypothetical situations." *Id.* The Spa's due process claim is frivolous and should be dismissed on multiple grounds.

**1.      The Spa fails to state a procedural due process claim**

The Fourteenth Amendment provides that "no state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 143 S. Ct. 955, 961 (2023).

Here, the Spa asserts that Ms. Imiola violated its procedural due process rights by allegedly failing to "tak[e] evidence as to whether [HW] actually 'went to  . . . the spa," which purportedly deprived the Spa of "the opportunity to be meaningfully heard." ECF 24-1 ¶ 88. The

1    Spa claims that Ms. Imiola conducted the investigation in a manner "in which guilt of violating

2    the WLAD did not depend on whether the underlying accusation was true," which allegedly

3    deprived the Spa "of the right to provide a defense with a presumption of innocence." *Id.* ¶ 90.

4    The Spa also asserts that Ms. Imiola made a "threat" to refer the complaint for prosecution and

5    that her actions went "beyond the authority vested in the HRC under RCW 49.60.240." *Id.*; *see*

6    *also id.* ¶ 33 (alleging that HRC failed "to properly investigate false claims"); ¶ 44 (alleging

7    that HRC "has determined guilt by the act of filing of a complaint and is entirely incurious as

8    to whether the predicate fact of the presence of [HW] at the spa is true or not."). But the Spa's

9    allegations, even accepted as true for the purposes of a motion to dismiss, are legally

10   insufficient to state a procedural due process claim.

11           The Spa had ample due process protections here. *See, e.g.*, *Mathews v. Eldridge*, 424 U.S.

12   319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at

13   a meaningful time and in a meaningful manner"). It had notice of HW's complaint and the

14   opportunity to contest the complaint and supply its own evidence—indeed, it communicated

15   extensively with Ms. Imiola throughout the HRC's investigation and before entering into the pre-

16   finding settlement agreement. *See* ECF 24-3. The Spa had no obligation to choose to enter into a

17   pre-finding settlement agreement with HRC if it disagreed with Ms. Imiola's assessment of HW's

18   complaint in light of the Spa's admitted policy of refusing entry to transgender women who have

19   not had bottom surgery. Indeed, the Spa was entitled to have the complaint adjudicated under the

20   trial process provided by the WLAD rather than resolving the matter via settlement, and the Spa

21   choose to forego that opportunity.[8] But the WLAD's process is clear: An administrative law judge

22   (ALJ) would have been appointed to hear the complaint, and a formal, administrative hearing

23   would have been governed by the extensive due process protections provided by Washington's

24           [8] If the HRC had issued a reasonable cause finding that an unfair practice under the WLAD had been or was
25   being committed by the Spa, the HRC's reasonable cause determination would not serve as an adjudication of the
     complaint. *See* Wash. Admin. Code § 162-08-098(5) ("[a] finding that there is or is not reasonable cause for
26   believing that an unfair practice has been or is being committed is not an adjudication of whether or not an unfair
     practice has been or is being committed.").

1  Administrative Procedures Act.[9] *See* Wash. Rev. Code § 49.60.240, .250. And if the Spa

2  disagreed with the ALJ's ruling, it would have enjoyed the right to seek judicial review of the

3  decision. Wash. Rev. Code § 49.60.250(7).

4       But instead of availing itself of these extensive procedural rights to adjudicate HW's

5  complaint, the Spa made the tactical decision to enter a pre-finding settlement and to seek to

6  litigate its claims in this Court. The Spa cannot complain that it was denied procedural due process

7  under these circumstances. *See, e.g.*, *Brogan v. San Mateo Cnty.*, 901 F.2d 762, 764 (9th Cir.

8  1990) ("When state remedies are adequate to protect an individual's due process rights, a section

9  1983 action alleging a violation of those rights will not stand."); *Bignall v. N. Idaho Coll.*, 538

10  F.2d 243, 246 (9th Cir. 1976) ("where an adequate 'administrative remedy . . . was not designed

11  to be remedial, . . . (but) (i)nstead, . . . provide(s) a means of forestalling a threatened future

12  deprivation of civil rights,' the plaintiff must run the procedural gauntlet"); *see also Alvin v.

13  Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due

14  process, a plaintiff must have taken advantage of the processes that are available to him or her,

15  unless those processes are unavailable or patently inadequate.").

16       The Spa attempts to support its due process claim by arguing that HW did not physically

17  attempt to access the spa in person, citing press reports that HW "has stated for publication that

18  a telephone call to Olympus Spa was made rather than an actual visit." ECF 24-1 ¶ 42. The

19  Spa essentially takes the position that unless HW physically visited the Spa and was denied

20  access—rather than by being told over the phone that she would be denied entry—Ms. Imiola

21  was somehow required to find no basis for HW's complaint. But under the WLAD, the merits

22  of HW's complaint do not depend on whether she physically "went" to the Spa in person or

23  "went" by calling ahead to ask if she would be admitted. The WLAD prohibits places of public

---

24       [9] In such a proceeding, the Attorney General's Office would represent HRC in prosecuting the complaint. *See*

25  Wash. Rev. Code § 43.10.040. The Spa's allegation that Ms. Imiola made a "threat" to refer this matter for prosecution
simply reflects that the Attorney General's Office would serve as the Commission's counsel in the civil administrative

26  action if there had been an adjudication of the complaint. Indeed, as HRC explained previously, HRC's enforcement
procedures include administrative and civil enforcement options only. *See* ECF 13 at 3 n.2.

1  accommodation from refusing admission to people because of their gender identity. Wash.

2  Rev. Code § 49.60.040(27), 215; Wash. Admin. Code § 162-32-060. The WLAD also prohibits

3  places of public accommodation from treating people "as not welcome, accepted, desired, or

4  solicited" because of their gender identity. Wash. Rev. Code § 49.60.040(14). Nothing in the

5  WLAD requires that a person must be refused physical admission, in person, in order to have

6  a claim for public-accommodation discrimination.

7       Here, regardless whether the Spa denied entry to HW in person or over the phone, the

8  Spa admitted during the HRC investigation (and continues to admit in the Amended

9  Complaint) that it maintained a "female-only policy, allowing only biological women and

10  excluding transgender women without surgery." ECF 24-1 ¶ 39; *see also* ECF 24-3, Ex. 4

11  (March 25, 2021 response from the Spa providing Ms. Imiola with the Spa's "biological

12  women" entry policy). As a result, there is no question that the Spa maintained a policy that

13  barred any transgender women who had not had bottom surgery from accessing the services of

14  the business in January 2020 when HW reported being told that "transgender women without

15  surgery are not welcome because it could make other customers and staff uncomfortable." ECF

16  24-3, Ex. 1.[10] Based on the Spa's admission of its "biological women" entry policy during the

17  investigation, a practice that the Spa seeks to reinstate through this lawsuit, Ms. Imiola had

18  clear grounds to believe there was reasonable cause for HW's complaint and to propose that

19  the Spa consider entering a pre-finding settlement.[11] *See* Wash. Admin. Code § 162-08-099(3)

---

[10] In its Amended Complaint, Plaintiffs allege that HW had bottom surgery on August 3, 2020, many months after HW alleges that she was refused services in January 2020. ECF 24-1 ¶ 35 The Spa suggests that HW no longer has "standing" to assert a complaint against the Spa if she had bottom surgery after she was denied access to the Spa. This assertion is without merit. The WLAD directs HRC to determine whether an unlawful practice "*has been* or *is being* committed." Wash. Rev. Code § 49.60.240(2) (emphases added). The statute thus requires HRC to investigate the backward-looking harm allegedly done to HW, as well as the current effects of the Spa's admissions policy. HW's change in personal circumstances affects neither prong of HRC's investigative charge.

[11] The Spa notes that the WLAD provides that an HRC investigation "shall be limited to the alleged facts contained in the complaint." Wash. Rev. Code § 49.60.240(2). It further alleges that "HRC Agent Imiola went beyond the complaint and failed to investigate the claim as stated and ascertain the facts alleged by the Complainant." ECF 24-1, ¶ 52. This assertion ignores that the Spa confirmed to Ms. Imiola that it maintained a "biological women" policy that excluded transgender women who had not had bottom surgery, which was the policy about which HW complained to HRC.

DEFENDANTS' MOTION TO DISMISS      10      ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-BJR                                           Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1    (authorizing pre-finding settlements of HRC complaints). Ms. Imiola's conduct did not deprive

2    the Spa of any constitutionally-protected liberty or property interests, nor did it deprive the Spa

3    of any procedural due process rights. Because the Spa fails to allege any process that was due

4    the Spa that Ms. Imiola withheld, its due process claim necessarily fails.

5    The Spa's further allegation that it was unconstitutionally denied a "presumption of

6    innocence" by Ms. Imiola also fails to state a claim for a procedural due process violation.

7    Although the presumption of innocence is a requirement of due process in a criminal proceeding,

8    *see United States v. Olvera*, 30 F.3d 1195, 1196 (9th Cir. 1994), HRC complaints are not criminal

9    proceedings. Courts have repeatedly held that an alleged denial of a presumption of innocence in

10   a non-criminal proceeding does not give rise to a procedural due process claim. *See, e.g.*, *Hamid*

11   *v. City of Chicago*, No. 98  C 3789, 1999 WL 759423, at *3 (N.D. Ill. Sept. 2, 1999) ("no right to

12   a presumption of innocence in civil proceedings"); *Leyh v. Property Clerk of the City of New York*

13   *Police Dep't*, 774 F. Supp. 742, 746 (E.D.N.Y. 1991) ("the 'presumption of innocence' is

14   inapplicable to a non-criminal proceeding."); *see also Vargas v. State*, 65 P.3d 330, 333 (Wash.

15   App. 2003) ("the right to be presumed innocent is limited to criminal proceedings.").

16   **2.      The Spa also fails to state a substantive due process claim**

17   Substantive due process "forbids the government from depriving a person of life,

18   liberty, or property in such a way that shocks the conscience or interferes with rights implicit

19   in the concept of ordered liberty." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir.

20   1998). The U.S. Supreme Court has further "required in substantive due process cases a

21   'careful description' of the asserted fundamental liberty interest." *Washington v. Glucksberg*,

22   521 U.S. 702, 720-21 (1997). The Spa's skeletal and inaccurate allegations fall far short of

23   satisfying the demanding standard for a substantive due process claim.

24   Here, the Spa alleges that "[a] determination of guilt by mere accusation" violates its

25   "substantive due process rights." ECF 24-1 ¶ 91. The Spa claims that "Ms. Imiola applied the

26   WLAD to hypothetical situations. Since the incident never occurred, she censors Olympus Spa

1    with the threat of punishment for the underlying thought processes of the Plaintiff's business."

2    *Id.* ¶¶ 91-92. But as discussed above, Ms. Imiola was not presented with a "hypothetical

3    situation" here. Instead, the Spa itself admitted during the investigation that it maintained the

4    "biological women" policy that excluded transgender women who had not had bottom surgery.

5    *See* ECF 24-1 ¶ 39; ECF 24-3, Ex. 4. The Court is "not required to accept as true conclusory

6    allegations which are contradicted by documents referred to in the complaint." *Steckman v.*

7    *Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998).

8          The Amended Complaint also lacks a careful description of the fundamental liberty

9    interest that the Spa is asserting. If that liberty interest is freedom of thought, the Spa admits

10   that its "biological women" policy converts discriminatory thought into discriminatory action.

11   The Spa has no fundamental liberty interest in refusing to serve transgender women who have

12   not had bottom surgery.

13         **3.**      **Ms. Imiola is entitled to qualified immunity**

14         The federal doctrine of qualified immunity protects government officials "from liability

15   for civil damages insofar as their conduct does not violate clearly established statutory or

16   constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,

17   555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "This

18   demanding standard protects 'all but the plainly incompetent or those who knowingly violate

19   the law.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs*,

20   475 U.S. 335, 341 (1986)).

21         Here, even if the Court were to conclude that the Spa has stated a claim for procedural

22   or substantive due process violations against Ms. Imiola, which it has not, the doctrine of

23   qualified immunity requires dismissal of the Spa's claims for damages against her. The Spa

24   was provided notice of the complaint and Ms. Imiola provided the Spa with the opportunity to

25   provide information in response. After the Spa admitted to its "biological women" policy, Ms.

26   Imiola encouraged the business to consider entering a pre-finding settlement agreement, which

DEFENDANTS' MOTION TO DISMISS      12      ATTORNEY GENERAL OF WASHINGTON
2:22-cv-00340-BJR      Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

1  the Spa chose to accept. There is no clearly established federal statutory or constitutional law

2  that would suggest to Ms. Imiola that her conduct in pursuing the investigation and pre-finding

3  settlement was unlawful. Instead, the WLAD on its face prohibits places of public

4  accommodation from discriminating based on gender identity, including gender-segregated

5  facilities. *See* Wash. Rev. Code § 49.60.040(27), .215; Wash. Admin Code § 162-32-060.

6  Qualified immunity plainly requires dismissal of the federal due process claim against Ms.

7  Imiola in her individual capacity under these circumstances *See, e.g.*, *Shooter v. Arizona*, 4

8  F.4th 955, 966 (9th Cir. 2021) (affirming district court's Rule 12(b)(6) dismissal of due process

9  claims on qualified immunity grounds where the plaintiff "failed to demonstrate a clearly

10  established right to any due process protections beyond those already afforded to him")).

11  **F.      Plaintiffs' Washington State Constitutional Claims Must Also Be Dismissed**

12         Plaintiffs' Amended Complaint also alleges a new cause of action against all

13  Defendants for violation of Plaintiffs' right to religious freedom under the Washington State

14  Constitution, Article 1, § 11. ECF 24-1 ¶¶ 93-99. This new state-law claim is barred by the

15  Eleventh Amendment and lacks a legal basis under Washington law. In any event, the Court

16  can and should decline to exercise supplemental jurisdiction over this state-law claim because

17  all of Plaintiffs' federal claims must be dismissed. *See, e.g.*, *Ove v. Gwinn*, 264 F.3d 817, 826

18  (9th Cir. 2001) ("A court may decline to exercise supplemental jurisdiction over related state-

19  law claims once it has 'dismissed all claims over which it has original jurisdiction.'") (quoting

20  28 U.S.C. § 1367(c)(3)).

21         The Eleventh Amendment to the U.S. Constitution bars Plaintiffs from maintaining

22  their state constitutional claim against Defendants in their official capacities. As the U.S.

23  Supreme Court has held:

24         A federal court's grant of relief against state officials on the basis of state law,
           whether prospective or retroactive, does not vindicate the supreme authority of
25         federal law. On the contrary, it is difficult to think of a greater intrusion on state
           sovereignty than when a federal court instructs state officials on how to conform
26

their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment"

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992) (noting that in *Pennhurst*, "the Supreme Court held that the eleventh amendment bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their *official* capacities alleging a violation of state law") (emphasis in original).

Likewise, Plaintiffs may not seek damages, even nominal damages, against Ms. Imiola in her individual capacity for their claim under the Washington Constitution. While the "Eleventh Amendment does not bar damage suits against state officials in their *personal* capacity[,]" *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (emphasis in original), Washington State does not have an analogue to Section 1983 that permits suits for damages against state officials for alleged violations of the Washington Constitution. As a result, Washington courts "have consistently rejected invitations to establish a cause of action for damages based upon [state] constitutional violations 'without the aid of augmentative legislation.'" *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. App. 2001). As such, Plaintiffs cannot bring a claim for damages against Ms. Imiola in her personal capacity for alleged violations of their rights under the Washington Constitution.

Finally, even if the Court determines that Plaintiffs have some basis to proceed on their state law claim, which they do not, the Court should decline to exercise supplemental jurisdiction because all of Plaintiffs' federal claims should be dismissed. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). This is particularly

1  justified where, as here, the case is in its early stages. *See Horton v. Americool Heating & A/C*

2  *LLC*, No. 2:22-cv-1838-BJR, 2023 WL 3168612, at *7-8 (W.D. Wash. May 1, 2023).

3  ## IV.    CONCLUSION

4      Plaintiffs' Amended Complaint should be dismissed with prejudice. Pursuant to

5  Section II.F of this Court's Standing Orders for All Civil Cases, the parties met and conferred

6  by telephone on July 7, 2023, and determined that Plaintiffs could make no amendment to the

7  Amended Complaint that would avoid Defendants' filing this Motion to Dismiss.

8      DATED this 7th day of August, 2023.

9                          Respectfully submitted,

10                         ROBERT W. FERGUSON
                           Attorney General of Washington
11

12

13                         _____
                           NEAL LUNA, WSBA No. 34085
                           DAVID WARD, WSBA No. 28707
14                         Assistant Attorneys General
                           Wing Luke Civil Rights Division
15                         Office of the Attorney General
                           800 Fifth Avenue, Suite 2000
16                         Seattle, WA 98104
                           (206) 287-4189
17                         neal.luna@atg.wa.gov
                           david.ward@atg.wa.gov

18

19

20

21

22

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

DATED this 7th day of August, 2023 in Seattle, Washington.

_____
Logan Young
Legal Assistant

DEFENDANTS' MOTION TO DISMISS                16
2:22-cv-00340-BJR

ATTORNEY GENERAL OF WASHINGTON
Civil Rights Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744