1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE

4

5

6

7

OLYMPUS SPA, MYOON WOON LEE, SUN
LEE, JANE DOE EMPLOYEE 1, JANE DOE
EMPLOYEE 2, JANE DOE EMPLOYEE 3,
JANE DOE PATRON 1,

Plaintiffs,

8

9

v.

10

11

12

13

ANDRETA ARMSTRONG, in her official
capacity as Executive Director of the
Washington State Human Rights Commission,
MADISON IMIOLA, in her official and
individual capacities as a Civil Rights
Investigator for the Washington State Human
Rights Commission, HRC

14

Defendant.

NO. 2:22-cv-00340-BJR

PLAINTIFFS' RESPONSE TO
DEFENDANT'S MOTION TO DISMISS

ORAL ARGUMENT REQUESTED

15

16

17

18

19

20

21

22

23

24

25

Plaintiffs' Response to Defendant's Motion to Dismiss 2:22-cv-
00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

7507650.1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................iii

I.   INTRODUCTION.................................................................................................... 1

II.  SUMMARY OF THE ARGUMENT ...................................................................... 1

III. PROCEDURAL HISTORY .................................................................................... 1

IV.  FACTS .................................................................................................................... 2

THE COMPLAINANT ................................................................................................. 4

V. ARGUMENT ............................................................................................................ 5

A.  Claim(s) for relief are sufficiently stated ................................................... 5

B.  Citizens have constitutional rights while engaged in commercial enterprise ........... 6

C.  Constitutional rights of Plaintiffs (claims which are redressable) ......................... 7

    i. Free speech ........................................................................................ 7

    ii. Free exercise of religion ................................................................... 10

    iii. Hybrid rights .................................................................................... 11

    iv. Association ...................................................................................... 12

D.  Due Process ............................................................................................... 15

    i.   Substantive Due Process ................................................................ 16

    ii.  Procedural Due Process ................................................................. 17

E.  . Acting Under Color of Law ...................................................................... 19

    i. Deprivation of a Constitutional Right .............................................. 22

    ii. Clearly Established .......................................................................... 23

F.   This Court has supplemental jurisdiction over state constitutional claims ........... 23

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-
00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

i

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

VI. CONCLUSION ...........................................................................................................24

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

ii

1
2

# TABLE OF AUTHORITIES

**CASES**

3

*303 Creative LLC v. Elenis,*
   143 S. Ct. 2298 (2023) ...................................................................... 6, 9, 21

4
5

*Anthony List v. Driehaus,*
   573 U.S. 149, 159 (2014) ........................................................................ 8

6
7

*Arlene's Flowers, Inc. v. Washington,*
   138 S. Ct. 2671 (2018) ........................................................................... 14

8
9

*Arnold b. IBM. Corp.,*
   637 F.2d 1350 (9th Cir. 1981) ............................................................... 22

10

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................. 6

11
12

*Bach v. Sarich,*
   74 Wn.2d 575 (1968) .............................................................................. 18

13
14

*Bailey v. Patterson,*
   369 U.S. 31 (1962) .................................................................................. 24

15
16

*Bell v. Hood,*
   327 U.S. 678 (1946) ................................................................................ 24

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .................................................................................. 6

17
18
19

*Blizzard v. Floyd,*
   149 Pa. Commw. 503 (Pa. Commw. Ct. 1992) ...................................... 11

20
21

*Board of Cty. Comm'rs v. Brown,*
   520 U.S. 397 (1997) ........................................................................... 21, 22

22
23

*Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte,*
   481 U.S. 537 (1987) ........................................................................... 13, 15

24

*Boy Scouts of Am. v. Dale,*
   530 U.S. 640 (2000) ....................................................................... 6, 8, 13, 23

25

*Burwell v. Hobby Lobby Stores, Inc.,*

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

iii

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

573 U.S. 682 (2014) ................................................................................ 7

*Chi. v. Wash. State Human Rights Com.,*
  87 Wn.2d 802 (1976) ........................................................................ 19

*Church of Lukumi Babalu Aye v. City of Hialeah,*
  508 U.S. 520 (1993) .......................................................................... 11

*City of Canton v. Harris,*
  489 U.S. 378 (1989) .......................................................................... 22

*Collins v. City of Harker Heights,*
  503 U.S. 115 (1992) .......................................................................... 16

*Cruzan v. Dir., Mo. Dep't of Health,*
  497 U.S. 261 (1990) .......................................................................... 16

*Danielson v. Seattle,*
  45 Wn. APP. 235,244 ........................................................................ 17

*District of Columbia v. Wesby,*
  138 S. Ct. 577 (2018) ........................................................................ 21

*Douglas v. Jeannette,*
  319 U.S. 157 (1943) .......................................................................... 22

*Employment Div. v. Smith,*
  494 U.S. 872 (1990) ............................................................ 10, 11, 15

*Erznoznik v. City of Jacksonville,*
  422 U.S. 205, 211 (1975) .................................................................... 9

*Ex parte Poresky,*
  290 U.S. 30 (1933) ............................................................................ 24

*Fair Hous. Council v. Roommate.com, LLC,*
  666 F.3d 1216 (9th Cir. 2012) ........................................................... 12

*Fulton v. Philadelphia,*
  593 U.S. ___, 141 S. Ct. 1868 (2021) ................................................ 11

*Gonzales v. Google LLC,*
  2 F.4th 871(9th Cir. 2021) ................................................................... 5

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

iv

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

1

2    *Goodisman v. Lytle,*
          724 F. 2d 818, 820-21 (9th Cir. 1984) …………………………………………17

3
4    *Goosby v. Osser,*
          409 U.S. 512 (1973) ........................................................................ 24

5    *Green v. Miss USA, LLC,*
6          52 F.4th 773 (2022) ....................................................................... 14

7    *Gritchen v. Collier,*
          254 F.3d 807 (9th Cir. 2001) ......................................................... 21

8
9    *Hagans v. Lavine,*
          415 U.S. 528 (1974) ....................................................................... 24

10
11   *Hannis Distilling Co. v. Baltimore,*
          216 U.S. 285 (1910) ....................................................................... 24

12   *In re Borchert,*
          57 Wn.2d 719 (1961) ..................................................................... 18

13
14   *Jamison v. Texas,*
          318 U.S. 413 (1943) ....................................................................... 22

15
16   Levitt v. University of Tex.,
          759 F.2d 1224, 1230 (5th Cir.) ...................................................... 17

17
18   *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania,*
          140 S. Ct. 2367 (2020) .................................................................... 9

19   *Malley v. Briggs,*
          475 U.S. 335 (1986) ....................................................................... 21

20
21   *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n,*
          138 S. Ct. 1719 (2018) .......................................................... 7, 11, 14

22
23   *Mathews v. Eldrige,*
          424 U.S. 319 (1976) .................................................................. 16, 17

24
25   *Mercado v. City of Orlando,*
          407 F.3d 1152 (11th Cir. 2005)...................................................... 23

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

v

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

*Miller v. Reed,*
    176 F.3d 1202 (9th Cir. 1999) ...................................................................... 15

*Monell v. Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) ...................................................................................... 20

*New York State Club Ass'n, Inc. v. City of New York,*
    487 U.S. 1 (1988) ......................................................................................... 12

*Oviatt v. Pearce,*
    954 F.2d 1470 (9th Cir. 1992) ...................................................................... 22

*Palko v. Connecticut,*
    302 U.S. 319 (1937) ...................................................................................... 16

*Pembaur v. City of Cincinnati,*
    475 U.S. 469 (1986) ...................................................................................... 22

*Polk Cty. v. Dodson,*
    454 U.S. 312 (1981) ...................................................................................... 21

*Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) ......................................... 17

*Rendell-Baker v. Kohn,*
    457 U.S. 830 (1982) ...................................................................................... 20

*Reno v. Flores,*
    507 U.S. 292 (1993) ...................................................................................... 16

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ............................................................................ 8, 9, 16

*Roth v. United States,*
    354 U.S. 476 (1957) ........................................................................................ 9

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) .......................................................................................... 9

*San Jose Christian Coll. v. City of Morgan Hill,*
    360 F.3d 1024 (9th Cir. 2004) ...................................................................... 15

*Saucier v. Katz,*
    533 U.S. 194 (2001) ...................................................................................... 22

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

vi

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

*Schneider v. State*,
    308 U.S. 147 (1939) ........................................................................................ 23

*Shelley v. Kraemer*,
    334 U.S. 1 (1948) .......................................................................................... 15

*Sherbert v. Verner*,
    374 U.S. 398 (1963) .......................................................................................... 9

*Shroyer v. New Cingular wireless Servs., Inc.*,
    622 F.3d 1035 (9th Cir. 2010) ......................................................................... 5

*Snyder v. Massachusetts*,
    291 U.S. 97 (1934) ........................................................................................ 16

*State v. Madry*,
    8 Wn. App. 61(1972) ..................................................................................... 19

*State ex rel. Barnard v. Board of Educ.*,
    19 Wash. 8 (1898) .................................................................................. 18, 19

*State ex rel. Beam v. Fulwiler*,
    76 Wn.2d 313 (1969) ..................................................................................... 19

*State ex rel. McFerran v. Justice Court*,
    32 Wn.2d 544 (1949) ..................................................................................... 19

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ........................................................................................ 8

*United States v. Albertini*,
    472 U.S. 675 (1985) .................................................................................. 8, 10

*United States v. Caceres*,
    440 U.S. 741, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979) ............................... 17

*United States v. Classic*,
    313 U.S. 299 (1941) ...................................................................................... 21

*United States v. O'Brien*,
    391 U.S. 367 (1968) .................................................................................. 8, 10

*United States v. Stanley*,

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

vii

109 U.S. 3 (1883) ........................................................................................ 15

*Van Ort v. Estate of Stanewich,*
   92 F.3d 831 (9th Cir. 1996) ...................................................................... 22

*Ward v. Rock Against Racism,*
   491 U.S. 781 (1989) .................................................................................... 9

*Wash. v. Glucksberg,*
   521 U.S. 702 (1997) .................................................................................. 16

*West v. Atkins,*
   487 U.S. 42 (1988) .................................................................................... 21

*William v. Seattle*
   607 F. Supp. 714 (W.D. Wash. 1985) ....................................................... 17

*Wisconsin v. Yoder,*
   406 U.S. 205 (1972) .................................................................................. 11

## CONSTITUTIONS, STATUTES, AND RULES

U.S. Const., amend. I ...................................................................... 6, 8, 16, 22

U.S. Const., amend XIV .............................................................. 15, 16, 19, 22

42 USC § 1983 ............................................................................ 19, 20, 21, 23

Fed. R. Civ. P. 8(a)(2) ........................................................................................ 6

Wash. Admin. Code § 162-08 ......................................................................... 21

Wash. Admin. Code § 162-08-061 ............................................................ 17, 19

Wash. Admin. Code § 162-08-093 ................................................................. 19

Wash. Ct. Rule § 12(b)(1) ................................................................................. 1

Wash. Ct. Rule § 12(b)(6) ............................................................................. 1, 2

Wash. House Bill 1788 ................................................................................... 13

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

viii

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

Wash. Rev. Code § 4.24.795 ..................................................................... 13

Wash. Rev. Code § 9a.88.010 ................................................................... 13

Wash. Rev. Code § 49.60 ........................................................................... 4

Wash. Rev. Code § 49.60.120 ................................................................. 17

Wash. Rev. Code § 49.60.230(1)(a) ........................................................... 1

**OTHER AUTHORITIES**

*What are Sex & Gender?*, NATIONAL INSTITUTE OF HEALTH,
   https://orwh.od.nih.gov/sex-gender ........................................... 13, 14

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-
00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

ix

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

1

2

## I.    INTRODUCTION

3

Plaintiff Olympus Spa is a commercial enterprise with two locations in Lynnwood and

4

Tacoma serving the greater Washington area. The Spa is a traditional Korean spa performing

5

*jjimjilbang, ddemiri*, and *sheshin* procedures which require full nudity, and which is not

6

optional. The procedures are intimate, lengthy, and precise. The Spa has always had a

7

"female" only policy and discriminated on the basis of sex. Olympus will allow anyone who

8

presents as female in the nude into their spa, but only those who present female in the nude

9

are allowed. This is a business, religious, and cultural choice in consideration of normative

10

societal standards regarding nudity. The owners are Christians who believe that nudity as

11

between the sexes is a sin outside of marriage. The employees are trained in the art of Korean

12

traditional services, and are not equipped to provide services to the male sex. It would violate

13

their belief to see and touch a male in the nude outside of marriage. The patrons of Olympus

14

have an associative expectation that they will be amongst women while in the nude.

15

16

Under these premises, a complaint was filed claiming violations by the HRC of religion,

17

speech, association, and due process in their investigation of a complaint lodged by a

18

complainant who was born male but identifies as female under the protected class of gender

19

identity within the Washington Law Against Discrimination (WLAD). The complaint alleged

20

a failure to accommodate the complainant due to presenting male in the nude, but never-the-

21

less identified as a woman.

22

## II. SUMMARY OF THE ARGUMENT

23

24

Commercial enterprise(s) have constitutional rights in the business sphere. Olympus Spa

25

was deprived of their constitutional rights when compelled to speak the message of the state on

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-
00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

1

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

their website and in their policy. The Plaintiffs' religious beliefs run counter to the pre-finding

settlement (PFS) they were required to sign. The implications of such forced messaging violated

the right to freely associate, or not associate, within the establishment. The actions of the HRC

deprived Olympus Spa of their due process rights in that the investigator was entirely incurious

as to the truth of the allegations, the veracity of which was called into question. The defense that

the complaints of allegations never occurred is absolute. The HRC cannot maintain a position of

neutrality when their procedures and policy substantially burden the First Amendment religious

rights of the owners, employees, and patrons of Olympus Spa, and violate the same.

### III. PROCEDURAL HISTORY

On or about March 2022 Plaintiffs filed a complaint against the HRC and its Executive

Director. ECF 1. The State subsequently moved for dismissal under 12(b)(1) and (6) alleging that

the Plaintiffs lacked standing and alleged claims which did not meet the requirements at law.

Defendant's 12(b)(1) claim failed as the Court found standing for the harms or threat of harm

from the HRC. The Court reviewed the briefing, heard oral argument, and ruled in favor of

Defendant on the 12(b)(6) motion of Defendant, but granted leave to the Plaintiffs to file an

amended complaint. ECF 21. The Plaintiffs did so file on July 6, 2023. ECF 24-1.

### IV. FACTS[1]

Olympus Spa serves women as defined by sex, not gender. Olympus will treat a woman

of any sexual orientation, race, religion, or other protected status with the caveat that all clients

must present in the nude as female. That is to say, Olympus Spa will not serve those who present

---

[1] For purposes of a 12(b)(6), facts must be construed in a light most favorable to the Plaintiff. As such, each fact is posed as true.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

2

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

as men in the nude inside their all-nude female facility. This is the policy and such policy was reflected on the website of the Spa.

Olympus Spa has always had restrictions on entry related to age and sex. This restriction is due to the fact that the *jjimjilbang, ddemiri* and *sheshin* are experienced while nude. The delicate balance of maintaining the dignity and interest of females while nude and complying with the law is a priority of Olympus Spa. The faith of the owners requires of them that men and women not be nude together outside of marriage, and, further, that employees who are female not be forced to touch the naked body of the male sex.[2] Olympus Spa will not agree or otherwise state that a person who presents male in the nude is a woman.

The Spa experience begins with a check-in at the front desk where the patron must enter their information prior to admittance. Thereafter, the women are ushered into the locker room and designated a locker, robe, and slippers. Once changed, a woman enters the inner rooms of the Spa. Herein, there is a restaurant where women must remain robed, and there are sweat rooms where women must disrobe. The heart of the spa contains pools, saunas, and massage tables which are open to all and where the female staff perform the body scrubs (*ddemiri*). The women disrobe and remain completely nude as they move from pool to pool, sauna to sauna, and to the massage tables for treatment. The staff rubs a special mixture upon the bodies of the women to remove dead skin cells. ECF 1, 3, 15. The service is prolonged, intimate, and deeply personal.

---

[2] For purposes of this brief the Plaintiffs use sex and gender as separate and distinct classes/groups which have defining characteristics. Sex is defined as a male or female with corresponding genitalia or the appearance of such genitalia, surgery notwithstanding. For complete definitions see Amended Complaint, ECF 24-1at

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

3

What is more, the employees of Olympus are all female, have intimate access to the nude bodies of the clients, and are diligently scrubbing the entirety of the body. The staff are trained to work exclusively on a female body and are not trained in the treatment of a male body as that has never been contemplated by the traditional *jjimjilbang/ddemiri*.  The Olympus website read that "biological women are welcome". Amended Complaint, ECF 24-2, Ex. 4.

### THE COMPLAINANT[3]

A member of the male sex, a transgender woman who had not undergone sex reassignment surgery, but nonetheless identifies as a woman, complained of denial of entrance to Olympus Spa. The complainant alleged that the "[o]wner denied me services and stated that transgender women without surgery are not welcome because it could make other customers and staff uncomfortable." ECF 24-1 at 10.

Throughout the course of investigating the complaint, it came to light that the complainant lied, repeatedly and extensively, regarding the facts surrounding the complaint submitted to the Human Rights Commission (HRC). ECF 24-1 Ex. 1, 2. Complainant never set foot in either of Olympus Spa's locations. ECF 24-1, Ex. 1. Despite proof from the Plaintiff that the complainant never came to the Spa nor spoke with the owner, as alleged in the complaint, Madison Imiola, in her official capacity, cited "feelings" as the reason that WLAD had been violated. ECF 24-1 ¶ 42. In a letter dated April 14, 2021, the HRC deemed Olympus Spa as having violated the WLAD in a place of public accommodation for two reasons: (1) Female

---

[3] The AG makes much of the use of Complainant's real name, but the Complainant set about a publicity tour following the PFS issuance, and after the initial Order of the Court. Both by way of personal social media, and public interviews on local news channels and the like. The scrutiny received has been due to Complainant's own projection and engagement of the public and media.  (ECF 24-1 ¶35-36)

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

4

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

Language, and (2) Female Only Policy. *Id*. at 40 a-b; ECF 1-3, at 15-16. The State was preparing to compel speech from the Plaintiff.

The HRC official wrote, "The WSHRC has already identified that Olympus Spa's 'biological women' entry policy is not compliant with the WLAD, RCW § 49.60, which prohibits discrimination on the basis of gender identity in places of public accommodation." Ms. Imiola went on to state that the time for Olympus Spa to ensure that Complainant did not "feel" discriminated against had passed. ECF 24-2, Exhibit 7, p. 20. The statements of Ms. Imiola mischaracterize the policy of Olympus Spa. The Spa restricts entry on the basis of sex, not gender ideology. This is an important distinction where the services provided are in the nude, and are the basis upon which the Spa provides services.

Further, Ms. Imiola refused to investigate whether a conversation between the complainant and the owner actually took place. It did not. *Id*. at 18. The HRC is tasked with investigating complaints and failed to investigate the complaint to determine if it was true.

## V. ARGUMENT

**A. Claim(s) for relief are sufficiently stated.**

Dismissal under Rule § 12(b)(6) is appropriate "only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010). The Court must accept as true all factual allegations in the complaint and construe them in a light most favorable to Olympus Spa. *Gonzales v. Google LLC,* 2 F.4th 871, 885 (9th Cir. 2021). The plaintiff's complaint contains a sufficient amount of factual matter, accepted as true, to "state a claim to

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

5

relief that is plausible on the face of the pleadings." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2).

    As will be demonstrated supra, the Plaintiffs' claims under freedom of speech, free exercise of religion, association, and due process have facial plausibility in that the Plaintiffs have pled factual content that allows this Court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Ashcroft*, 556 U.S. at 662. Plaintiffs have rights in their commercial endeavors. Defendants' failure to afford Plaintiffs due process violated the first amendment in three distinct ways: Plaintiffs were forced to speak a message, the message contravenes their faith, and violated their freedom of association. Plaintiffs have constitutionally protected rights that do not cease in the commercial sphere.

**B.      Citizens have constitutional rights while engaged in commercial enterprise.**

    The issue, as it relates to commercial enterprise, is whether or not Olympus Spa has constitutional rights. They do. The State's position is that Olympus Spa is a place of public accommodation and, because of this, has waived its constitutional rights. Not true. Three times in recent years the Supreme Court has ruled that public accommodation laws do not abrogate constitutional rights. Last term the Supreme Court rejected attempts by Colorado to limit the speech rights of a web designer through public accommodation laws. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023). To no avail, the City of Philadelphia made similar arguments against  Catholic Charities. *Fulton v. Philadelphia*, 141 S. Ct. 1868, 1880 (2021).  New Jersey did no better in its attempts to limit the constitutional rights of the Boy Scouts. *Boy Scouts of Am. v. Dale*, 530 U.S. 640 (Reversing, the Third Circuit High Court found that a for-profit commercial enterprise enjoyed First Amendment rights).  The Supreme Court has clearly stated

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

6

that persons engaged in commercial enterprise have constitutional rights. *Burwell v. Hobby Lobby Stores*, Inc., 573 U.S. 682, 710. A baker has free exercise rights, and a web designer has free speech rights in their business pursuits. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018). Plaintiffs do not cede their constitutional rights by entering the stream of commerce.

Having established that business entities do not leave their constitutional liberties when they enter into commercial endeavors with the public, this brief turns to a discussion of those liberties.

**C. Constitutional rights of Plaintiffs (claims which are redressable)**

**i. Olympus was censored by the State for posting the statement that "biological women are welcome."[4]**

As a starting point, HRC's censorship of the Spa's message on its website is a content-based restriction and presumptively unconstitutional. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) The restriction on the Spa's communication to the public is subject to strict scrutiny. Because of this, the burden shifts to the State to plead and prove a compelling state interest which is narrowly tailored. *Id*. 163 This the HRC has not done.

But for the threat made by the HRC, Plaintiffs would not have been compelled to adopt the messaging of the State in their website and policy. While the law is free to promote all sorts of conduct in place of harmful behavior, it is not free to interfere with speech for no better reason than promoting an approved message or discouraging a disfavored one, however enlightened

---

[4] ECF 24-2, Ex. 4.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

7

either purpose may strike the government. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 643 (2000).

More recently, the Supreme Court decided that commercial enterprises need not convey a

message that defies [their] beliefs and may not be compelled to speak a message that [they] did

not wish to produce. *303 Creative LLC v. Elenis*, 143 S. Ct. 2298 (2023) (citing *Susan B.*

*Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

     The censorship of the Spa does not even pass intermediate scrutiny.  Construing the facts

alleged in a light most favorable to Plaintiff the court must note the following: Ms. Imiola

threatened Olympus Spa with referral to the AG office if they failed to change their website and

policy (speech); Plaintiffs were not allowed to speak freely the truth of the male and female

biology/sex related to their world view; the right to be nude is not a fundamental liberty interest;

the State, through Ms. Imiola,  suppressed the message of Olympus' website even after the

complaint was found to have been a fabrication. ECF 22-2, p. 16, 18, 20, 22.  Here, the actions of

the HRC fail intermediate scrutiny under the four-part *Albertini/O'Brien* test because the speech

burden is not incidental and the actions of the HRC further no substantial or important

government interest. *United States v. Albertini*, 472 U.S. 675, 687-88 (1985) (using and quoting

the *O'Brien* test, *United States v. O'Brien*, 391 U.S. 367, 377 (1968)).

     The HRC has no power to regulate speech as it relates to the Spa's expression of services

on their website; therefore, the first *Albertini/O'Brien* prong cannot be satisfied. The second

prong fairs no better, the Government has no [substantial or important] interest in ensuring

nudity. An MTF [pre-operative] trans person has no fundamental right to be nude and the State

cannot lay hold of a valid argument that forbidding the co-mingling of sexes in the nude is an

"invidious [act of] discrimination" that warrants government interest. *See e.g., Roberts v. U.S.*

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

8

*Jaycees,* 468 U.S. 609, 628 (1984). It is not malicious, hostile, or damaging to separate males and females who are nude and refuse to force employees to engage in touching a naked male body. Nudity, per se, is not constitutionally protected conduct/activity. *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 211 n. 7 (1975) (quoting *Roth v. United States,* 354 U.S. 476 (1957) (Douglass, J., dissenting)) ("[N]o one would suggest that the First Amendment permits nudity in public places."). Even if the Court could conclude that ensuring the right to nudity as between the sexes "added to the effectiveness" of the government's interest in safeguarding civil rights, it could not propound that goal by forcing Olympus Spa to speak their message under the auspices of the WLAD. *See, Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,* 547 U.S. 47, 67 (2006).

Under the third prong, the governmental interest displayed here unquestionably relates to the suppression of free speech when it forces a message that the speaker fundamentally disagrees with and may not be forced to speak. *303 Creative,* 143 S. Ct. 2298 (2023). The State's suppression of speech was the sole aim of the investigation following the presentation of evidence that the complainant lied.[5] ECF 24-1 ¶ 40, 41. Among alternative courses of action, the HRC chose the most restrictive of the speech rights of the plaintiff. All three requirements in the PFS involved speech and thought policing: 1. change the website language; 2. undergo "training" to ensure the Plaintiffs properly understood the messaging of the State and complied with their thinking; 3. allow the State to determine policies of Olympus by review. *Id.* at 47.

_____

[5] Complainant stated in the complaint they came to the spa, then gave a TV interview and stated that it was a call to the Spa. Plaintiff contends that none of the employees recollect speaking to any caller on such topics and the complainant alleged speaking to the owner which Plaintiff also denies. Malicious lying ought to be viewed by the court as sufficiently based in animus as against Olympus.ECF 24-1. P. 10 ¶34-35, 24-2 Ex. 4.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

9

Finally, the imposition of WLAD on the Plaintiffs' constitutional rights is far afield from incidental. *United States v. O'Brien*, 391 U.S. 367 (1968). It is a fundamental expression of the beliefs of the owners that God made women distinct in form and that the Spa seeks to serve those women, in a traditional Korean way, for health, wellness, and restoration. The restriction on speech is calculated, deliberate, premeditated, and predictably suppresses the free expression of plaintiffs. Madison Imiola began a review of the website and did not want the business to express themselves.

> No one could seriously claim that there would be no 'substantial' effect on religious exercise if the Little Sisters of the Poor were required to provide only a single contraceptive, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2376, 207 L. Ed. 2d 819 (2020); if a Seventh-Day Adventist was forced to work only a single Sabbath, *Sherbert v. Verner*, 374 U.S. 398, 403, 83 S. Ct. 1790, 10 L. Ed. 2d 965 (1963); or if a Christian baker were ordered to bake a custom wedding cake for only one homosexual couple, *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1724, 201 L. Ed. 2d 35 (2018).

*Green v. Miss USA, LLC*, 52 F.4th 773, 786-787 (2022). There is no government interest here. The State cannot prove that their actions serve a purpose unrelated to regulating the content of Plaintiff's expressive rights, and for this reason, the actions are not neutral nor incidental. *See e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989).

None of the *Albertini/O'Brien* requirements are met in this case. *Albertini,* 472 U.S. 675, (1985), *O'Brien,* 391 U.S. 367 (1968). For the foregoing reasons, the actions of the HRC against Olympus Spa cannot pass intermediate scrutiny.

### ii. Free exercise of religion

The application of WLAD by the HRC to Olympus Spa substantially burdens their free exercise rights. A regulation neutral on its face may, as applied, offend the constitutional

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

10

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

requirement of government neutrality if it unduly burdens the free exercise of religion. *Wisconsin v. Yoder*, 406 U.S. 205, 220 (1972), *Fulton v. Philadelphia 593 U.S. 141 S. Ct. 1868, 1890 (2021) (*J. Alito concur) (quoting Yoder). The Spa cannot maintain business operations and practice their faith in accordance with the PFS terms and the implications therein. This burden is substantial. The HRC cannot show how its interest would be adversely affected by granting an exemption [to the Spa]. *Yoder*, 406 U.S. 205, 220 (1972). In fact, they are already attempting to grant an exemption to the group they favor, transgendered individuals. The HRC's favoritism towards this minority group shows animus against other protected groups. *Cf. Masterpiece Cakeshop, Ltd.,* 138 S. Ct. at 1729.

The HRC, through its agents, has created a carve-out for individualized exemptions for favored minority groups, such as transgender individuals, to the exclusion of other protected groups such as males. ECF ¶ 58, 43. The creation of a formal mechanism for granting exceptions renders a policy not generally applicable, regardless of whether any exceptions have been given, because it "invite[s]" the government to decide which reasons for not complying with the policy are worthy of solicitude, *Smith*, 494 U.S., at 884—here, at the [Government Agent's] "sole discretion." *Fulton*, 141 S. Ct. 1868, 1879 (2021).

Therefore, the actions of the HRC are subject to strict scrutiny and fail. A government policy can survive strict scrutiny only if it advances "interests of the highest order" and is narrowly tailored to achieve those interests. *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 546 (1993) (internal quotation marks omitted). First, nudity is not an interest of the highest order, and, second, to uphold the assertion that HRC seeks to "dispense with invidious discrimination" they cannot create carve-outs for favored groups to the exclusion of other dis-

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

11

favored groups. To put it another way, the HRC would have to require Olympus Spa to admit any person who wanted access/admission in order to contend that their enforcement is narrowly tailored to achieve the goals of WLAD. The HRC's carve-outs deny them this contention, and their actions fail strict scrutiny review.

### iii. Association

As applied, the WLAD violates the rights of association of employees (Jane Doe Employee 1), and clients (Jane Doe Client 1). Those whom Olympus Spa offers services to, have a singular characteristic which is required: presenting as female while nude. The expression of the association is far removed from the prying eyes of the public and there are multiple doors through which an entrant must pass before the critical aspects of the relationship may be partaken of, that is to say, it is not accessible to the public. Unlike restaurants or other places of public accommodation, the setting is private and removed from public admittance. *See generally*, *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 12 (1988).

Entrance is not casual as evidenced by the preliminary requirement of signing in and waiting in an ante-room before the entrance to a private changing room, before entry into the main area where the hallways lead to the restaurant and sweat rooms, and finally, the spa where the whirlpools, saunas, and services are located. *See, e.g., Fair Hous. Council v. Roommate.com, LLC*, 666 F.3d 1216, 1221 (9th Cir. 2012). Entrants are vetted at each entry point to ensure they are female. To say that being nude amongst others who are female is not sufficiently intimate to warrant constitutional protections elides a basic foundational principle of society and the beliefs of the Plaintiffs. Many relationships which are amongst strangers are deemed intimate: all religious associations, all fraternal and sororal relationships, even the Boy Scouts have little

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

associative activity beyond their small "den." The criteria employed to select those who may

gain entry is sufficient in that the sex of the patron is inquired from the beginning and throughout

the treatment specifically and by observation. *See*, *Board of Dirs. of Rotary Int'l v. Rotary Club*

*of Duarte*, 481 U.S. 537, 547 (1987).

Protection of the right to association is especially important in preserving … cultural

diversity and in shielding dissident expression from suppression by the majority. Government

actions that may unconstitutionally burden this freedom may take many forms, one of which is

intrusion into the internal structure or affairs of an association, such as a regulation that forces

the group to accept members it does not desire. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 643

(2000).

Sex refers to a set of biological attributes in humans that is primarily associated with

physical and physiological features of which there are only male and female categories. *See*,

https://orwh.od.nih.gov/sex-gender. Plaintiffs allege this fact/definition in their amended

complaint, and the facts must be viewed in a light most favorable to Plaintiff(s). ECF 24-1, p. 2-

3, #2 a-b. Olympus Spa discriminates on the basis of sex, not gender. Such segregation always

has and always will be recognized, acceptable, and related to the norms of society in America.

Since Adam and Eve were cast from the garden, mankind has been clothed because of the

embarrassment inherent in being seen nude. Genesis 3:21. Society recognizes [the intimacy of

nudity] in the rights of individuals against having their nude images sold or spread online (*see*

*generally*, RCW 4.24.795, HB 1788), in the restrictions on nudity and their criminal implications

(RCW 9a.88.010), and a variety of other traditionally recognized limitations on nudity as

amongst the sexes.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

13

The forced inclusion of transgender individuals would necessarily alter the purpose and relationship of women to come together to engage in services offered by the spa. *Green v. Miss USA, LLC*, 52 F.4th 773 (2022). If a person comes into the haven which Olympus has created, they must be of the female sex. That message carries the business model. Olympus Spa has no comparator and the business is unique. Women are distinct as a sex and Olympus wishes to serve women in a way that caters to their form, and the stresses they encounter, and treat them through a specially trained set of female employees who know by virtue of being female the physical application of the *jjimjilbang* and *ddemiri*. Truly, it is hard to imagine a more singularly unifying trait than the male or female form, and a way in which such association could be more greatly impeded than by forcing women to be nude amongst, and female employees to work on, nude males. In spite of not knowing each other by name, the patrons have uniformity in their form, design, DNA, and sex designation.

The employees must actively work on the bodies of the patrons and Jane Doe [Employee 1] would be forced to work on a man even though her sincerely held religious beliefs convict her not to see or touch a naked male body.  The tenets of the employees' religious doctrine forbid them from physically touching the naked male form or seeing such. Unlike the provision of services which are short in duration and in which the "commercial enterprise" is not required to partake in the activity, the services offered by the Spa are very interactive and hands-on as well as lengthy. A person who is baking a cake or arranging flowers can do so without being forced to attend a ceremony or actively partake in the messaging, event, or activity of the customer/client. *See, e.g., Masterpiece Cakeshop, Ltd. V. Colo. C.R. Comm'n,* 138 S. Ct (2018), *Arlene's Flowers, Inc. v. Washington*, 138 S. Ct. 2671 (2018). Not so in the case of Olympus. They will

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

14

be forced to not only accept but express a reciprocating message that those with a penis are a woman whom their business model expressly provides for. Olympus Spa does not seek to sell ordinary commercial goods but sells a specialized service that is only offered by them and reflects their particular traditions, beliefs, and voice.

Intimate association is not restricted to family members. The freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. *Bd. Of Dirs. Int.'l v. Rotary Club of Duarte,* 481 U.S. 537, 545 (1987). As the Supreme Court has recognized, "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees,* 468 U.S. 609, 617-618 (1984). Surely the intimate spaces of persons of the same sex while in the state of partial or full undress rises to the level of intimate association outside of the family.

### iv. Hybrid rights

Plaintiffs' free exercise claim dovetails with their free speech and association claim(s). Under *Smith,* the Supreme Court excepted "hybrid rights" review from a rational basis and elevated those cases that involve Free Exercise and other constitutional protections, i.e., speech, press, and association, to a strict scrutiny review. *See, San Jose Christian Coll. v. City of Morgan Hill,* 360 F.3d 1024, 1031 (9th Cir. 2004); *Employment Div. v. Smith,* 494 U.S. 872 (1990). A plaintiff must present a colorable claim under a companion right with their free exercise claim. *Miller v. Reed,* 176 F.3d 1202, 1207 (9th Cir. 1999). The facts as alleged, viewed in a light most favorable to Plaintiff(s), sufficiently present hybrid rights claims. For the reasons

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

15

discussed above and herein Plaintiffs plausibly allege they were censored and forced to change the speech on their website and within policy which [speech] violates their beliefs (ECF 24-1 ¶ 47, 59-66), forced to violate their sincerely held beliefs that men and women ought not to be in the presence of each other while nude (again involving speech as well as association). *Id*. at 23, 25, 27, 28, 53-58. The facts present colorable hybrid claims, and the actions of the HRC and its agents are subject to rational basis review.

### D. Due Process

From the onset of the investigation due process was denied. The Due Process Clause prohibits states from denying citizens their constitutional rights. The Fourteenth Amendment "forbids the government to infringe… 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Wash v. Glucksberg, 521 U.S. 702, 720-721 (1997).  Removing the language "biological" from the website does not achieve the goal of the HRC to end discrimination on the basis of gender. The HRC's actions cannot pass strict scrutiny. The HRC did not give the Spa a meaningful investigation, and heard nothing the Plaintiff had to say. *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976). A compelling state interest cannot be used to compel speech.

### i. Substantive Due Process

Substantive due process claims have two primary features: first, that [the Due Process Clause] specifically protects those fundamental rights and liberties which are, objectively, deeply rooted in the Nation's history and tradition," and, second, requires a "careful description" of the asserted fundamental liberty interest. *Snyder v. Massachusetts,* 291 U.S. 97, 105 (1934). Olympus has a fundamental right to a fair and impartial examination of the complaint lodged

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

16

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

against it and to speak freely in accord with their faith. The asserted liberty interest, freedom of speech, religion, and association, must be heard in a meaningful manner. *Mathews*, 424 U.S. 319, 333 (1976). The HRC cannot compel speech, a fundamental liberty, and fail to properly investigate the complaint, as alleged. ECF 24-1, p. 11-17. Plaintiff's claims do not fail because they self-assert a biological-only policy of entrance, and the Defendant's citation(s) to Illinois and New York case law is not convincing nor binding on this court.

Substantive due process generally asks whether the government abused its power by arbitrarily depriving a person of *a protected interest* by basing the decision on an improper motive. An administrative agency's failure to follow its own procedure violates the Constitution only when (1) the agency violates minimal constitutional requirements, or (2) its resulting decision is so arbitrary and capricious that it amounts to a violation of substantive due process. *See Goodisman v. Lytle*, 724 F.2d 818, 820-21 (9th Cir. 1984); [***15] *Levitt v. University of Tex.*, 759 F.2d 1224, 1230 (5th Cir.), *cert. denied*, U.S., 88 L. Ed. 2d 578, 106 S. Ct. 599 (1985). *See also United States v. Caceres*, 440 U.S. 741, 59 L. Ed. 2d 733, 99 S. Ct. 1465 (1979). In *Williams v. Seattle*, 607 F. Supp. 714 (W.D. Wash. 1985) Danielson v. Seattle, 45 Wn. App. 235, 244. The HRC failed to follow the law tasking it with its investigative powers, RCW §49.60, and the WAC, §162-08 from which its procedures derive. The Spa was entitled to a determination regarding the facts of the complaint. In lieu of making such a determination Ms. Imiola failed to follow the RCW giving the HRC authority to investigate, and, instead, Ms. Imiola compelled speech in a PFS of her own design. This failed to satisfy the minimal requirements of "meaningful" hearing and was an abuse of discretion. The PFS was arbitrary and capricious because the PFS did not relate to the facts as alleged in the complaint by the

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

17

complainant.

## ii. Procedural Due Process

Because the Plaintiff availed itself of the PFS option and did not pursue the lengthy, costly, cumbersome adjudication process the State would have preferred does not relieve the State of a requirement to follow the investigative procedures they are bound by.  Ms. Imiola failed to investigate the truth and shifted to policy/speech-meandering. The duties of Ms. Imiola are to: receive, impartially investigate, and pass upon complaints alleging unfair practices. RCW § 49.60.120. The complaint is to be filed under oath or by declaration, RCW § 49.60.230(1)(a). The complainant lied on a written declaration provided to the State, the grounds upon which the investigation began. An HRC investigator is to ascertain the facts in order to make an *impartial* finding of "reasonable cause" or "no reasonable cause." The "unfair practice," if found, is then to be remediated by a means that is up to the Executive Director (ED) or other staff persons pursuant to the ED's direction. The [Commission] is to restore a complainant as nearly as possible to the position he or she would be in if he or she had not been discriminated against. WAC §162-08-061. Here, Madison Imiola could not restore the complainant because complained of action(s) never occurred. The complainant simply found a policy that made the complainant "feel" a certain way, and the HRC to forced speech from Olympus Spa. The speech that was forced failed to put the complainant in any better position. It is fundamental to our system of justice that judges be fair and unbiased. *See, e.g., Bach v. Sarich*, 74 Wn.2d 575, 582 (1968); *In re Borchert*, 57 Wn.2d 719, 722-23 (1961); *State ex rel. McFerran v. Justice Court*, 32 Wn.2d 544, 549-50 (1949).

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

18

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

All those who fulfill judicial, even quasi-judicial, roles are to uphold the integrity of the process:

> The principle of impartiality, disinterestedness, and fairness on the part of the judge is as old as the history of courts; in fact, the administration of justice through the mediation of courts is based upon this principle. It is a fundamental idea, running through and pervading the whole system of judicature, and it is the popular acknowledgment of the inviolability of this principle that gives credit, or even toleration, to decrees of judicial tribunals. Actions of courts which disregard this safeguard to litigants would more appropriately be termed the administration of injustice, and their proceedings would be as shocking to our private sense of justice as they would be injurious to the public interest.

*Accord, State ex rel. Beam v. Fulwiler*, 76 Wn.2d 313, 316-17 (1969); *State ex rel. McFerran*, 32 Wn.2d at 549; *Chi. v. Wash. State Human Rights Com.*, 87 Wn.2d 802, 807-808 (1976); *State ex rel. Barnard v. Board of Educ.*, 19 Wash. 8, 17-18 (1898).

Ms. Imiola gave the appearance of bias in refusing to investigate the allegations for truth. "The appearance of bias or prejudice can be as damaging to public confidence in the administration of justice as would be the actual presence of bias or prejudice. The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial." *Chi*, 87 Wn.2d at 809 (quoting *State v. Madry*, 8 Wn. App. 61, 70 (1972)).

Here, Ms. Imiola was incurious as to the truth of the accusation leveled against Olympus. If the allegation is the physical appearance at a business and that the business engaged in an unlawful act, then the evidence that the complainant never came to the business should be a complete defense. The State says facts do not matter. Discrimination against a transgender woman is so reprehensible that actual innocence is no defense. Olympus disagrees. Under procedural due process, the right to be heard must include the presentation of evidence that the predicate act never occurred.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

Pacific Justice Institute
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

19

### E. §1983 Claims, Acting Under Color of Law

Madison Imiola, acting under the procedures and policy implemented by Andreta Armstrong of the HRC, violated the rights of plaintiffs. 42 USC § 1983, which was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law. *Rendell-Baker v. Kohn*, 457 U.S. 830, 837-838 (1982). The facts of this case fall squarely within the protections of § 1983 which are not barred under the Eleventh Amendment. Investigators have quasi-judicial authority. WAC § 162-08-061.

Andreta Armstrong, as Executive Director of HRC, has full authority to assign cases to particular staff who are to investigate a complaint. WAC § 162-08-093. Ms. Imiola was to have investigated the complaint**.** The investigation is to have a preliminary evaluation of the complaint: § 94 states that *if* the complaint *is true*. The code does not speak to an action wherein a complaint is deemed false and what an investigator is to do. The HRC, under Armstrong's authority, has given wide latitude to the investigators to pursue a course of action. In this case, Ms. Imiola: (1) used the HRC official policy to determine the investigative procedure(s) used, (2) followed the pervasive practice of allowing quasi-judicial authority to investigators to enter PFS, (3) actions were completed without any clear means implemented to supervise Ms. Imiola's authority, and (4) the PFS was a final, authoritative, quasi-judicial act. [6] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

---

[6] In the previous order the Court discusses at length the issue of standing and determined that the Plaintiff had suffered harm or threat thereof at the hand of the HRC, ECF 21 p. 15-23.

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

20

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

Defendant misapprehends the claims: Plaintiff §1983 claims are asserted as against all of the violations not only the due process violations. Only the plainly incompetent person would believe that freedom of speech does not extend to website and policy language, and that forced thought and speech compliance is not a violation of the right of citizens and free enterprise in Washington. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)); *303 Creative*, 143 S. Ct. 2298 (2023).

Pre-finding settlements are agreements that agents of the HRC, by policy or procedure, acting under color of law, while carrying out their duties, have the authority at the direction of Andreta Armstrong to finalize. The "deliberate actions" of [Ms. Imiola] are directly attributable to the HRC which caused the deprivation of federal rights. *See*, *e.g*., *Bd. of Cty. Comm'rs v. Brown,* 520 U.S. 397 (1997). The concepts of culpability and causation must be rigorously adhered to lest § 1983 collapse into respondeat superior liability. *Horton by Horton v. City of Santa Maria,* 915 F.3d 592, 603 (9th Cir. 2019). The defendant has acted under color of state law where he or she has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic,* 313 U.S. 299, 326 (1941)); *see also*, *Polk Cty. v. Dodson,* 454 U.S. 312, 317-18 (1981).

Fairly read, the complaint alleges sufficient facts to show Ms. Imiola was acting in her role as an HRC investigator, had authority to determine how the investigation proceeded, ignored pertinent facts, was given quasi-judicial authority and followed established policy/procedure, and in so doing violated the constitutional rights of Plaintiffs. Therefore, Ms. Imiola acted under color of law. *Gritchen v. Collier,* 254 F.3d 807, 812 (9th Cir. 2001).

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

21

"In order to hold [the Government] liable under § 1983, Plaintiff can show: (1) they possessed a constitutional right of which [they] were deprived; (2) that the [State] had a policy; (3) that the policy 'amounts to deliberate indifference' to [Olympus Spa's] constitutional rights; and (4) that the policy is the 'moving force' behind the constitutional violation." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389-91 (1989)).

PFS's are a well-established procedure utilized by the HRC to carry out the policy of moving cases towards settlement. WAC § 162-08 Sec. IV governs conciliation and the policies and procedures of the HRC. Plaintiffs have a constitutional right to believe, speak, and act thereon. The State's PFS policy grants agents the authority to enter into agreements of their choosing. Ms. Imiola was deliberately indifferent to both the truth as presented and the rights of Plaintiffs to speak and be heard, the PFS policy and the quasi-judicial authority therein is the driving force behind constitutional violation(s).

Ms. Imiola's actions were surely official. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). In other words, a policy is "a deliberate choice to follow a course of action . . . . made from among various alternatives by the official responsible for establishing the final PFS with respect to the complaint." *See e.g. Id.* at 483-84.

There can be no doubt that the plaintiff's injury stemmed from the action of Ms. Imiola. *See, e.g., Arnold b. IBM. Corp.,* 637 F.2d 1350, 1355 (9th Cir. 1981). Ms. Imiola was the cause-in-fact and proximate cause as she drafted the PFS from which the violations stem. *See, Van Ort v. Estate of Stanewich,* 92 F.3d 831, 837 (9th Cir. 1996). The actions of Ms. Imiola were the

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

22

driving force behind the violations complained of. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. at 404-05. The §1983 claims are well founded.

### i.   Deprivation of a Constitutional Right

As outlined in the preceding section(s) the constitutional rights claims are established as a deprived right. The First Amendment is to receive the broadest protections. The freedom to speak and think as you like is an inalienable right which the framers designed to protect. *Boy Scouts of America v. Dale,* 530 U.S. at 660-661.

"Due Process Clause of the Fourteenth Amendment, violation which the [special relationship] of the Fourteenth Amendment to the rights of freedom of speech. . . . and religion guaranteed by the First. We have repeatedly held that the Fourteenth Amendment has made applicable to the states the guarantees of the First." *Schneider v. State*, 308 U.S. 147, 160, n. 8 (1939); *Jamison v. Texas*, 318 U.S. 413 (1943). "Allegations of fact sufficient to show deprivation of the right of free speech under the First Amendment are sufficient to establish deprivation of a constitutional right guaranteed by the Fourteenth, . . . . whenever it appears that the abridgment of the right is effected under color of a state statute or ordinance." *Douglas v. Jeannette*, 319 U.S. 157, 161-162 (1943).

### ii. Clearly Established

The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [government agent] that [their] conduct was unlawful in the situation confronted. The right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established. *Saucier v. Katz,* 533 U.S. 194, 197 (2001). When conduct so obviously violates the Constitution, no prior case with a

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

23

similar factual narrative is necessary to remove qualified immunity. *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005). Free speech is so well-contoured in our country it is not open to debate that Ms. Imiola could not understand she was abridging speech. Changing the Spa's website and policy to reflect the State's message is as forced a change in speech, free exercise, and free association as could be exacted.

## G.  This Court has supplemental jurisdiction over state constitutional claims.

Because of the federal claims, sufficiently stated herein, having a common nucleus of facts the Court may exercise jurisdiction over state constitutional claims. Although the doctrine of pendent jurisdiction does not permit a federal court to assume jurisdiction of a separate and distinct nonfederal cause of action, nevertheless the court may adjudicate a case where two distinct grounds in support of a single cause of action are alleged, only one of which presents a federal question. *Hagans v. Lavine*, 415 U.S. 528, 530 (1974).

> Within the accepted substantiality doctrine, petitioners' complaint alleged a constitutional claim sufficient to confer jurisdiction on the District Court to pass on the controversy, since (1) the complaint alleged a deprivation, under color of state law, of constitutional rights within the meaning of . . . . 1983; (2) the *constitutional* issue was neither frivolous nor so insubstantial as to be beyond the District Court's jurisdiction, and the challenged regulation was not so clearly rational as to require no meaningful consideration; and (3) the cause of action alleged was not so patently without merit as to justify a dismissal for want of jurisdiction."

*Id.* (quoting *Bell v. Hood*, 327 U.S. 678 (1946)).

> 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey v. Patterson*, 369 U.S., at 33; 'wholly insubstantial,' *ibid.*; 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288 (1910); and 'obviously without merit,' *Ex parte Poresky*, 290 U.S. 30, 32 (1933).

*Goosby v. Osser*, 409 U.S. 512, 518 (1973).

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

24

The case before the Court sufficiently satisfies the three requirements: (1) plaintiffs have shown that they were deprived of constitutional rights by an agent acting under color of law, (2) the [federal] freedom of speech, religion, association, and denial of due process is the primary inquiry being neither frivolous nor insubstantial in the arc of the complaint, and the regulation thereof is irrational, and (3) the cause of action has merit because the plaintiffs, as previously determined by this court, have standing as there has been harm or threat of harm. The claims are entirely constitutional and touch upon both federal and state claims such that the Court may exercise pendent jurisdiction over state claims in the interest of judicial economy.

## VI. CONCLUSION

The Plaintiffs have alleged sufficient facts for this Court to draw the conclusion that issues material thereto remain. The allegations are not conclusory but well supported within the complaint. The facts stated must be viewed in a light most favorable to the Spa. The Spa has claims which are redressable based on the deprivation of rights described herein. For all of the foregoing reasons, the Court may and ought to find in favor of Plaintiffs and deny Defendant's motion to dismiss.


Respectfully submitted this 5th day of September 2023 in Pasco, Washington.

/s/ Tracy Tribbett
Tracy Tribbett
PACIFIC JUSTICE INSTITUTE

*Attorney for Plaintiffs*

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

Plaintiff's Response, MTD, 2:22-cv-00340-BJR

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the United States District Court using the CM/ECF system. I certify that all participants in the case are registered users and that the service of the parties will be affected by the appellate CM/ECF system.

Signed and dated this 5th day of September 2023 in Pasco, Washington

/s/ Tracy Tribbett
Tracy Tribbett, WSBA #35922

Plaintiffs' Response to Defendants' Motion to Dismiss 2:22-cv-00340-LK

**Pacific Justice Institute**
6404 Three Rivers Drive
Pasco, WA 99301
(509) 713-9868

26

Plaintiff's Response, MTD, 2:22-cv-00340-BJR