UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OLYMPUS SPA, et al.,<br><br>      Plaintiffs,<br> v.<br><br>ANDRETA ARMSTRONG, MADISON IMIOLA,<br><br>      Defendants. | CASE NO. 22-CV-00340-BJR<br><br>ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT |

   This matter comes before the Court on a Motion to Dismiss filed by Defendants Andreta Armstrong, Executive Director of the Washington State Human Rights Commission ("HRC"), and Madison Imiola, an investigator with HRC ("Defendants"), seeking dismissal of the Amended Complaint filed by Plaintiffs Olympus Spa (the "Spa"), "Jane Doe Employee 1," and "Jane Doe Patron 1" ("Plaintiffs").[1]

---

[1] The original complaint was also brought by Myoon Woon Lee and Sun Lee, the owner and president, respectively, of Olympus Spa. *See* Compl., Dkt. No. 1, ¶¶ 4 and 5. These individuals are not named plaintiffs in the Amended Complaint.

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 1

This lawsuit was originally filed as a First Amendment challenge to HRC's application of the Washington Law Against Discrimination ("WLAD") to Olympus Spa's admittance policy. *See* Compl., Dkt. No. 1; Wash. Rev. Code § 49.60 *et seq*. On June 5, 2023, the Court issued an order granting Defendant's Motion to Dismiss the Complaint and dismissed Plaintiffs' Free Exercise, Free Speech, and Free Association claims. At the same time, the Court granted Plaintiffs leave to file an amended complaint and a second opportunity to state claims upon which relief could be granted. *See* Order Granting Motion to Dismiss, Dkt. No. 21 ("June 5 Order"). Plaintiffs filed a timely amended complaint, restating their First Amendment claims and adding federal procedural and substantive Due Process Clause claims and a Religious Freedom claim under Article I, Section 11 of the Washington State Constitution. Am. Compl., Dkt. No. 24. Defendants again moved to dismiss Plaintiffs' claims. Dkt. No. 28. Having reviewed the briefs and exhibits filed in support of and opposition to the motion, the Court finds and rules as follows.

### I.   BACKGROUND

The facts of this case were thoroughly outlined in the Court's June 5 Order and need not be repeated in full here. In sum, Plaintiff Olympus Spa, with two locations in the Great Puget Sound Area, is a spa "specifically designed for women." Am. Compl., ¶¶ 3, 11. The services offered there "are closely tied to the Korean tradition," meaning patrons are "require[d] . . . to be naked" during certain services. *Id.*; *see also id.*, ¶ 21 ("It is Olympus Spa's business purpose to provide traditional Korean kiln saunas and exfoliation therapy experiences."). As noted, patrons are "typically fully naked" while utilizing the Spa's massage, bath, and other areas and thus "have visual access" to other nude patrons. *Id.*

Until 2021, Olympus Spa maintained a "biological women" only policy, under which it restricted admission to women, which it defined as individuals who "physically present[] in the nude as . . . female." *Id.*, ¶ 26, 39. Thus the Spa's policy was to admit transgender women only if

they had "gone through post-operative sex confirmation surgery." *Id.*, ¶ 26. Plaintiffs attribute the policy to the owners' "traditional, theologically conservative" Christian values. *Id.*, ¶ 25. The owners "hold the conviction that a male and female should not ordinarily be in each other's presence while in the nude unless married to each other." *Id.*

In February 2020, HW[2]—a transgender woman who "identifies as a woman" who at the time had not undergone sex reassignment surgery—filed a complaint with HRC. HW alleged that she had gone to Olympus Spa in January 2020 but was denied entry "because of [her] sexual orientation." Am. Compl., Ex. 3 at 2. According to the complaint, HW was told "that transgender women without surgery are not welcome because it could make other customers and staff uncomfortable." *Id.* Plaintiffs have consistently denied that HW visited the Spa in person, noting in their Amended Complaint that HW has made statements to the media indicating she merely made a telephone call to the Spa inquiring about its admittance policy. Am. Compl., ¶ 35. Plaintiffs do not deny that in February 2020, HW would not have been admitted under its then-existing policy.

HRC subsequently served the Spa with a Notice of Complaint of Discrimination. Am. Compl., Ex. 3. The Notice outlined HW's allegations and sought the Spa's written response. It also apprised Olympus Spa of HRC's early resolution services: "The WSHRC may assist the parties in early resolution of this Complaint through joint fact finding conferences and/or settlement negotiation which gives the parties an opportunity to resolve the issues . . . without extensive investigation or expenditure of resources." *Id.* Olympus Spa was invited to contact the assigned Civil Rights Investigator, Defendant Madison Imiola, if it was interested in settlement. *Id.*

---

[2] Defendants request that complainant be referred to by her initials HW, as she has received threats of violence as a consequence of her association with this lawsuit.

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 3

   In subsequent correspondence with HRC, Plaintiffs defended the Spa's entry policy. Am. Compl., Ex. 3 at 10-12. The Spa provided HRC with a copy of that policy, which stated, "Biological women are welcome[.] It is the policy of Olympus Spa not to discriminate on the basis of race, color, national original, sex, age, or disability in its programs or activities, as required by applicable laws and regulations." Am. Compl., Ex. 3 at 13. The Spa's president further explained that "[o]ur attendance rules limit guests to females only, including post-operative transsexuals." *Id*. at 11. Plaintiffs also denied that HW had visited the Spa. *Id*. at 18. In response, HRC, through Imiola, informed Plaintiffs that by maintaining a policy that refused entry to transgender women who had not had surgery, the Spa was violating the WLAD because it discriminated on the basis of gender identity. *Id.* at 15. Imiola again offered the Spa "the opportunity to enter into a Pre-Finding Settlement (PFS) Agreement." *Id.* at 15. As her letter explained, such settlement agreements are "used to resolve the issues of a complaint prior to completing the investigative process." *Id.* Such an agreement would not require an admission of guilt, and HRC "would take no further action on the issues of the complaint." *Id.* In sum, a PFS Agreement was Olympus Spa's "opportunity" to "revise [its] policies and practices," bring itself "into compliance with the law, avoid the costs of non-compliance and litigation, and reduce the likelihood of future complaints." *Id.*

   The Spa ultimately removed the "biological women only" entry policy from its website and elected to enter into a PFS agreement with HRC. *See* Am. Compl., Ex. 3 at 22, 30-32. Under the agreement, Olympus Spa was required to complete WLAD training within 60 days. *Id.* It was allotted 60 days to "[i]mplement and/or revise existing company policies as necessary to ensure their compliance with the [WLAD]." *Id.* at 36. The PFS agreement also reserved the Spa's right to challenge HRC's application of the WLAD to the entry policy. *Id.* at 37. In October 2021, HRC issued a notice of final agency action and officially closed the complaint. *See id.* at 34–39.

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 4

Plaintiffs first brought this Section 1983 suit alleging that enforcement of the WLAD against them violated their First Amendment rights to free exercise of religion, freedom of speech, and freedom of association. Compl., Dkt. No. 1 at 1, 13–15. Plaintiffs sought declaratory relief and asked the Court to "preliminarily and permanently" enjoin HRC from "enforcing the public accommodation law and implementing regulations" against them. *Id.* at 15. The HRC brought a motion to dismiss the complaint, which the Court granted on June 5, 2023. Dkt. No. 21. However, as indicated *supra*, the Court granted Plaintiffs leave to amend their complaint. Plaintiffs filed an Amended Complaint on June 29, 2023 (and a praecipe to that filing on July 6, 2023), restating the three First Amendment claims and adding two more claims, for violation of their Due Process rights under the Fourteenth Amendment, and for violation of the Washington State Constitution.

## II.     DISCUSSION

### A.     Rule 12(b)(6) Motion to Dismiss

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). At this stage, the Court accepts as true all factual allegations in the complaint and construes them in the light most favorable to the nonmoving party. *Gonzalez v. Google LLC*, 2 F.4th 871, 885 (9th Cir. 2021). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a)(2) (a plaintiff must make a "short and plain statement of the claim showing that the pleader is entitled to relief"). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B. Free Exercise, Free Speech, and Free Association Claims

The Amended Complaint includes Plaintiffs' original "Free Exercise of Religion," "Freedom of Speech," and "Right of Association" claims, which the Court has already thoroughly analyzed and dismissed. Am. Compl., ¶¶ 53-58; 59-66; 67-85; *see* June 5 Order, at 27-38. The few additional facts included in the Amended Complaint do not accomplish what Plaintiffs hope, which is to raise an inference of a "clear and impermissible hostility" HRC might harbor towards Plaintiffs' religious beliefs. *Cf. Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719, 1729 (2018). These new allegations include that within weeks of filing her complaint, HW underwent gender confirmation surgery that would apparently have qualified her for admittance to the Spa. Am. Compl., ¶ 35. Plaintiffs claim that HRC could and should have investigated HW's allegations and determined that the surgery, in Plaintiffs' view, "mooted" her complaint. While Plaintiffs argue that this failure is somehow evidence of religious animus, they ignore that the violation HRC ultimately charged the Spa with was maintaining a "biological women only" entry policy, apart from whether or not the Spa denied HW entry. *See* Am. Compl., Ex. 5 ("After reviewing the response you submitted on behalf of Olympus Spa, the evidence in this investigation supports that you[r] company's 'biological women' policy is not compliant with the [WLAD]."). In other words, regardless of whether HW had a discrete claim of discrimination against the Spa, HRC had determined, pursuant to its statutory directive, that the Spa was in active violation of the WLAD. *See* Wash. Code. Rev. 49.60.240 (authorizing HRC to determine whether "there is reasonable cause for believing that an unfair practice has been or is being committed"). For similar reasons, new allegations regarding HW's history of transgender activism have no

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 6

1  material impact on HRC's charge of discrimination.³ Furthermore, Plaintiffs' unsupported

2  arguments that HRC's religious animus is evidenced by its use of the fairly common term

3  "cisgender" (*see, e.g., Parents for Privacy v. Barr*, 949 F.3d 1210, 1240 (9th Cir. 2020) (discussing

4  policy "that allows transgender students to use school bathroom and locker facilities that match

5  their self-identified gender in the same manner that cisgender students utilize those facilities"));

6  and by the fact that the Washington Attorney General and HRC "have recently engaged in highly

7  publicized litigation against those who hold traditional Biblical views including Union Gospel

8  Mission and Seattle Pacific University," are patently frivolous. *See* Am. Compl., ¶¶ 40, 51.

9      Other than the arguments listed above, Plaintiffs offer no new grounds for the Court to

10 change its original opinion. Leave to amend the original Complaint was not intended as an

11 opportunity for Plaintiffs to relitigate the facts and law that have already been adjudicated. The

12 Court will not revisit its original rulings regarding these claims. They are, accordingly, again

13 dismissed on the grounds stated in the Court's original order.

14     C.    **Due Process Claims**

15     The new Fourth Cause of Action outlined in the Amended Complaint is brought against

16 Defendant Imiola for violation of the Fourteenth Amendment Due Process Clause of the U.S.

17 Constitution. Am. Compl., ¶¶ 86-92. That clause provides "no state shall . . . deprive any person

18 of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. Plaintiffs

19 claim that their procedural due process rights were violated because Imiola failed to "tak[e]

20 evidence as to whether [complainant] actually 'went to…the spa,'" and was "uninterested in

---

[3] While Defendants also assert that Plaintiffs' allegations that HW never went to the Spa in person are new, this issue was raised in the original complaint and addressed in the Court's previous order. *See* June 5 Order at 7, n. 3 ("Plaintiffs dispute the veracity of [HW's] complaint. . . . Olympus Spa performed an internal investigation "to determine when the alleged discrimination happened and . . . who denied entry" to [HW] but "found no record" of [HW] having been at either the Tacoma or Lynnwood locations.").

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 7

whether the alleged predicate act occurred." Am. Compl., ¶¶ 87-89; *see also id.*, ¶ 33 (HRC failed "to properly investigate false claims"); ¶ 44 (HRC "is entirely incurious as to whether the predicate fact of the presence of [complainant] at the spa is true or not."). Plaintiffs also assert a violation of their substantive due process rights, claiming that Imiola's actions deprived them "of the right to provide a defense with a presumption of innocence" and that "[a] determination of guilt by mere accusation violates [their] substantive due process rights." *Id.*, ¶¶ 90, 91.

Defendants seek dismissal of both the substantive and the procedural due process claims. The Court addresses each in turn.

            1.     *Substantive Due Process Claim*

To state a claim for a substantive due process violation, a plaintiff must allege (1) a valid liberty or property interest, that (2) the government infringed in an arbitrary or irrational manner. *Vill. of Euclid, Ohio v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). As Plaintiffs acknowledge, a substantive due process claim requires "a 'careful description' of the asserted fundamental liberty interest." Pls.' Resp. at 12 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105 (1934)).

Plaintiffs fail to articulate a "careful description" of a fundamental liberty interest that is cognizable in the context of a substantive due process claim. Instead, the "asserted liberty interest" for which they seek substantive due process protection is "freedom of speech, religion, and association." *See* Pls.' Resp. at 12. It is black-letter law, however, that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Addison v. City of Baker City*, 258 F. Supp. 3d 1207, 1234–35 (D. Or. 2017), aff'd, 758 F. App'x 582 (9th Cir. 2018) (citing *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Thus a claim for violation of rights explicitly guaranteed under the First Amendment—here, the freedoms

of speech, religious exercise, and association—cannot be vindicated under the Due Process Clause. *See Hufford v. McEnaney*, 249 F.3d 1142, 1151 (9th Cir. 2001) ("In this case, because the First Amendment explicitly covers [plaintiff's] claim, the First Amendment, not the Fourteenth Amendment's guarantee of substantive due process, should guide the analysis of the claims.") (citations omitted, cleaned up).

The other purported "fundamental liberty interests" Plaintiffs seek to defend are equally unsuited to a substantive due process analysis. First, Plaintiffs argue that it was a violation of their right to substantive due process that they were denied a "presumption of innocence" in the course of HRC's investigation into HW's complaint. Am. Compl., ¶¶ 90-91 ("A determination of guilt by mere accusation violates the substantive due process rights of Olympus Spa as guaranteed by the Fourteenth Amendment."). But Plaintiffs do not cite any legal authority for the novel proposition that the right to substantive due process guarantees a "presumption of innocence" in a civil proceeding such as the one initiated by HW's complaint to HRC. *Cf.* Defs.' Mot. at 11 (citing *Hamid v. City of Chicago, No. 98 C 3789*, 1999 WL 759423, at *3 (N.D. Ill. Sept. 2, 1999) ("no right to a presumption of innocence in civil proceedings"); *Leyh v. Property Clerk of the City of New York Police Dep't*, 774 F. Supp. 742, 746 (E.D.N.Y. 1991) ("the 'presumption of innocence' is inapplicable to a non-criminal proceeding.")). In any event, Plaintiffs admitted all facts underlying HRC's finding of discrimination, and agreed to remediate the violation even before entering into the PFS agreement. *See* Am. Compl., Ex. 4 (Olympus Spa Entry Policy, welcoming "biological women"); Ex. 10 at 30 ("Respondent agrees that, during the investigation of this complaint and prior to execution of this agreement, it has adopted new language on its website reflecting a non-discriminatory policy that comports with RCW 49.60."). Indeed, HRC did not make a "determination of guilt" on this issue at all; the PFS explicitly provided that "this agreement does not constitute a determination by the Commission that any violation of [the WLAD] has or

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 9

has not occurred." *Id*.

Plaintiffs also allege that Imiola failed to follow the prescribed procedures outlined in the WLAD by not investigating HW's claims to determine whether HW had, in fact, physically visited the Spa, or had merely called ahead to determine whether she would be admitted. Plaintiffs suggest that consequently, the PFS was "arbitrary and capricious," and therefore violated Plaintiffs' substantive due process rights. But Plaintiffs were explicitly given a choice between a full investigation or settlement, and freely chose the latter. *See* Am. Compl., Ex. 3 at 1 ("The WSHRC may assist the parties in early resolution of this Complaint through joint fact finding conferences and/or settlement negotiation which gives the parties an opportunity to resolve the issues of a Complaint without extensive investigation or expenditure of resources."). Plaintiffs can hardly be heard to complain they were denied the benefit of a full investigation when it was one of the options they were offered, but did not choose.

Furthermore, it is clear from the correspondence between Plaintiffs and HRC leading up to execution of the PFS agreement that the WLAD violation HRC identified was not predicated on whether HW visited the Spa in person or by telephone or indeed, contacted the Spa at all. The violation identified by HRC was the Spa's entry policy, which the HRC deemed discriminatory on its face, and had nothing to do with whether or how it was applied to HW. *See* Am. Compl., Ex. 3 at 15 ("[T]he evidence in this investigation supports that your company's 'biological women' policy is not compliant with the Washington Law Against Discrimination (WLAD), RCW 49.0, which prohibits discrimination on the basis of gender identity in places of public accommodation. As such, I am writing to offer Olympus Spa the opportunity to enter into a Pre-Finding Settlement (PFS) Agreement."). Plaintiffs' argument that the truth or falsity of HW's claims somehow forms the basis of a due process violation is entirely without merit.

2.      *Procedural Due Process Claim*

Plaintiffs also attempt to state a claim for procedural due process violations under the Fourteenth Amendment. To state a claim of a procedural due process violation, a plaintiff must show: "(i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz,* 143 S. Ct. 955, 961 (2023).

Plaintiffs attempt to cast Imiola's "failure" to investigate HW's allegations as a procedural due process claim (as well as the substantive due process claim, discussed above). As noted above, however, HRC's decision not to investigate the allegations was a product not of any procedural failure, but of Plaintiffs' decision to enter into a settlement agreement and forgo the right to an investigation. In their motion, Defendants thoroughly outline the procedural state-law protections that were available to the Spa, but which it voluntarily declined to avail itself of:

> [The Spa] had notice of HW's complaint and the opportunity to contest the complaint and supply its own evidence. . . . The Spa had no obligation to choose to enter into a pre-finding settlement agreement. . . . Indeed, the Spa was entitled to have the complaint adjudicated under the trial process provided by the WLAD rather than resolving the matter via settlement, and the Spa choose to forego that opportunity. . . . An administrative law judge (ALJ) would have been appointed to hear the complaint, and a formal, administrative hearing would have been governed by the extensive due process protections provided by Washington's Administrative Procedures Act. And if the Spa disagreed with the ALJ's ruling, it would have enjoyed the right to seek judicial review of the decision.

Defs.' Mot. at 8-9 (citing Wash. Rev. Code § 49.60.240, .250). Plaintiffs are unable to explain how these procedures fall short of a constitutional guarantee of due process. They chose to bypass the investigative and adjudicative process that was available to them. In other words, Plaintiffs were offered the process they were due, and chose to forgo it in favor of settlement. Under these circumstances, no procedural due process claim can lie. *See, e.g., Patel v. City of S. El Monte*, 2019 WL 13037008, at *8 (C.D. Cal. Jan. 10, 2019) ("Plaintiffs cannot sustain their procedural due process claim because there are adequate state remedies available to challenge the

administrative officer's decision.") (citing, inter alia, *Lake Nacimiento Ranch Co. v. San Luis Obispo Cnty.*, 841 F.2d 872, 879 (9th Cir. 1987) (plaintiff's procedural due process claim barred because there was a California statutory remedy to challenge the results of the agency decision)).

### D.  Washington State Constitutional Claims

The Amended Complaint contains as its Fifth Cause of Action a claim against "All Defendants" for violation of the religious freedom guaranteed under Article I, § 11 of the Washington State Constitution. Am. Compl., ¶¶ 93-99. That provision guarantees, among other things, an "[a]bsolute freedom of conscience in all matters of religious sentiment, belief and worship." Wa. Const. Art. I, § 11.

Defendants seek dismissal of Plaintiffs' state-law constitutional claims, arguing that the Eleventh Amendment to the U.S. Constitution bars such claims against state officials acting in their *official* capacity from proceeding in federal court. Defs.' Mot. at 13-14 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *Pena v. Gardner*, 976 F.2d 469, 473 (9th Cir. 1992). Defendants also argue that Washington law does not recognize state constitutional claims against state officials acting in their *personal* capacity. *Id*. (citing *Blinka v. Washington State Bar Ass'n*, 109 Wn. App. 575, 591 (2001) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations.") (citation omitted)).

Plaintiffs do not respond to Defendants' arguments or in any way defend their Washington State Constitution claims. Their response to Defendants' Motion lacks any reference to the Washington State Constitution or the Freedom of Conscience clause, let alone an argument regarding Defendants' claim to *Pennhurst* abstention or Eleventh Amendment immunity, or the grounds upon which their state constitutional claims may be brought against officials acting in their personal capacity. Accordingly, the Court deems these claims abandoned. *See Carvalho v.*

ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT - 12

*Equifax Info. Servs., LLC*, 629 F.3d 876, 888 (9th Cir.2010) ("A plaintiff who makes a claim ... in his complaint, but fails to raise the issue in response to a defendant's motion to dismiss ... has effectively abandoned his claim, and cannot raise it on appeal."); *see also Jenkins v. Cty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (finding plaintiff abandoned claims by not raising them in opposition to defendant's motion for summary judgment). Defendants' motion to dismiss the state constitutional claims is granted.

### III.  CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Amended Complaint. This matter is dismissed with prejudice.

Dated:  November 13, 2023.

_____
Barbara Jacobs Rothstein
U.S. District Court Judge